**BEFORE THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**
**WASHINGTON, D.C.**

| | | |
|---|---|---|
| MATHEW LEVY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:07-cv-829 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant | ) | |

# FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Mathew Levy, by and through counsel, and for his First Amended Complaint does state:

## Parties

1. Plaintiff is a resident of Blacklick, Ohio.

2. Defendant is the United States of America, acting through the United States Department of the Army, Army Board for Correction of Military Records.

## Jurisdictional Statement

3. This Court has jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491, the Military Pay Act, 37 U.S.C. § 204, 10 U.S.C. § 1552, and 32 CFR § 581.3 for monetary and other relief arising from the Army's premature and unlawful termination of Plaintiff's military career.

4. The Military Pay Act confers on an officer the statutory right to receive the pay of the rank to which he was appointed up until the time he is properly separated from the service.

5. Plaintiff was unlawfully removed from the rank, First Lieutenant, to which he had been duly appointed in 1953 when he was separated from the Army in 1958 based upon two failures of selection for promotion to Captain under circumstances where, as the Army now admits, false and erroneous adverse information was contained in Plaintiff's service record that was reviewed by the two selection boards and resulted in the non-selections.

6. Because the two non-selections were the proximate result of the inclusion of false and erroneous adverse information in Plaintiff's service record, the two non-selections were unlawful, did not provide a competent and substantial basis for Plaintiff's compelled separation, and as a result, Plaintiff was never lawfully separated from the Army.

7. Plaintiff has an action for money damages under the Military Pay Act because the non-selection decisions, which were based on the false and erroneous adverse information in Plaintiff's service record, resulted in the Plaintiff's compelled separation from the Army.

8. AR 640-98 (11 Nov 1955) placed an affirmative duty on the Army to notify a service member of any adverse information contained in the member's service record or otherwise adversely reflecting on the member's military service.

9. The Army failed to ever provide Plaintiff with copies of the adverse information contained in (a) the erroneous Officer Efficiency Report ("OER"), and (b) the executive memorandum to the Army Board for Correction of Military Records ("ABCMR") that referenced the false and erroneous information and which recommended denial of Plaintiff's ABCMR appeal.

10. Because the Army failed to provide Plaintiff with copies of the adverse OER and the ABCMR executive memorandum, the Army breached its duty to Plaintiff under AR 640-98 and such breach amounted to the affirmative concealment of material and relevant facts.

11. Because of the affirmative concealment, there was no effective way for Plaintiff to have learned of the existence of the false and erroneous adverse information at the time Plaintiff filed his original appeal to the ABCMR or at any time thereafter.

12. The Army's affirmative concealment of material and relevant facts equitably tolled all applicable statutes of limitation for Plaintiff to bring an action concerning the inclusion of this false and erroneous adverse information until such time as Plaintiff was made aware of the existence of such material and discovered the relevant facts in October 2002.

13. Plaintiff's subsequent appeal and request for reconsideration filed with the ABCMR and this present action were all timely filed within all applicable statutes of limitation.

## Venue

14. Venue is proper in the U.S. Court of Federal Claims under 28 U.S.C. § 1346.

## Statement of Facts

15. This is a case involving mistaken identity by the Army which led to the improper and premature termination of Plaintiff's military career.

17. Plaintiff was born on November 23, 1926.

18. On November 18, 1944, Plaintiff joined the U.S. Army Reserve. From February 4, 1945 through November 4, 1946, Plaintiff served on active duty as an

enlisted member in the U.S. Army serving at various Army installations, including Ft. Lewis, Ft. Lawton, and Camp Shanks. He also served overseas in the China-Burma-India area of operations.

19. On October 1, 1949, Plaintiff was commissioned as a Second Lieutenant in the U.S. Army Officer Reserve Corps ("ORC"). He served a tour of duty at the Edgewood Arsenal Chemical School. On June 29, 1953, Plaintiff was promoted to First Lieutenant.

20. Plaintiff was appointed adjutant of his reserve unit and, for over five years he was also a member of the Board of Officers for ORC Appointments for the New York Military District. Exhibits 1 and 2.

21. On August 25, 1955, Plaintiff was awarded the Armed Forces Reserve Medal commemorating ten qualified years of service in the Army Reserve Corps. The Armed Services Reserve Medal description defines a qualified year of reserve service as a year in which the recipient earned at least 50 retirement points. Exhibit 3 at page 2, paragraph 1b. Thus, as of August 25, 1955, Plaintiff had ten qualifying years of service. Because of his erroneous discharge from the ORC (see para. 29), Plaintiff was unable to complete his twenty years of qualifying service in order to be eligible for retirement.

22. But for the Army's erroneous discharge of Plaintiff, Plaintiff would have accrued at least another ten years of qualifying service in the almost 30 years remaining until Plaintiff became eligible to retire from the ORC in November 1986.

23. Between July 14 and 28, 1957, Plaintiff was on active duty for training at the New York Procurement District in New York, New York. Exhibit 4. In September 1957, Plaintiff's rating offer found Plaintiff to be fully qualified for promotion.

24. In a letter dated August 28, 1957, Plaintiff's supervisory officer, 1LT Thomas Murphy, discussed a report Plaintiff had prepared while on active duty for training. In the letter, 1LT Murphy described the report as "one of the finest I have had the privilege to read." A copy of the August 28, 1957 letter is attached hereto and incorporated herein as Exhibit 5.

25. Plaintiff was not on active duty at any other time during 1957.

26. Plaintiff was on active duty for training from June 29, 1958 to July 13, 1958. Exhibit 6.

27. A Selection Board for Captain considered Plaintiff for promotion in 1957 and 1958, but did not select him to be promoted to Captain at either time. The Selection Board did not give any reason for its failure to select him for promotion.

28. The Army regulations in effect in 1957 and 1958, AR 135-155, required that an officer be discharged from the Officer Reserve Corps if he was passed over twice by a Selection Board.

29. On September 18, 1958, Plaintiff received an honorable discharge from the Army ORC.

30. In late 1958, Plaintiff applied to the ABCMR for reinstatement into the Army ORC.

31. In an internal memorandum dated January 2, 1959 to the ABCMR Executive Secretary, an ABCMR examiner recommended that Plaintiff's application be denied. A copy of the January 2, 1959 memorandum is attached hereto and incorporated herein as Exhibit 7.

32. In the January 2, 1959 memorandum, the ABCMR stated:

> His efficiency reports indicate that he was considered fully qualified for promotion by his rating officer on 16 Sep 57. However, he was on active duty for training for two consecutive 6-months [sic] periods beginning 1 Jan 57 through 31 Dec 57, and his rating officer on 21 Jan 58 felt that he had not demonstrated potential for promotion despite his opportunity to do so. The rating officer who rendered the favorable report on him in Sep 57, again considered appl qualified for promotion on 21 July 58, after appl had served on a 2-week tour of active duty for training.

33. This information was false and erroneous because Plaintiff was not on active duty continuously from January 1 to December 31, 1957. If Plaintiff had been on active duty, he could not have been on Active Duty for Training ("ACDUTRA") in July 1957 as reflected in Exhibit 4.

34. At no time was Plaintiff ever provided by the Army with a copy of any OER showing he was on active duty from January 1 to December 31, 1957 or with a copy of the erroneous internal ABCMR January 2, 1959 memorandum, and Plaintiff was unaware of the existence of such documents.

35. Plaintiff was completely unaware of the fact that Plaintiff was a victim of mistaken identity or that there was a document - the January 2, 1959 internal ABCMR memorandum - which reflected that mistaken identity and that the promotion board had relied on that erroneous information which resulted from the case of mistaken identity.

36. In a memorandum dated January 13, 1959, the ABCMR requested the Adjutant General to notify Plaintiff that after examining and reviewing Plaintiff's application and records, the ABCMR determined on January 7, 1959 that there was insufficient evidence to indicate a probable material error or injustice and his

application had been denied. A copy of the January 13, 1959 memorandum is attached hereto and incorporated herein as Exhibit 8.

37. In February 1959, Plaintiff sought the assistance of U.S. Senator Jacob K. Javits to determine the cause of his failure to be promoted. Senator Javits requested the Army to furnish a report relative to Plaintiff's nonselection for captain. (See Exhibit 15, "Exhibit 1"). The Army informed Senator Javits that the reasons for the failure to promote would not be disclosed, even to a U.S. Senator (See Exhibit 15, "Exhibit 2").

38. In a letter dated February 27, 1959, Acting Adjutant General Bruce Easley replied to Senator Javits and stated that Plaintiff had been discharged because he had been passed over for promotion twice. The letter further stated that "[t]he specific reasons for the decision of a selection board in any individual case are not known outside the board inasmuch as the board is not permitted to divulge such information." Id.

39. In 1973, a fire destroyed the National Personnel Records Center in St. Louis, Missouri.

40. In October 1997, Plaintiff's previous attorney contacted Plaintiff's Congressman, Hon. John Kasich, for assistance in obtaining retirement benefits from the Army.

41. On or about January 4, 1999, Congressman Kasich received copies of the few available personnel documents from "alternate records sources" for Plaintiff's reconstructed service record from the National Personnel Records Center. Exhibit 17.

42. On or about December 17, 2001, Plaintiff submitted a request to the ABCMR to reconsider the 1959 decision on the basis of newly discovered evidence, to-wit: the

erroneous 1957 OER and the erroneous internal ABMCR memorandum. A copy of Plaintiff's request is attached hereto and incorporated herein as Exhibit 9.

43. In a May 28, 2002 letter, the ABCMR requested additional information from Plaintiff, to which Plaintiff responded in an October 30, 2002 letter. The October 30, 2002 letter was the first time Plaintiff put together the facts and significance of the Government's internal documents. A copy of Plaintiff's October 30, 2002 letter is attached hereto and incorporated herein as Exhibit 10.

44. In his October 30, 2002 letter, Plaintiff clarified for the ABCMR the basis for his request for reconsideration of the ABCMR's January 7, 1959 denial of his application to correct his records and reinstate him.

45. In a letter dated July 7, 2003, the ABCMR denied Plaintiff's October 30, 2002 request. A copy of the July 7, 2003 letter is attached hereto and incorporated herein as Exhibit 11.

46. In its July 7, 2003 letter, the ABCMR stated it would only reconsider ABCMR decisions more than one year after the original decision "if substantial relevant evidence has been submitted that shows fraud, mistake in law, mathematical miscalculation, manifest error, or if there exists substantial relevant new evidence discovered contemporaneously with or within a short time after the ABCMR's original decision."

47. In its July 7, 2003 letter, the ABCMR further stated that Plaintiff's claim could not be considered because it arose more than six years after it accrued and the Army no longer had Plaintiff's pay records.

48. In the July 7, 2003 letter, the ABCMR also failed to even address Plaintiff's contentions that the factual basis for the recommendation in the January 2, 1959

memorandum was clearly erroneous in that Plaintiff did not serve on active duty continuously between January 1 and December 31, 1957.

49. In the July 7, 2003 letter, the ABCMR also stated that if Plaintiff had "copies of the pertinent IRS income statements and/or copies of your Army pay records for the pertinent period, you must provide them with your application."

50. On June 8, 2005, Plaintiff submitted a revised application to the ABCMR that contained copies of Plaintiff's tax records for 1957 as well as a statement from the Social Security Administration listing Plaintiff's wages for 1957 and 1958. A copy of the June 8, 2005 revised application is attached hereto and incorporated herein as Exhibit 12. In the submittal, Plaintiff listed the "date of discovery" as "20021030" (October 30, 2002).

51. According to the Defense Finance Accounting Service, the monthly basic pay for a First Lieutenant with over six (6) years of cumulative military service in 1957 was $335.40. *See http://www.dfas.mil/militarypay/ 2006militarypaytables/militarypaypriorrates/ 1955.pdf*, a copy of which is attached hereto and incorporated herein as Exhibit 13.

52. Had Plaintiff served on active duty from January 1 to December 31, 1957, he would have received at least $4,024.80 in basic pay.

53. The Social Security Administration records in Exhibit 12 (attachment F) show that Plaintiff's wages from the Army in 1957 were $198.90.

54. In a decision dated January 26, 2006, the ABCMR denied Plaintiff's "application for correction of military records". A copy of the January 26, 2006 ABCMR decision is attached hereto and incorporated herein as Exhibit 14.

55. In the January 26, 2006 decision, the ABCMR acknowledged that Plaintiff discovered the alleged error or injustice on 30 October 2002. The Board went on to state however, that Plaintiff "had the opportunity to question the error in the ABCMR's 2 January 1959 memorandum in 1959."

56. Further, the ABCMR stated that if Plaintiff had wanted to obtain a copy of the erroneous January 2, 1959 memorandum (which Plaintiff did not know existed), he should have requested a copy in 1959.

57. Further, the ABCMR stated that because Plaintiff could have discovered the error in 1959 by obtaining a copy of the erroneous January 2, 1959 memorandum, the statute of limitations, 10 U.S.C. § 1552(b), on his claim expired in January 1962.

58. Significantly, in the January 26, 2006 decision, the ABCMR admitted that Plaintiff's pay records were "sufficient evidence to show he was not on active duty for the period of 1 January through 31 December 1957" and that the January 2, 1959 memorandum "incorrectly noted the applicant was on duty for two consecutive six-month periods beginning 1 January 1957 through 31 December 1957 and that his rating officer on 21 January 1958 felt he had not demonstrated potential for promotion."

59. In the January 26, 2006 decision, the ABCMR stated that Plaintiff should have received or requested a copy of the January 2, 1959 internal ABCMR memorandum in 1959, which would have permitted Plaintiff to discover the error before the 1973 fire at the National Personnel Records Center and Plaintiff would then have been better able to provide the ABCMR with contemporary supporting documents.

60. In the January 26, 2006 decision, the ABCMR admitted that if the error had been discovered in 1959, the ABCMR could have reviewed Plaintiff's records and resubmitted Plaintiff to a new Selection Board.

61. In the January 26, 2006 decision, the ABCMR stated it was not in the interests of justice to waive the 3-year statute of limitations, and even if the statute of limitations was waived, Plaintiff's claim would be barred by laches.

62. In the January 26, 2006 decision, the ABCMR issued the following determinations and recommendations:

> 1. The Board determined that the evidence presented does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined that the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned.
>
> 2. As a result, the Board further determined that there is no evidence provided which shows that it would be in the interest of justice to excuse the applicant's failure to timely file this application within the 3-year statute of limitations prescribed by law. Therefore, there is insufficient basis to waive the statute of limitations for timely filing or for correction of the records of the individual concerned.

63. The Board's statements regarding waiving the three-year statute of limitations were erroneous because Plaintiff had timely filed within the three-year statute of limitations, which runs from the time the applicant discovers the Government's "error or injustice" which is the basis for the claim. 10 U.S.C. § 1552(b).

64. The Board went on to say in its January 30, 2006 cover letter to the January 26, 2006 decision that "You may request reconsideration of this decision within one year only if you can present new evidence or argument that was not considered by the Board when it denied your original application."

65. In response to the ABCMR's invitation to request reconsideration based on evidence or argument not considered by the Board in rendering its original decision, on August 29, 2006 Plaintiff submitted a Motion for Reconsideration of the ABCMR's January 26, 2006 decision, pointing out that Plaintiff had in 1959 indeed sought the documents, including the January 2, 1959 erroneous internal ABCMR memorandum. Not only did Plaintiff seek the documents but he enlisted the aid of Senator Javits who requested a report from the Army; and that the Army refused to furnish any documents to the Senator and stated that the reasons for failing to promote and the supporting documentation would not be disclosed, even to a U.S. Senator. A copy of the Motion for Reconsideration is attached hereto and incorporated herein as Exhibit 15.

66. By letter of November 28, 2006, the ABCMR returned Plaintiff's Motion for Reconsideration stating that his August 29, 2006 request for reconsideration was not submitted within one year of the ABCMR's original decision in January 1959, that his request had already been considered, and therefore did not qualify for reconsideration by the ABCMR. A copy of the November 28, 2006 ABCMR letter is attached hereto and incorporated herein as Exhibit 16. In the November 28th letter, the Board told Plaintiff you have the "option to seek relief in a court of appropriate jurisdiction."

**Count I**

67. Plaintiff restates, realleges and incorporates by reference the allegations in paragraphs 1 through 66.

68. The internal ABCMR memorandum dated January 2, 1959 was prepared after reviewing Plaintiff's OER and personnel file.

69. The January 2, 1959 ABCMR internal memorandum states that there was an OER in Plaintiff's file that indicated Plaintiff was on active duty for two consecutive six-month periods in 1957 and that Plaintiff's senior rating officer stated that Plaintiff was not recommended for promotion.

70. The January 2, 1959 ABCMR memorandum does not reflect any other adverse information either in Plaintiff's OERs or Plaintiff's personnel file.

71. The erroneous 1957 OER was the only adverse information contained in Plaintiff's personnel file that was reviewed by the 1958 Captain selection board.

72. Because the erroneous 1957 OER that was purportedly based on 12 months of active duty (significantly longer than the typical two weeks of active duty served by a Reserve Officer) was the only adverse information in Plaintiff's personnel file as noted by the ABCMR internal memorandum, and contained an adverse recommendation that Plaintiff not be promoted to Captain, it is evident that the 1958 Captain selection board gave great weight to the erroneous 1957 OER in determining not to select Plaintiff for promotion.

73. The action of the 1958 Captain selection board was arbitrary and capricious because Plaintiff's personnel file that was reviewed by the selection board improperly included the erroneous 1957 OER.

**Count II**

74 Plaintiff restates and realleges the allegations set forth in paragraphs 1 through 73 which are incorporated herein by reference.

75. On January 7, 1959, the ABCMR wrongfully denied Plaintiff's appeal.

76. The January 7, 1959 ABCMR decision was arbitrary and capricious because that decision was based upon the erroneous 1957 OER and the erroneous January 2, 1959 ABCMR internal memorandum.

**Count III**

77. Plaintiff restates and realleges the allegations in paragraphs 1 through 76, which are incorporated herein by reference.

78. After learning about the existence of the erroneous January 2, 1959 ABCMR memorandum and the erroneous 1957 OER, Plaintiff applied to the ABCMR for reconsideration of the 1959 decision based on the discovery of this new relevant evidence that appeared to contradict the basis for the original 1959 ABCMR decision.

79. In its July 7, 2003 letter, the ABCMR denied Plaintiff's request for reconsideration but invited Plaintiff to submit copies of relevant pay records for the 1957 time period to show that he was not on active duty for the entire year and to show that the 1957 OER was in error.

80. On June 8, 2005, Plaintiff complied with the ABCMR suggestion and submitted a revised request that included copies of the relevant pay records for 1957 that showed Plaintiff did not serve two consecutive six month periods of active duty, thus refuting the information in the erroneous 1957 OER and the erroneous 1959 internal ABCMR memorandum.

81. In its January 26, 2006 decision, the ABCMR admitted that Plaintiff's pay records show that Plaintiff was not on active duty for two consecutive six-month periods in 1957 and that both the 1957 OER and the January 2, 1959 internal ABCMR memorandum were legally in error.

82. The January 26, 2006 ABCMR decision was arbitrary and capricious because:

(A) Plaintiff could not have reasonably discovered the erroneous 1957 OER and the erroneous January 2, 1959 internal ABCMR memorandum in 1959 because he was totally unaware that such documents even existed and the Army wrongfully failed to provide Plaintiff with copies of said documents;

(B) Because Plaintiff was totally unaware of the erroneous 1957 OER and the January 2, 1959 internal ABCMR memorandum and the Army wrongfully failed to provide Plaintiff with copies of said documents, Plaintiff could not have filed for reconsideration within the original three-year period. Indeed, Plaintiff filed within the original three-year statute of limitations, since the statute of limitations runs from the time an applicant discovers the Government "error or injustice" which is the basis for his claim. 10 U.S.C. § 1552 (b);

(C) Plaintiff has acted in good faith and without any undue delay throughout these proceedings, and Plaintiff's request to the ABCMR was not barred by the doctrine of laches;

(D) The ABCMR admits that the substantive basis for Plaintiff's claim has legal merit; and

(E) Because of the underlying circumstances of this matter, even if Plaintiff had not timely filed within three years of discovering the erroneous reasons for the refusal to promote, the interests of justice would have excused Plaintiff's failure to timely file for reconsideration of the 1959 ABCMR decision.

**PRAYER**

WHEREFORE, Plaintiff prays that the Court enter judgment in favor of Plaintiff and against Defendant, and reverse and remand this matter to the Army Board for Correction of Military Records with direction:

(a) to grant Plaintiff's request for reconsideration and reverse the January 1959 ABCMR decision;

(b) to expunge all records of Plaintiff's wrongful separation from the Army Officer Reserve Corps and to reinstate Plaintiff's commission as a reserve officer in the Army Reserve Corps;

(c) to award Plaintiff monetary damages equal to the pay he would have received had Plaintiff not been wrongfully separated;

(d) to initiate action to convene a special selection board to consider Plaintiff for promotion in the ordinary course to Captain, Major, Lieutenant Colonel and Colonel when Plaintiff would have been eligible for such promotions in the absence of his wrongful discharge from the U.S. Army Reserve (Plaintiff was and still is prepared to attend the Command and General Staff College in order to qualify for promotion to full Colonel); and

(e) to recognize Plaintiff's entitlement to retire from the Army ORC with at least twenty (20) qualifying years of service as of November 23, 1986, when Plaintiff became 60 years of age; and Plaintiff further prays that this Court award Plaintiff retirement pay since November 23, 1986 in at least the amount of $273 per month (the retirement pay of a first lieutenant) until the date of judgment, plus interest at the Treasury rate from November 23, 1986.

Plaintiff further prays that this Court adjust the retirement pay awarded to the rank at which Plaintiff would have been promoted as of his retirement ($ 497 per month for Lieutenant Colonel and $ 568 per month for full Colonel), plus interest at the Treasury rate from November 23, 1986.

Furthermore, Plaintiff prays the Court find that based in part on the Army's prior admissions, there is no substantial basis for the January 26, 2006 decision of the Army Board for Correction of Military Records, and, as a result, award Plaintiff his reasonable attorneys fees and costs under the Equal Access to Justice Act, and award all such further relief the Court deems just and appropriate.

Respectfully submitted,

S/Gilbert J. Ginsburg
Attorney and Counselor at Law
1250 24th Street NW, Suite 350
Washington, DC 20037
Tel: (202) 776-7772
Fax: (202) 776-7773
E-mail: gilgins@aol.com

Counsel for Mathew Levy

Dated: March 12, 2008

OF COUNSEL:

Timothy Sullivan
Stephen Jeffery
Katherine Gehringer
Thompson Coburn LLP
1909 K. St. NW, Suite 600
Washington, DC 20006

# Exhibits

Exhibit 1

HEADQUARTERS
NEW YORK MILITARY DISTRICT
90 Church Street
New York 7, N.Y.

SPECIAL ORDERS)

NUMBER 46) E X T R A C T 4 March 1952

******* *******

40. Fol Examining Board for direct appointment in the ORC superseding Board apt by par 67 SO 233 as amended, this Hqs, 1951, is apt to meet at the call of the President at 30 W 44th St, Room 1102D, New York 36 NY, for the purpose of processing such applicants for appointment as may be authorized to appear for examination. AUTH: SR 140-15-1, 1950, and WCL 24959, TAG, AGPRA-A dated 8 Nov 1950, and Ltr, AHFAG-CC (PR)334, Hq 1st Army, 3 Feb 51, subj: "Boards of Officers for ORC Appointments".

PERMANENT MEMBER

CAPT JOSEPH E PLOCICA 01796523 MPC

TEMPORARY – ALTERNATE MEMBERS

COL JOHN H ALLEN 0103883 ARTY
LT COL JAMES F CUTTER 0352842 ARMOR
LT COL JOHN B HOAK JR 0276599 MPC
LT COL HOLMES A JONES 0249794 TC
LT COL BENJAMIN LUBOVSKY 0443671 AGC
LT COL EDWARD O'DONOHUE 0498564 MPC
LT COL PERRY L PARR 0175561 ARTY
LT COL ROBERT E TERWILLEGAR 0273626 INF
LT COL ARTHUR V WILLIAMS 0250035 INF
MAJ RICHARD J BEST 01102153 CE
MAJ ARCHIE BURKE 0486001 QMC
MAJ THOMAS F DARNELL 01639790 SIGC
MAJ JOHN J DEVLIN 0460416 ARTY
MAJ GEORGE FLINT 044970 SIGC
MAJ WILLIAM J HERMAN 01283427 INF
MAJ ROY E LEDIG 0409322 ARTY
MAJ WILLIAM F MURPHY 01295067 TC
MAJ SAMUEL PHILLIPS 01283501 INF
MAJ ALFRED W POUSARD 0419373 ARTY
MAJ LLOYD E SHLPLER 037445 MSC
MAJ EDGAR J TINGLE 0368374 FC
MAJ RUDOLPH URBACH 01845529 AGC
CAPT WILLIAM H ACKERMAN 0765587 ARTY
CAPT THOMAS P ASBURY 01946426 TC
CAPT HOWARD C BLISS 0934120 TC
CAPT EDWARD A BROWN 01949154 TC
CAPT YVONNE S CUMMING L1010144 WAC
CAPT IRWIN B EISEN 01545841 INF
LT COL LEONARD D CUMMINGS 0276867 AGC
LT COL PAUL M FELLENGER 0288439 TC
LT COL FREDERIC W HODGE 0241338 ARTY
LT COL JULIO R LACEDONIA 0300495 INF
LT COL CHARLES B MILLS JR 0509714 TC
LT COL CHARLES A O'REILLY JR 031881 ARTY
LT COL ERNEST W PHILPOT 030627 TC
LT COL ROBERT W WARD 0301051 ARTY
MAJ ROBERT E BENEDICT 0379808 INF
MAJ GAYLORD L BEIR 01286061 INF
MAJ WILLIAM H CARRIER 0183039 MPC
MAJ GORDON W DAVIS 0314680 CMLC
MAJ WILLARD EDGERTON 0502641 QMC
MAJ KENNETH G FLOOD 0450862 SIGC
MAJ STANLEY A KARAS 0885732 INF
MAJ RICHARD G LYONS 01893232 INF
MAJ EDGAR G OLSEN 0510553 AGC
MAJ ANTHONY M PICO 0346048 INF
MAJ CECIL M SCOTT 01030725 TC
MAJ EDWARD J STEWART 0428112 INF
MAJ WILLIAM D TAPS 01543384 MSC
MAJ CLYDE J VILLEMEZ 01101255 CE
CAPT JAMES S ADAMS 01030205 TC
CAPT WALTER F EMBLEY 01117800 CE
CAPT JOHN A BOUNDS 01529715 AGC
CAPT WALTER A BROWN 01543277 MSC
CAPT WILLIAM E DOOLEY 01010286 ARMOR
CAPT JOHN F FISK IV 01013539 ARTY

par 40 SO 46 dtd 4 Mar 52 (contd) Hq NY Mil Dist 1242d ASU

CAPT TED E GORDINIER 01323921 INF
CAPT LEONARD D HANNEY 01316190 INF
CAPT MELVIN N HULSE 0885776 INF
CAPT WILLIAM J LETTIRE 01637925 SIGC
CAPT EDWARD H LONG 0450384 INF
CAPT ALLEN J MacGILL 0371979 AGC
CAPT JAMES C PEARSON 01548122 ORDC
CAPT CURTIS T SPENCE 0407824 ORDC
CAPT DONALD R STANTON 01636697 SIGC
CAPT ROBERT D THAYER 01894430 AGC
1ST LT ALTER G COLEMAN 0372191 INF
2D LT ERNEST R WRIGHTMAN 02041220 AGC

CAPT DOMINICK J GRANDINETTI 01301475 INF
CAPT RAYMOND J HAYES 01550616 ORDC
CAPT DONALD R LEE 0922411 ORDC
CAPT EDWARD D LIVERNOIS 01014788 ARMOR
CAPT CHARLES A LYON 0479473 AGC
CAPT JOHN MUSACCHIO 01052898 ARTY
CAPT SIGMOND J SONNENFELD 01169747 ARTY
CAPT HENRY D STACY 02055952 MSC
CAPT SUSAN B THISLER L151 WAC
CAPT ALLAN C WILSON 01050995 ARTY
1ST LT ALEXANDER M ROSIE 02039153 QMC

<u>RESERVE OFFICERS</u>

| | |
|---|---|
| COL LOWELL D BEATTY 0903578 CE-USAR | 32 Ave of Americas, Rm. 2544 New York NY |
| COL FELIX F BURAAF 0274920 CMLC-USAR | 101 E 7th St, New York NY |
| COL DAVID T CLEMENTS 0312879 JMC-USAR | 10 Crescent Rd, Great Neck NY |
| COL FRANCIS B ELDER 0353740 MSC-USAR | 1790 Bway, % Apha, New York NY |
| COL PATRICK E FAY 0333123 CMLC-USAR | 408 Park Pl, Brooklyn NY |
| COL FREDERICK F GREENMAN 0140577 JAGC-USAR | 46 Cedar St, New York NY |
| COL PERCY O HALL 0246273 CMLC-USAR | 281 4th Ave, New York NY |
| COL HAROLD E HUTCHINGS 0259395 MI-USAR | %Chicago Tribune, Times Bldg 229 W 42d St, New York NY |
| COL ROBERT H KILROE 0193603 JAGC-USAR | 29 Claremont Ave, New York 27 NY |
| COL GEORGE S KOVACH 0901631 MI-USAR | 118 W 57th St, New York 19 NY |
| COL ARTHUR LEVITT 0373480 JAGC-USAR | 369 Lexington Ave, New York NY |
| COL THOMAS J RIGGS 0402873 MI-USAR | Suite 350, 420 Lexington Ave New York NY |
| COL HENRY M SACHS 0223120 ORDC-USAR | 875 Park Ave, New York 21 NY |
| COL JOHN W SCHERMERHORN 0192213 MI-USAR | 54 Park Ave, Manhasset NY |
| COL MORTON A SEIDENFELD 0246681 MSC-USAR | 40 Madison, Oceanside LI NY |
| COL CHARLES A SELBY 0332694 MI-USAR | 200 E 66th St, New York NY |
| COL AUSTIN L SHEPPARD 0267602 ARMOR-USAR | 34 St Austin's Pl, Staten Island 10 NY |
| COL ARTHUR J SPRING 0322302 CMC-USAR | US Maritime Svc, Sheepshead Bay Brooklyn NY |
| COL RALPH C SWEENEY 0108393 MSC-USAR | 21 No Bway, White Plains NY |
| LT COL MARCEL P AILLERY 0285062 CE-USAR | 450 E 63d St, New York NY |
| LT COL KENNETH S ALLEN 0170099 MI-USAR | 26 Halstead Pl, Rye NY |
| LT COL FRANCIS M ADAMS 0910270 TC-USAR | 234-20 Union Turnpike, Bellerose LI NY |
| LT COL JACK E BUCKLEY 01703302 CMLC-USAR | 90 Church St, Rm 604, New York 7 NY |
| LT COL ROBERT E BUTTON 0454297 MI-USAR | %NBC, 30 Rockefeller Plaza, New York NY |
| LT COL LESLIE B CARPENTER 0218170 QMC-USAR | 9332 91st Ave, Woodhaven 21 NY |
| LT COL BART L CIFORELLI 01013443 MI-USAR | 40 Galston Ave, Brooklyn NY |
| LT COL ARTHUR M CLARK 0374405 CE-USAR | 85 Sprague Rd, Scarsdale NY |
| LT COL WARNER G COSGROVE JR 01010302 ARMOR-USAR | 72 Gracie Sq, New York 2 NY |
| LT COL SHELDON M COVELL 0273524 MI-USAR | 111 Vernon Ave, Yonkers NY |
| LT COL LLOYD E DEWEY 0319968 CE-USAR | %New York University, 10 Washington Sq, New York NY |
| LT COL LUDWIG R ENGLER 0901767 SIGC-USAR | 523 E 14th St, New York NY |

par 40 SO 46 dtd 4 Mar 52 (contd) Hq NY Mil Dist 1242d ASU

| | |
|---|---|
| LT COL HAROLD J DUNLAP 0281572 MC-USAR | 165 Meadow Lane, New Rochelle NY |
| LT COL GEORGE C GREEN 0218076 QMC-USAR | Chatham Rd, Chappaqua NY |
| LT COL FRANK R JOHNSON 0221977 CMLC-USAR | 254 W 31st St, New York NY |
| LT COL ROBERT J KOLB 0456433 CE-USAR | 511 Fifth Ave, New York NY |
| LT COL EDWARD J LEONARD 0287642 MI-USAR | 3405 44th St, Long Island City NY |
| LT COL SELIG J LEVITAN 0276524 CMLC-USAR | 18 Wyndham Rd, Scarsdale NY |
| LT COL HENRY LIEBMAN 0175933 MSC-USAR | 440 E 23d St, New York NY |
| LT COL WILLIAM C MULLIGAN 0355518 CE-USAR | 354 4th Ave, New York NY |
| LT COL BENJAMIN D PILE 0465586 MSC-USAR | 50-20 213th St, Bayside LI NY |
| LT COL WM REINER-DEUTSCH 0483610 MSC-USAR | 36-20 211th St, Bayside LI NY |
| LT COL MURRAY H RESNI-COFF 0172906 ORDC-USAR | 390 1st Ave, New York 10 NY |
| LT COL WILLIAM E ROBINS 0471314 ORDC-USAR | 89-07 Springfield Blvd, Queens Village LI NY |
| LT COL FRANK ROHR 0145925 DC-USAR | 617 Lafayette Blvd, Long Beach LI NY |
| LT COL JAMES A ROONEY 0423036 MSC-USAR | 11 Court St, White Plains NY |
| LT COL NATHAN RUDITSKY 0133782 MI-USAR | 3341 Reservoir Oval, Bronx NY |
| LT COL LLOYD B SANDERSON 0143030 TC-USAR | 424 E 52d St, New York 22 NY |
| LT COL MAURICE SHERMAN 0266870 CE-USAR | 114-03 127th St, S Ozone Park LI NY |
| LT COL EMANUEL SINGER 0476685 SIGC-USAR | 300 W 108th St, New York NY |
| LT COL HARRY M SMITH 0504098 JAGC-USAR | 21 Sunset Drive, Ossining NY |
| LT COL HAROLD L STIEBEL 0338241 AGC-USAR | 100 W 58th St, New York NY |
| LT COL PAUL F VALENTINE 0917238 FC-USAR | 7 White Plains Ave, White Plains NY |
| LT COL JOHN E VANCE 0229832 CE-USAR | 390 West End Ave, New York NY |
| LT COL CARLTON B WIGHT 0914312 AGC-USAR | 156 Brompton Rd, Garden City LI NY |
| LT COL KARL G WINKELHORN 0921999 MI-USAR | 12 E 97th St, New York NY |
| LT COL MARK WOLLFELD 0314054 ARMOR-USAR | 142-34 59th Ave, Flushing LI NY |
| MAJ CHARLES ALLOC 01321276 MI-USAR | 115 Stuyvesant Pk, St George SI NY |
| MAJ WILLIAM F BARMS 0154832 ORDC-USAR | 14-34 141st St, Whitestone NY |
| MAJ GEORGE BERKOWITZ 0486199 DC-USAR | 726 N Bway, Yonkers NY |
| MAJ FRANCIS M BISHOP 0506694 AGC-USAR | 51 Madison Ave, Rm 1110, New York NY |
| MAJ JOHN D BLAUVELT 0264354 FC-USAR | 2120 Clove Rd, Grassmere SI NY |
| MAJ ROY E CAUBLE 0320821 TC-USAR | 114-44 226th St, St Albans NY |
| MAJ FRANK J CHELKONAS 0395942 MI-USAR | 919B Morrison Ave, New York NY |
| MAJ ALONZO W CLARK 0519039 MSC-USAR | Old Roaring Brook Rd, Mt Kisco NY |
| MAJ VICTOR S DE GUINZBOURG 01692515 MI-USAR | 52 Garden Pl, Brooklyn NY |
| MAJ DAVID M EICHORN 0482124 CMLC-USAR | 85-14 66th Ave, Forest Hills LI NY |
| MAJ LEE FELDER 01283930 MI-USAR | 150 Burns St, Forest Hills LI NY |
| MAJ JAMES P GALLATIN 0408964 MI-USAR | 1109 Madison Ave, New York NY |
| MAJ FERDINAND GLADZIK JR 0224213 MI-USAR | 1856 51st St, Brooklyn NY |
| MAJ CLIFFORD O HARRIS 01112752 CE-USAR | 69-20D 186th Lane, Flushing LI NY |
| MAJ ALBERT M HARTIG 01591178 MI-USAR | 34-50 59th St, Woodside LI NY |
| MAJ ROBERT H HARTMAN 0294219 MI-USAR | 530 E 86th St, New York NY |
| AMJ CLYDE JENNINGS JR 01037071 CMLC-USAR | 524 E 20th St, New York NY |
| MAJ JACOB J KASNITZ 0522100 TC-USAR | 158 Hillcrest Ave, Manhasset LI NY |
| MAJ ROCCO N LA FEMINA 01041380 ARTY-USAR | 1167 E 87th St, Brooklyn NY |
| MAJ ARTHUR S LAUNDON 0454369 ARMOR-USAR | 70 Pine St, New York 4 NY |
| MAJ PETER R LAVEZOLI 0320010 MI-USAR | 92 Seventh Ave, Brooklyn NY |
| MAJ PAUL M LEAKE 01644533 MI-USAR | 340 E 63d St, New York NY |
| MAJ VICTOR LEIBMANN 01554031 MI-USAR | 360 Cabrini Blvd, New York NY |
| MAJ JAMES J LOEB 0495558 MI-USAR | 242 E 19th St, New York NY |
| MAJ FRANK A MANUS 01573392 ORDC-USAR | 14 Peachtree Lane, Carle Place NY |
| MAJ ARMOUR E MARTIN 0569310 MI-USAR | 1 Wall St, New York NY |
| MAJ EVA MAZUR N725452 ANC-USAR | 31-44 85th St, Jackson Heights NY |
| MAJ JAMES E McINTYRE 0181162 QMC-USAR | 136 Homewood Ave, Yonkers NY |

par 40 SO46 dtd 4 Mar 52 (contd) Hq NY Mil Dist 1242d ASU

| | |
|---|---|
| MAJ IRVING W MENDELSON 0443940 AGC-USAR | 242 E 62d St, New York NY |
| MAJ GEORGE H MILLER 0527353 DC-USAR | 655 E 14th St, New York NY |
| MAJ GEORGE S MILLER 0519436 DC-USAR | 32-02 32d St, Astoria NY |
| MAJ HENRY Q MIDDENDORF 0959018 AS_USAR | 24 Monroe Pl, Brooklyn NY |
| MAJ HARRY B MONTUREAN 0224182 DC-USAR | 551 W 86th St, New York NY |
| MAJ CHARLES W MYRON 0173157 CMLC-USAR | 333 E 43d St, New York NY |
| MAJ WALTER L NEVILLE 0289686 ARTY-USAR | 2170 Madison Ave, New York 35 NY |
| MAJ NORMAN B NUSSBAUM 01001205 AGC-USAR | 158-18 Riverside Dr, New York NY |
| MAJ JOSEPH N OLMSTEAD 01030699 ARMOR_USAR | 1 William St, New York NY |
| MAJ FRED S PERRIN 01002710 JAGC-USAR | 515 Madison Ave , % Coca Cola Co, New York NY |
| MAJ BASIL PETROV 0920929 MI-USAR | 440 E 23d St, New York NY |
| MAJ EDWARD O B REID 01000457 AGC-USAR | 108 E 66th St, New York NY |
| MAJ ARTHUR SCHEER 0234528 MC-USAR | 435 W 44th St, New York 36 NY |
| MAJ AARON SCHWARTZ 01542938 MSC-USAR | 1135 White Plains Rd, Bronx NY |
| MAJ GEORGE SCHWARTZ 0264177 MC-USAR | 30 E 40th St, New York NY |
| MAJ MARVIN J SILVERMAN 0317389 CMLC-USAR | 2 Chedworth Rd, Scarsdale NY |
| MAJ TOBIAS STEGMAN 01944737 TC-USAR | 1491 Macombs Rd, Bronx NY |
| MAJ RICHARD W TUCKER 0414595 FC-USAR | 8 Peter Cooper Rd, New York NY |
| MAJ GEORGE F J VAN DER BOON 0902409 MI-USAR | 247 E 52d St, New York NY |
| MAJ GEORGE R VINCENT 0486655 SS-USAR | 401 Carroll Ave, Mamaroneck NY |
| MAJ SOLOMON WIENER 0361292 CMLC-USAR | 453 E 14th St, New York NY |
| MAJ HERMAN ZUCKERMAN 0242704 ARMOR-USAR | 111-45 76th Ave, Forest Hills NY |
| CAPT WILLIAM H BABCOCK 01641050 SIGC-USAR | 44 E 20th St, Apt 14, New York NY |
| CAPT CLARENCE S BARASCH 01642516 AS-USAR | 551 Fifth Ave, New York NY |
| CAPT FELIX BILGREY 0588261 MI-USAR | 33 Riverside Dr, New York NY |
| CAPT CARMINE L CALARCO 0960910 JAGC-USAR | 74 Grove St, New York NY |
| CAPT PARNELL J T CALLAHAN 01059395 JAGC-USAR | 37 Wall St, New York NY |
| CAPT JOSEPH A COHN 0544945 DC-USAR | 2083 E 16th St, Brooklyn NY |
| CAPT ANNA E COLGAN L202406 WAC-USAR | 2658 30th St, Long Island City NY |
| CAPT PETER J COUGHTER 01589138 TC-USAR | 1083 E 37th St, Brooklyn 10 NY |
| CAPT EDMOND B CUCE 01110437 MSC-USAR | 2723 Wallace Ave, Bronx NY |
| CAPT HAROLD J ENGEL 01645482 SIGC-USAR | 544 Beach 68th St, Arverne NY |
| CAPT EDWIN N FOSTER 0324927 VC-USAR | 1833 Carnaga Ave, Far Rockaway NY |
| CAPT ROBERT T FROSCH 01315575 TC-USAR | 51-39 Ireland St, Elmhurst LI NY |
| CAPT ALFRED E GALL 01536046 CMLC-USAR | 21-21 Cedar Ave, New York 53 NY |
| CAPT JAMES G HERGEN 01822142 ARMOR_USAR | 231 127th St, Bell Harbor LI NY |
| CAPT THOMAS G KEENAN 01554918 ORDC-USAR | 114 E 11th St, New York 3 NY |
| CAPT ARTHUR W KEISON 02048363 MSC-USAR | 7 Peter Cooper Rd, New York NY |
| CAPT SAM KIRSCHENBAUM 01344600 MSC-USAR | 2457 E 26th St, Brooklyn NY |
| CAPT GEORGE W LANDAU 01949580 MI-USAR | 11 Bway, Rm 460, New York NY |
| CAPT JOSEPHINE M LANDES N722189 ANC-USAR | 30 Myrtle Ave, Staten Island NY |
| CAPT SOLOMON MEYER 0530426 DC-USAR | 3591 Bainbridge Ave, Bronx NY |
| CAPT JOSEPH N MONTEVERDE 01585917 QMC-USAR | 180 Hall St, Brooklyn NY |
| CAPT JAMES F MURRAY 02042786 FC-USAR | 211 Bedford Blvd, Bronx NY |
| CAPT HYMAN NIESWITZ 01945440 TC-USAR | 43-06 45th St, Sunnyside LI NY |
| CAPT HAROLD NORDLIGHT 096?017 JAGC-USAR | 51 Chambers St, New York 7 NY |

par 40 SO 46 dtd 4 Mar 52 (contd) Hq NY Mil Dist 1242d ASU

| | |
|---|---|
| CAPT MEYER ROSES 01948932 JAGC-USAR | 441 E 20th St, New York 10 NY |
| CAPT CHARLES T QUINN 01036345 CMLC-USAR | 80 Burr Ave, Hempstead NY |
| CAPT IRVING J SCHWARTZ 01579084 MSC-USAR | 4611 12th Ave, Brooklyn NY |
| CAPT SEYMOUR E SIMS 01055134 ARTY-USAR | 449 W 14th St, New York NY |
| CAPT HERMAN B STEIN 01716607 VC-USAR | 137 Powerhouse Rd, Roslyn Heights NY |
| CAPT DAVID WILNER 01646709 SIGC-USAR | 1041 Findley Ave, Bronx NY |
| CAPT LEO H MURDRIE 0513059 VC-USAR | 85 S Highland, Ossining NY |
| 1ST LT LOUIS ASTEROFF 0981057 TC-USAR | 3425 Gates Place, Bronx NY |
| 1ST LT MILTON DICK 01546138 MSC-USAR | 538 E 21st St, Brooklyn NY |
| 1ST LT BEN J FROMKIN 01004117 SS-USAR | 147A S Ulmer Dr, Brooklyn NY |
| 1ST LT SIDNEY KATZ 02000899 MSC-USAR | 73-05 180th St, Flushing NY |
| 1ST LT ALLEN I MILLER 01535801 SS-USAR | 225 E 47th St, New York NY |
| 1ST LT PETER RUMORE 0971550 MSC-USAR | 648 E 51st St, Brooklyn NY |
| 1ST LT ROBERT J SOUTHER 01062705 TC-USAR | 100 Ketchum Ave, Amytiville LI NY |
| 2D LT MILTON GUDESPLATT 0980066 MSC-USAR | 37-12 99th St, Corona LI NY |
| 2D LT MATTHEW LEVY 0981133 CMLC-USAR | 2757 Claflin Ave, Bronx NY |
| 2D LT JAMES T WARD 0987793 AGC-USAR | 321 E 55th St, New York NY |

Reserve Officers serving as members of this Board, not on Extended Active Duty, will be credited in accordance w/par 4b (2) (3), DA SR 140-180-5, for the work performed as a member of this Board.

Junior Member of the Board will render certificates of individual performance of Reserve Duty, in accordance w/prov of Sec III, DA SR 140-180-25, on each member serving on the Board.

\#\#\#\#\#\#\# \#\#\#\#\#\#

BY ORDER OF THE CHIEF, NEW YORK MILITARY DISTRICT:

OFFICIAL:

Lester A. Meyers
LESTER A MEYERS
Capt, AGC
Asst AG

LESTER A MEYERS
Capt, AGC
Asst AG

DISTRIBUTION: U
ORC Integration Bd 300
Off Sec 2

Exhibit 2

HEADQUARTERS US ARMY MILITARY DISTRICT NEW YORK
90 Church Street, New York 7, N. Y.

SPECIAL ORDERS
NUMBER 108

5 June 1957

EXTRACT

1. Fol Examining Board for direct apt in the USAR, for New York City Area superseding Board apt by par 1 SO 130, this Hq, 1956, as amended, is apt to meet at the call of the Senior Member thereof for the purpose of processing such applicants for apt as may be authorized to appear for examination. AUTH: SR 140-16-1 and Cir 79 Hq First Army 1955.

PERMANENT MEMBERS

GRADE, NAME, SN, BR

COL THOMAS R LELAND 051004 AGC
COL CHARLES H JONES JR 0216782 INF
COL HARRY C BRINDLE 051380 TC
COL EARL M COOPER 034191 INF
LT COL PAUL W DILLINGHAM 0200926 CE
LT COL JAY W DOVERSPIKE 042829 CE
LT COL DONALD K HUGHES 038706 MPC
LT COL JOSEPH W KAHN 0337216 AGC
MAJ FRANK S ARCHBOLD 01947184 TC
MAJ RONALD I O'BRYAN 01304836 INF
MAJ ROBERT H PEOPLES 0518706 INF
MAJ CHARLES J BENGE 01284086 INF
MAJ STANLEY ZABLOCKI 01592741 QMC
MAJ JOSEPH R KINZIE 0455334 ARTY
MAJ JOHN T DUNPHY 01337409 INF
MAJ ROBERT L SWEENEY 01285137 ARTY
MAJ STOKES K ENGLE 01641271 SIGC
MAJ PHILIP J CURRAN 01637252 SIGC
MAJ WILLIAM A RAU 01011048 ARMOR
MAJ JOHN HERINA 01103689 CE
MAJ LOUIS J DUNT 01319831 INF
CAPT JOSEPH C BLEVINS 0983702 AGC
CAPT CONSTANTINE COVOTSOS 02052089 AGC
CAPT HERMAN S WEISS 01312368 INF
CAPT WALTER E HARTZ 02017848 INF
CAPT ALAN G ROBERTSON 01998454 ARMOR
CAPT CALVIN J DI GIACOMANDREA 01320692 ARMOR
CAPT RALPH R PURGESS 01800077 MPC

GRADE, NAME, SN, BR

LT COL ARTHUR M HILLERY JR 0410116 INF
LT COL JOHN T BROWNE 010002 ARTY
LT COL JOE E STARNS 01288643 INF
LT COL ELLIS F RUSH 0395348 INF
LT COL FRANCIS R McENANY 0400133 ARTY
LT COL MILTON A EDDY 01172442 ARTY
LT COL HARRY F LOFTON 0265634 INF
LT COL GEORGE F HAWKINS 0233005 ARTY
MAJ RALPH W ALDRICH 01036890 CMLC
MAJ TERRENCE A DE BEAL 01183499 ARTY
MAJ PATRICK E CALLAGHAN 01566561 MPC
MAJ PAUL RIPPY 01673541 ORDC
MAJ ARTHUR F FORAN JR 0402828 QMC
MAJ GERARD B McGARRY 01584582 QMC
MAJ ALFRED O ANDERSEN 0481974 AGC
MAJ HENRY D STACY 02055952 MSC
MAJ SAM C DE LOACH 01944669 TC
MAJ GUY L COLSON 0269193 INF
MAJ WILLIAM E McNEE 02042734 ORDC
MAJ JOHN C WHITE 01042464 ARTY
MAJ ALBERT A SMITH 0319766 ARTY
CAPT ANGELO CENTRELLO 01032698 ARMOR
CAPT MARSHALL L KUHN 02262490 SIGC
CAPT JESSE HAMMERSTONE 0867422 ARMOR
CAPT JUSTIN J GEROULD 02007446 MSC
CAPT JEFFERSON S BOONE 01043872 ARTY
CAPT CRETIN L FISHER 02061630 MSC
1ST LT ROBERT K KRUG 01925344 INF

RESERVE MEMBERS

| | |
|---|---|
| COL KENNETH G ALLEN 0170099 MI-USAR | 35 Shady Glen Ct, New Rochelle NY |
| COL LOWELL D BEATTY 0908578 CE-USAR | Banksville Rd, Bedford NY |
| COL JOSEPH J BERHALTER 0281295 SIGC-USAR | 330 Thornton Rd, Englewood NJ |
| COL JAMES M BISBEE 0280632 ORDC-USAR | 1348 E 65th St, Brooklyn NY |
| COL HOUSTON A BROWN 0284648 SIGC-USAR | 39 Highmeadow Rd, Manhasset LI NY |
| COL GEORGE L CLARKE 0170681 ARTY-USAR | 148 Alta Ave, Yonkers 5 NY |
| COL DAVID T CLEMENTS 0312879 QMC-USAR | 10 Crescent Rd, Great Neck LI NY |
| COL FRANK J DE CARLO 0342897 INF-USAR | 316 Eighth Ave, N Pelham NY |
| COL GERALD D DORMAN 0404715 MC-USAR | 863 Park Ave, New York NY |

Par 1 SO 108 dtd 5 Jun 57 (contd) Hq US Army Mil Dist New York

RESERVE MEMBERS

| GRADE, NAME, SN, BR | ADDRESS |
|---|---|
| COL LESTER R DRAY JR 0369668 TC-USAR | 15 Mount Joy Ave, Scarsdale NY |
| COL WILLIAM H DRIBBEN 0382838 MPC-USAR | 1209 E 29th St, Brooklyn 10 NY |
| COL JACK B DUNN 0380432 AGC-USAR | 801 Bradford Ave, Westfield NJ |
| COL FRANCIS B ELDER 0363740 MSC-USAR | 1790 Bdwy, % Alpha, New York NY |
| COL LUDWIG R ENGLER 0901767 SIGC-USAR | % RCA Bldg, 66 Broad St, Rm 1004 New York NY |
| COL CHARLES W FICKE 0223759 INF-USAR | 28 Metropolitan Oval, Bronx NY |
| COL ARTHUR F FLOOD 0916225 TC-USAR | 15 Ingram St, Forest Hills NY |
| COL IRA H GENET 0223438 SIGC-USAR | 49 Beverly Rd, Great Neck NY |
| COL JOHN M GODFREY 0317681 ARTY-USAR | % J Baily, 40 Worth St, New York 13 NY |
| COL GEORGE C GREEN 0218076 QMC-USAR | 26 Chatham Rd, Chappaqua NY |
| COL AUGUST H GROESCHEL 0345922 MC-USAR | The New York Hosp, 525 E 68th St New York NY |
| COL FRANK H GUNDERSON 0223668 ARMOR-USAR | 2559 Sedgwick Ave, Bronx NY |
| COL JOHN J GUSSACK 0275468 CAMG-USAR | 135 Willow St, New York NY |
| COL CHARLES B GWYNN 0223492 ARTY-USAR | 149 Bdwy, % Clark Estates, New York NY |
| COL FREDERICK H HAUSER 0311304 JAGC-USAR | 1000 Hudson St, Apt 208, Hoboken NJ |
| COL CHARLES S HEAD JR 0254575 SIGC-USAR | 17 Kingsbury Rd, Garden City LI NY |
| COL LEO L HOFFMAN 0246889 INF-USAR | 140 Cabrini Blvd, New York 33 NY |
| COL HAROLD D HUTCHINGS 0295395 MI-USAR | % Chicago Tribune Times Bldg 229 W 43d St, New York NY |
| COL EDWARD S KING 0256720 MC-USAR | 4 W 43d St, New York NY |
| CHAP (COL) ARYEH LEV 0382144 CH-USAR | 1232 E 12th St, Brooklyn NY |
| COL ARTHUR LEVITT 0373480 JAGC-USAR | 22 E 40th St, New York 17 NY |
| COL ELMER P MARSHALL 0404151 SIGC-USAR | 325 Kings St, Portchester NY |
| COL DAVID E MAYER 0178166 MC-USAR | 12 E 87th St, New York NY |
| COL JEROME S PRINCE 0308778 ORDC-USAR | 26 Irving Lane, New Hyde Pk LI NY |
| COL JOHN E QUINN 0235067 INF-USAR | 1505 Silver St, New York 61 NY |
| COL FRED A RATHKE 0273410 ARMOR-USAR | 242 Talbot Pl, Clifton, Staten Island NY |
| COL JAMES E RICE JR 0237316 SIGC-USAR | 60 Hudson St, Rm 703, New York NY |
| COL WILLIAM RYBAK 0374617 CE-USAR | 93 Vincent Ave, Lynbrook NY |
| COL HENRY N SACHS 0223120 ORDC-USAR | 075 Park Ave, New York 21 NY |
| COL EDWARD R SAMUELS 0344625 QMC-USAR | 33 Argyle Rd, Scarsdale NY |
| COL JOHN W SCHERMERHORN 0193213 MI-USAR | 54 Park Ave, Manhasset NY |
| COL MORTON A SEIDENFELD 0246631 MSC-USAR | 40 Madison Ave, Ocean Side LI NY |
| COL CHARLES A SELBY 0332094 MI-USAR | 200 E 66th St, New York 2 NY |
| COL ALSTON L SHEPPERD 0267602 ARMOR-USAR | 34 St Austins Pl, Staten Island NY |
| COL WILLIAM F SORENSEN 0390061 TC-USAR | 2606 Clovermore Rd, Oceanside LI NY |
| COL ISAAC D SPIVACK 0263562 MC-USAR | 141-12 68th Dr, Flushing LI NY |
| COL RAY L TRAUTMAN 0201135 SS-USAR | 11 Perry Place, Bronxville NY |
| COL PAUL F VALENTINE 0917230 FC-USAR | 760 Lake St, White Plains NY |
| COL FRANK A VERGA 0377552 CAMG-USAR | 581 Summit Ave, Jersey City NJ |
| COL ALBERT L VREELAND 0298640 MI-USAR | 46 Woodland Ave, E Orange NJ |
| COL ALFRED P WALKER 0162611 SIGC-USAR | 200 E 66th St, New York NY |
| COL THOMAS J WALSH 0266012 QMC-USAR | 440 E 20th St, New York NY |
| COL ERWIN WIDMANN 0319008 CE-USAR | 1615 Schenectady Ave, Brooklyn NY |

FROM : FAX NO. : Nov. 21 2007 01:18PM P10

For 1 SO 100 dtd 5 Jun 57 (contd) Hq US Army Mil Dist New York

RESERVE MEMBERS

| GRADE, NAME, SN, BR | ADDRESS |
|---|---|
| 1ST LT JOSEPH F HYDOK 01073659 FC-USAR | 333 Washington Ave, Brooklyn NY |
| 1ST LT WILLIAM F JOHNSON 0378913 SS-USAR | 4 E 89th St, New York NY |
| 1ST LT LEON L KARTERON 01024595 ARMOR-USAR | 135 E 117th St, New York NY |
| 1ST LT LAWRENCE W KATZ 0969200 FC-USAR | 750 Grand Concourse NY |
| 1ST LT STEPHEN R KAYE 01875180 FC-USAR | 110 E 76th St, New York NY |
| 1ST LT JOHN J KEEGAN 01328007 MPC-USAR | 63-12 242d St, Douglaston NY |
| 1ST LT EDMOND R LARSEN 0905552 MSC-USAR | 240 W 150th St, New York NY |
| 1ST LT CHARLES S LASKY 0069048 AGC-USAR | 100-15 Grand Central Pkwy, Jamaica 2 NY |
| 1ST LT ROBERT E LATHAM 01330072 INF-USAR | 150 Poplar St, Garden City NY |
| 1ST LT PHILIP LEHRMAN 01305041 INF-USAR | 220-06 60th Ave, Queens Village NY |
| 1ST LT MATTHEW LEVY 0901133 CHLC-USAR | 2757 Claflin Ave, Bronx NY |
| ~~1ST LT ANTHONY J LIMASCI 01951219 AGC-USAR~~ | 30 Seaman Ave, Rockville Centre NY |
| 1ST LT EDWARD L LYNCH 02060109 SS-USAR | % Union Pacific RR Co, 120 Bdwy New York NY |
| 1ST LT YALE MARIENHOFF 02200568 FC-USAR | 34-15 74th St, Jackson Hts 72 NY |
| 1ST LT HENRY T McCABE 01385009 MPC-USAR | 212 E 53d St, New York NY |
| 1ST LT CHARLES E McDONOUGH 01033630 FC-USAR | 08 Iezia Terrace, E Patterson NJ |
| 1ST LT THOMAS J McGOLDRICK 02041470 ARTY-USAR | 64 Beverly Rd, Kew Gardens NY |
| 1ST LT LAWRENCE A NILSON 0983613 ARTY-USAR | 1512 Beach Ave, Bronx 60 NY |
| 1ST LT MILTON H PACHTER 01074006 INF-USAR | 1701 W 3d St, Brooklyn NY |
| 1ST LT WALTER ROSS 01534910 MSC-USAR | 15 Howard St, Mt Vernon NY |
| 1ST LT DAVID H ROTHENBERG 02020555 FC-USAR | 349 Campus Rd, Franklin Sq LI NY |
| 1ST LT THOMAS W RYLEY 01002056 INF-USAR | 32 Alexander Ave, Lynbrook NY |
| CHA (1ST LT) MORRIS SANDER 02270907 CH-USAR | 5701 Ft Hamilton Pkwy, Brooklyn NY |
| 1ST LT MILTON H SCHILLER 02007906 MPC-USAR | 2120 Benson Ave, Brooklyn NY |
| 1ST LT IRWIN M SHRUBSTEIN 01930963 ARMOR-USAR | 2114 Mapes Ave, Bronx NY |
| 1ST LT ANTHONY D SLOSEK 02012590 INF-USAR | 50-23 64th St, Woodside NY |
| 1ST LT MICHAEL A SQUILLANTE 02201471 INF-USAR | 95-35 104th St, Ozone Pk 16 NY |
| 1ST LT FRODYN THOMPSON JR 0076821 ARTY-USAR | 338 Macon St, Brooklyn 16 NY |
| 1ST LT JOSEPH A UCCI 01094035 FC-USAR | 23-46 31st Dr, Astoria 6 NY |
| 1ST LT JOHN A WALKE 01054855 ARTY-USAR | 801 W 137th St, New York 30 NY |
| 1ST LT JOSEPH S WILLIAMS 0979434 FC-USAR | 69-35 C 186th Lane, Fresh Meadows N |
| 2D LT KENNETH L BLOCM 04021904 AGC-USAR | 1520 Sheridan Ave, Bronx 57 NY |
| 2D LT BURTON L FINK C2273796 MSC-USAR | 200 Clinton St, Brooklyn NY |

FOR THE CHIEF:

OFFICIAL:

WALTER D McCAHAN
Colonel, GS
Chief of Staff

*William G Engelmann*
WILLIAM G ENGELMANN
Major, INF
Actg AG

DISTRIBUTION:
A, M, Q
Pers Concerned

| | | |
|---|---|---|
| Fin & Acctg Off, Ft Jay NY | 4 |
| CG First Army Attn: AHFAG-MR | 1 |
| CG First Army Attn: AHFAG-MP | 1 |
| RPMD, Bklyn Army Term, Bklyn NY | 1200 |

Exhibit 3

Lt Fuchs/lt/ev

CONTROL GROUPS BRANCH
RESERVE PERSONNEL MANAGEMENT DIVISION

25 August 1955
DATE

MEMORANDUM

TO: Administrative Officer
Reserve Personnel Management Division

1. Application for award of the Armed Forces Reserve Medal has been received from:

| Mathew Levy | 1st Lt | O 981 133 |
|---|---|---|
| NAME | RANK | SERVICE NUMBER |

2757 Claflin Avenue, Bronx, New York
ADDRESS

2. Applicant meets the requirements of paragraph 37, AR 672-15 dated 24 November 1954 for award of:

[X] Armed Forces Reserve Medal.

[ ] ( ) Ten year device(s).
Number

1703

FILE 1 NOV 2007

25 AUG 1955

[illegible]
JOHN J FUCHS
1st Lt, Inf
Asst Pers Mgt Off

ARMED FORCES RESERVE MEDAL

1. The Armed Forces Reserve Medal is awarded for honorable and satisfactory service as a member or former member of one or more of the reserve components of the Armed Forces of the United States for a period of 10 years under the following conditions:

a. The 10 years of service must be within a period of 12 consecutive years.

b. A year of service after 1 July 1949 is one in which at least 50 retirement points are earned.

c. Service in a regular component must be in a concurrent reserve status.

d. Such service shall not include service in Honorary Reserve and/or Honorary Retired list.

2. For the purpose of determining eligibility, service as a member of a reserve component shall also include all service in the following organizations:

a. National Guard of the United States.
b. NG while in US Service.
c. Federally recognized NG prior to 1933.
d. Officer's Reserve Corps.
e. Enlisted Reserve Corps.
f. Organized Reserve Corps.
g. Army of the United States.
h. Naval Reserve (Force).
i. Marine Corps Reserve.
j. Limited Service Marine Corps Reserve.
k. Naval Militia.
l. National Naval Volunteer.
m. Air National Guard.
n. Air Force Reserve.
o. Air Force of the United States.
p. Coast Guard Reserve.

3. One 10-year device is authorized to denote service for each ten year period in addition to and under the same conditions as prescribed for the award of the Armed Force's Reserve Medal.

DD-214 / 215 Replacement - Free on-line Form SF-180 Processing
Military Replacement Certificates www.Military-Certificates.com
Ads by Google
Advertise on this site

Army Navy Air Force GRUNT Marine Corps Coast Guard Careers

**Page Links**

- Home
- Feedback
- Careers NEW!
- Awards

**Shopping**

- USMedals.com
- ROTC/JROTC
- Grunt Gear
- Education
- Posters
- Flags
- Military Books
- Military Movies

**Forum**

- Grunt Forum
- Cadet Forum

**Site-Ring**

- Join

**MilTerms.com**

- Dictionary

**Grunt Award**

- Apply

**Rank Insignia**

- Army
  - AROTC
  - AJROTC
- Navy
  - NJROTC
- Air Force
  - AFROTC
  - AFJROTC
  - USAF Academy
  - Civil Air Patrol
- Marine Corps
  - MCJROTC
- Coast Guard

**Medals/Ribbons**

- Rackbuilder
- Army

# Armed Forces Reserve Medal





Click here to buy this medal/ribbon (Army)

Click here to buy this medal/ribbon (Air Force)

Click here to buy this medal/ribbon (Navy)

Click here to buy this medal/ribbon (Coast Guard)

Click here to buy this medal/ribbon (Army National Guard)

Click here to buy this medal/ribbon (Marine Corps)

Ads by Google

DD-214 / 215

Replacement

Free on-line Form

SF-180

Processing

Military

Replacement

Certificates

www.Military-Certificates.com

Advertise on this site

**1. Description:** A bronze medal 1 ¼ inches in diameter, with a flaming torch in front of a crossed powder horn and a bugle within a circle composed of thirteen stars and thirteen rays. On the reverse is a different design for each of the reserve components. The reverse of all medals have the inscription "ARMED FORCES RESERVE" around the rim. **Organized Reserve:** On a wreath, the Lexington Minuteman statue as it stands on the Common in Lexington, Massachusetts encircled by thirteen stars. **National Guard:** The National Guard insignia (two crossed fasces superimposed on an eagle displayed with wings reversed. **Air Force Reserve:** The crest from the Air Forces seal (on a wreath, an eagle displayed in front of a cloud form). **Naval Reserve:** The center device of the Department of the Navy seal (an eagle displayed on an anchor in front of a ship in full sail). **Marine Corps Reserve:** The Marine Corps insignia (eagle perched on a globe superimposed on an anchor). **Coast Guard Reserve:** The central design of the Coast Guard seal (crossed anchors superimposed by a shield within an annulet).

Ads by Google

Save on

Military Gear

Clearance sale on in-store products at our Gaithersburg shop only.

www.hgmil.biz

Advertise on this site

**2. Devices:** Bronze hourglass to indicate 10 years service; silver hourglass to indicate 20 years service; gold hourglass to indicate 30 years service; letter "M" to indicate mobilization in support of US Military operations or contingencies designated by the Secretary of Defense; and a numeral to indicate number of times mobilized.

**3. Ribbon:** The ribbon is 1 3/8 inches wide and consists of the following stripes: 1/16 inch Bluebird 67117; 1/32 inch Chamois 67142; 1/16 inch Bluebird; 1/32 inch Chamois; 1/16 inch Bluebird; 3/8 inch Chamois; center 1/8 inch Bluebird; 3/8 inch Chamois; 1/16 inch Bluebird; 1/32 inch Chamois; 1/16 inch Bluebird; 1/32 inch Chamois; and 1/16 inch Bluebird.

**4. Criteria:** Award under one of the following conditions:

a. Awarded for honorable and satisfactory service as a member of one or more of the Reserve Components of the Armed Forces of the United States for a period of 10 years within a 12-year period. Upon completion of the fourth 10-year period, a gold hourglass followed by a bronze hourglass shall be awarded.

b. Awarded for mobilization on or after 1 August 1990, to members called to active duty and served under Title 10, United States Code (USC) (Defense Department) or Title 14 USC (Coast Guard) or the member volunteered and served on active duty in support of US Military operations or contingencies designated by the Secretary of Defense. The "M" device is worn to indicate mobilization. Subsequent mobilizations are denoted by the wear of a number to indicate the number of times mobilized. No hourglass is worn unless authorized under the above paragraph.

**5. Components:** the following are components of the Armed Forces Reserve Medal:

a. Medal (regular size): MIL-DTL-3943/231. (Stock number for the full size medal set with ribbon bar.) National Guard: NSN 8455-00-227-1713; USAR: 8455-00-269-5781.

b. Medal (miniature): MIL-DTL-3943/231. Available commercially.

c. Ribbon: MIL-DTL-11589/13. NSN 8455-00-265-4916.

**6. Background:** The Armed Forces Reserve Medal was authorized by President Truman by Executive Order 10163, dated 25 September 1950. The Executive Order was amended by Executive Order, dated 6 August 1996, to include authorization for award based on mobilization.

**7. Wear:** If no "M" device is authorized, the appropriate hourglass shall be positioned in the center of the ribbon. If no hourglass is authorized, the "M" device shall be positioned in the center of the ribbon, followed by Arabic numerals indicating the number of times the device has been awarded, starting with the second award (no number is worn for the first award). If both the hourglass and the "M" device are awarded, the hourglass shall be positioned in the first position on the ribbon (at the wearer's right), the "M" device in the middle position, and the number of times the "M" device has been awarded in the remaining position (at the wearer's left).

Most of the graphics displayed have been scanned by the author of this web site.
Please ask permission before using. Thanks!

Click here to make GruntsMilitary.com your default homepage
Currently 37 visitors online.

Copyright © 2007 GruntsMilitary.com
All rights reserved.

Exhibit 4

HEADQUARTERS
U.S. ARMY MILITARY DISTRICT, NEW YORK
90 Church Street, New York 7, NY

LO USAR 2415

19 July 1957

SUBJECT: Active Duty for Training

TO: 1ST LT MATHEW LEVY, 0981133, CMLC-USAR
2757 Claflin Ave, Bronx 68, NY

1. LO USAR 2171 this hq pertaining to 1ST LT MATHEW LEVY, 0981133, CMLC-USAR, 2757 Claflin Ave, Bronx 68 NY asg 1702 USAR Con Gp (Mob Designation) NY atch NY Mob Designation Det 10, 529 W 42nd St, New York, NY atch for ACDUTRA: US Army Chemical Center & Chemical Materiel Comd (9710) Army Chemical Center, Md (AUT) is revoked. (MOS: 4355) Appn: 2182070 832-1234 S49-092

2. By direction of the Secretary of the Army, you are ordered for a tour of Active Duty Training as indicated below:

VOCG 14 Jul 57 Cfm:
Eff Date of ACDUTRA: 14 Jul 57
Unit of asg: 1702 USAR Con Gp (Mob Designation) NY atch NY Mob Designation Det 10, 529 W 42d St, New York, NY-
Orgn Sta to which atch for tng: NY Procurement District, 290 Broadway, New York 7, NY
Purpose: Annual Unit Tng
D/R: 7 Jul 57 DOB: 23 Nov 26 MOS: 4355 TD Nr: 03-9721 (M)
Date of Relief fr ACDUTRA: 28 Jul 57
Appn: 2182070 832-1234 P8113-01,15 P8173-02 S49-092 SEA 34-0114
Pending completion of final clearance individual has been granted an interim clearance for access to classified information and material to include SECRET.
AUTH: Title 10, USC sub-sec 672 (b), Cir 25, Hq First US Army 29 Feb 56; AR 140-220 and Ltr AGPR-DY, DA 12 Jun 57 subj: "ACDUTRA of Mobilization Designees UP of AR 140-220."

3. On eff date of ACDUTRA, you will proceed from your home to sta indicated; Upon completion of ACDUTRA, unless sooner reld, you will rtn to your home and stand reld from tng on date shown above. Tvl by railroad, bus, ship or air is auth (AR 55-21.) Nec tvl time (based on ground common carrier) from your home to duty sta and rtn is auth and is included in the period of tng shown above. Tvl by privately owned conveyance is not prohibited, provided tvl time will not be in excess of tvl time required by common carrier. PCS. Tvl of dependents and shipment of PCS weight allowance not auth. Appropriate uniform prescribed by AR 670-6 will be worn. TDN.

4. Commanders or organizations, stations or agencies to which member is attached for tng will maintain his records and submit reports as required by AR 140-220.

5. Finance Officers making payment under the above allotment will mail one copy of each paid voucher to Fiscal Officer cited in the appropriation.

FOR THE CHIEF:

C. Covotsos
C. COVOTSOS
Capt, AGC
Asst AG

DISTRIBUTION:
Special

Exhibit 5

NEW YORK CHEMICAL PROCUREMENT DISTRICT, U. S. ARMY
~~XXXXXXXXXXXXXXX~~ 290 Broadway
NEW YORK ~~XX~~ N. Y.
7

IN REPLY REFER TO:

CMLMC-NY-ZP-3

28 August 1957

First Lt. Mathew Levy
c/o Bayshore Togs
Locust Street
Keyport, N. J.

Dear Mat:

Please accept my apologies for the delay in the preparation of your report, (we have had our problems). Your original has been forwarded to the Commanding Officer for review.

Your Analysis of operational responsibilities concerning our Branch is one of the finest I have had the privilege to read.

I certainly hope your efforts will bring deserving rewards.

Very truly yours,

TWM

THOMAS W. MURPHY, 1st Lt CmlC
Chief, Procurement Services Branch.

1 Incl.
Analysis of DMS & Surplus Funds

Exhibit 6

3

CORRECTED COPY

HEADQUARTERS, II US ARMY CORPS (RESERVE)
Camp Kilmer, New Jersey

AHAAG-RO 300.4 11 Jun 1958
LO USAR
3242

SUBJECT: Active Duty for Training

TO: Personnel concerned

By dir of SA, you are ordered to AD for tng on date indc in (a). On that date you WP from your home(s) to sta indc in (b). Upon compl of AD for tng, unless sooner rel, you will rtn to your home(s) & stand rel from AD for tng on date indc in (c). Tvl by railroad, bus or air is auth. Tvl by POC is not prohibited prov tvl time does not exceed that rqr for tvl by cc. Nec tvl time (based on gnd cc) from your home(s) to dy sta & rtn is auth & incl in pd of tng. Tvl of depn & shpmt of PCS weight alw not auth. TDN. PCS. Aprop unif prescribed by AR 670-6 will be worn. Phys exam and/or cert will be accomp in acd WAR 140-120. Comd of org sta or agencies indc in (b) below will maintain mbr rec & sbm rept as rqr by AR 140-220.

Fpou Fin & Acct Off FINFA-3 Temp Bldg "B" 2d & R Sts, SW, Washington 25, DC & OIC res. asg unit indc.

Res Asg: USAR Con Gp (Mob Dsg) II USA Corps (Res) atch: II USA Corps (Res) Mob Dsg Det #10 (Cml Proc Dist) 529 W 42d St NY 36, NY

1ST LT MATTHEW LEVY 0 981 133 CmlC-USAR 2757 Claflin Ave Bronx NY
MOS 4320 DR 2 May 58 DOB 23 Nov 26 WE 1 SSAN: 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 Clnc: Sec ON-0563 (FY 58) ON-0020 (FY 59)
MAJ WILLIAM MC KABA 0 977 866 CmlC-USAR 333 Ovington Ave Brooklyn 9 NY
MOS 7300 DR 5 Aug 56 DOB 14 Jul 12 WE 4 SSAN: 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 Clnc: Sec ON-0564 (FY 58) ON-0021 (FY 59)

| | | |
|---|---|---|
| a. | Date of entry on ACDUTRA | 29 Jun 58 (Rept NLT 0800 hrs 30 Jun 58) |
| b. | Org & sta atch for tng | USA Cml Procurement Dist NY, NY |
| c. | Date of rel fr ACDUTRA | 13 Jul 58 |
| d. | Purpose | Annual Tng (Mob Dsg) |
| e. | Authority | Title 10 USC Subsec 672(b) & AR 140-220 |
| f. | Appropriation | 2182070 32-1234 P8113-01-15 8173-02 S49-092 (Fy 58) 2192070 32-1234 P8110.130-01-15 P8170.130-02 S49-092 (Fy 59) Subj to aval of funds. |

FOR THE COMMANDER:

F J SWIDERSKI
Capt, Inf
Act Asst AG

DISTRIBUTION:
Special

Exhibit 7

MEMORANDUM FOR: Executive Secretary, ABCMR

2 January 1959

NAME: LEVY, MATHEW ASN: 0 981 133 RANK: 1st Lt HON DISCH: 18 Sep 58

APPLICANT REQUESTS: That, in effect, he be reinstated in the Res and promoted to the grade of Capt. He claims that a true and accurate account of his military efficiency is not reflected in his records. In support of his application he submits letters of commendation and character references.

MATERIAL EVIDENCE OF RECORD: DOB: 23 Nov 26. Enlisted service: 18 Nov 44 - 4 Nov 46. Appointed 2d Lt, ORC, 1 Oct 49. Promoted to 1st Lt 29 Jun 53. He was passed over for Res promotion in 1957 and 1958, and was honorably discharged on 18 Sep 58 as a result thereof.

His efficiency reports indicate that he was considered fully qualified for promotion by his rating officer on 16 Sep 57. However, he was on active duty for training for 2 consecutive 6-months periods beginning 1 Jan 57 through 31 Dec 57, and his rating officer on 21 Jan 58 felt that he had not demonstrated potential for promotion despite his opportunity to do so. The rating officer who rendered the favorable report on him in Sep 57, again considered appl qualified for promotion on 21 Jul 58, after appl had served on a 2-week tour of active duty for training.

The law requires that an officer be discharged from the Res if he fails to be selected for promotion to the next higher grade by a Selection Board, after having twice been considered by a Selection Board.

RECOMMENDATION: There is nothing in appl's records to indicate that he has not been properly rated. The reason or reasons for his pass over for promotion by the Selectio Boards is not known, as such Boards do not prepare proceedings, or leave any workup sheet in the files to show the basis for their selection or non-selection of an individual. Under the circumstances there appears to be no basis for a formal hearing, and a denial of appl's application is accordingly recommended.

[signature]

Examiner

Exhibit 8

DEPARTMENT OF THE ARMY
OFFICE OF THE UNDER SECRETARY
WASHINGTON, D. C.

In Reply Refer To:

JAN 13 1959

AG 201 - LEVY, MATHEW
0 981 133

MEMORANDUM FOR THE ADJUTANT GENERAL:

It is requested that the applicant and counsel, if any, be notified that following examination and consideration of the application and records, the Army Board for Correction of Military Records on JAN 7 1959 determined that insufficient evidence has been presented to indicate probable material error or injustice, and the application is denied.

The notice to the applicant will be in the form prescribed by the memorandum from Executive Secretary, Army Board for Correction of Military Records to The Adjutant General, subject, Notice of Denial of Application for Correction of Military Records, dated 10 August 1955.

Inclosures:

DD Form 149
AG 201 File
Service Record
Eff File

Raymond J. Williams
Executive Secretary
Army Board for Correction
of Military Records

Exhibit 9

**Paul Croushore, J.D., LL.M.**
**Attorney at Law**

407 American Building
30 E. Central Parkway
Cincinnati, OH 45202
(513) 381-5555

P.O. Box 75170
Cincinnati, OH 45275-5170
fax 859-689-0118
CROUSHLAW@aol.com

December 17, 2001

Army Review Boards Agency
Support Division, St. Louis
ATTN: SFMR-RBR-SL
9700 Page Blvd
St. Louis, MO 63132-5200

Re: Request for Correction of Military Records

Dear Sirs:

I represent Mr. Mathew Levy. Mr. Levy was discharged on September 18, 1958, as the result of an error in processing. As best we can determine, some other officer's documents were placed in then-Lieutenant Levy's file, with the result that he was passed over for promotion, and ultimately discharged.

When Mr. Levy sought correction, it appears that the Board reviewed his erroneous file and, without showing or informing Mr. Levy of the actual basis of the determination, found that he had not demonstrated evidence of material error or injustice. Had Mr. Levy been shown the documents included in the present packet, especially the Memorandum for: Executive Secretary, ABCMR (dated 2 January 1959) and the undated handwritten note, he could then have demonstrated the erroneous nature of the evidence.

Mr. Levy therefore requests reconsideration of the 1959 denial of his request to correct his military records. Please feel free to contact me if I may be of any assistance in this matter.

Sincerely,

Paul Croushore

Enclosures

MEMORANDUM FOR: Executive Secretary, ABCMR 2 January 1959

NAME: LEVY, MATHEW ASN: 0 981 133 RANK: 1st Lt HON DISCH: 18 Sep 58

APPLICANT REQUESTS: That, in effect, he be reinstated in the Res and promoted to the grade of Capt. He claims that a true and accurate account of his military efficiency is not reflected in his records. In support of his application he submits letters of commendation and character references.

MATERIAL EVIDENCE OF RECORD: DOB: 23 Nov 26. Enlisted service: 18 Nov 44 - 4 Nov 46. Appointed 2d Lt, ORC, 1 Oct 49. Promoted to 1st Lt 29 Jun 53. He was passed over for Res promotion in 1957 and 1958, and was honorably discharged on 18 Sep 58 as a result thereof.

His efficiency reports indicate that he was considered fully qualified for promotion by his rating officer on 16 Sep 57. However, he was on active duty for training for 2 consecutive 6-months periods beginning 1 Jan 57 through 31 Dec 57, and his rating officer on 21 Jan 58 felt that he had not demonstrated potential for promotion despite his opportunity to do so. The rating officer who rendered the favorable report on him in Sep 57, again considered appl qualified for promotion on 21 Jul 58, after appl had served on a 2-week tour of active duty for training.

The law requires that an officer be discharged from the Res if he fails to be selecte for promotion to the next higher grade by a Selection Board, after having twice been considered by a Selection Board.

RECOMMENDATION: There is nothing in appl's records to indicate that he has not been properly rated. The reason or reasons for his pass over for promotion by the Selecti Boards is not known, as such Boards do not prepare proceedings, or leave any workup sheet in the files to show the basis for their selection or non-selection of an individual. Under the circumstances there appears to be no basis for a formal hearing, and a denial of appl's application is accordingly recommended.

[signature]
Examiner

[illegible] believes the
[illegible] the proper [illegible]
[illegible]
[illegible]
[illegible]
[illegible] #1 [illegible]
[illegible]
USAMRDMC [illegible]
[illegible]
[illegible] to the [illegible]

Exhibit 10

October 30, 2002

Mr. Carl Chun, Director
Board of Corrections, Department of the Army
1941 Jefferson Davis Highway - 2nd Floor
Arlington, Va. 22202

Item ID:...........97497
Name:..............LEVY, MATHEW
SSN:...............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
MSN:...............
Doc Type:..........Reoo
Receipt Date /Time.11/07/2002/07:41:08 AM
Edited By..........DANIED

Dear Mr. Chun:

In response to your letter dated 28 May 2002, contending lack of basis for resubmitting my request, I would like to clarify the issues you raised in Paragraph 4 (underlined); and Paragraph 6 (underlined):

(A). Paragraph 4 -"there is no evidence that the note was seen by the Promotion Board" (copy enclosed) -

This note was supplied by the Department of the Army to Congressman Kaisch in 2001. The fire in St. Louis destroyed all other records, and the only records available, as stated by The Department of the Army, were the records you possess. The Department of the Army supplied the document and was obviously seen by the Board since it was in the file.

(B). "You have provided no evidence nor is there any evidence of record that the statement (referring to Active Duty 1 January '57 to 31 December '57) is not correct".

Certainly Army pay records for that period are available. My IRS Income Tax Statements are also available, and other personal records substantiate the facts. You never asked me to supply documentation, but simply assumed the fact. I have in my possession a complete copy of my Officer 201 File and partial copies of my Enlisted 201 File for inspection.

This situation has been going on for 42 years. I am prepared to fly to Virginia or Washington with the documents to support my claim.

I feel given the opportunity to plead my case on a personal basis, with some thoughts toward resolution, will help bring the issue to permanent closure. I request you reevaluate the enclosed letters from Congressman Kasich and my Attorney; and, particularly the memo to the Executive Secretary, ABCMR; paying attention to the fact I was deemed fully qualified, except for Active Duty Periods in 1957 (which did not exist).

A grave injustice has occured. Please help me to bring the issue to resolution. I remain,

Sincerely,

Mathew Levy

8084 Kennedy Road
Blacklick, Ohio 43004
(614) 861-8782

Exhibit 11

DEPARTMENT OF THE ARMY
BOARD FOR CORRECTION OF MILITARY RECORDS
1941 JEFFERSON DAVIS HIGHWAY, 2ND FLOOR
ARLINGTON VA 22202-4508

JUL 07 2003

SFMR-RBR
LEVY, MATHEW
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
AR2003087582

Mr. Mathew Levy
8084 Kennedy Road
Blacklick, OH 43004-8726

Dear Mr. Levy:

This is in response to your October 30, 2002 letter to the Army Board for Correction of Military Records (ABCMR) requesting reconsideration, through a formal hearing, of your earlier application to correct your records to show you were reinstated in the Reserve and promoted to captain.

Your case was considered and denied on January 7, 1959.

Army Regulation 15-185 sets forth the procedures for processing requests to correct military records. Paragraph 2-15b provides specific guidance to be applied in cases involving requests for reconsideration that are received more than 1 year after the ABCMR's original consideration or after the ABCMR has already reconsidered the case.

In such cases, the staff of the ABCMR will review the request to determine if substantial relevant evidence has been submitted that shows fraud, mistake in law, mathematical miscalculation, manifest error, or if there exists substantial relevant new evidence discovered contemporaneously with or within a short time after the ABCMR's original decision. If the staff finds such evidence, the case will be resubmitted to the ABCMR. If no such evidence is found, the application will be returned to the applicant without action.

The fact a document, such as the unsigned, undated note considered by the original ABCMR panel, is filed in a member's Official Military Personnel File is insufficient to show that the document was provided to a promotion board. Promotion boards do not necessarily review every document in a member's file; only those documents authorized for review. Again, there is no evidence to show that the referenced note was seen by the promotion board.

Pay records are not retained indefinitely. Title 31 U. S. Code, section 3702, also known as the barring statute, prohibits the payment of a claim against the Government unless the claim has been received by the Comptroller General

SFMR-RBR
LEVY, MATHEW
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
AR2003087582

within 6 years after the claim accrues. Among the important public policy considerations behind statutes of limitations, including the 6-year limitation for filing claims contained in this section of Title 31, U. S. Code, is relieving the government of the need to retain, access, and review old records for the purpose of settling stale claims, which are often difficult to prove or disprove.

You state that your IRS income tax statements for the period in question, 1957, are also available and would substantiate your contentions; however, you do not provide them. The ABCMR is not an investigative agency. The burden and costs for researching and assembling documentation to support an application for a specific claim rests with the requester. If you have copies of the pertinent IRS income statements and/or copies of your Army pay records for the pertinent period, you must provide them with your application.

Army Regulation 15-185, paragraph 2-11 states that applicants do not have a right to a hearing before the ABCMR. The regulation provides that the Director of the ABCMR or the ABCMR may grant a formal hearing before which the applicant, counsel, and witnesses may appear whenever justice requires. If you have a complete copy of your officer 201 file, you should provide a copy of those records with your application and the ABCMR or the Director may decide to grant you a formal hearing.

The staff has determined that you have provided no relevant new evidence or argument with your current submission that was not previously considered by the ABCMR.

Accordingly, there is no basis for resubmitting your request to the ABCMR and it will be administratively closed.

Sincerely,

Carl W. S. Chun
Director, Army Board for Correction
of Military Records

Enclosure

Exhibit 12

GILBERT J. GINSBURG
ATTORNEY AND COUNSELOR AT LAW
1250 24TH STREET, N.W., SUITE 350
WASHINGTON, D.C. 20037
(202) 776-7772
FAX: (202) 776-7773
E-MAIL: gilgins@aol.com
www.profgilginsburg.com

June 10, 2005

Mr. Karl Schneider
Director
Army Review Board Agency
Support Division, St. Louis
Attn: SFMR -RBR-SL
9700 Page Blvd.
St. Louis, Missouri 63132-5200

Re: Application for Correction of Military Records
1st Lt. Mathew Levy 0 981 133

Dear Mr. Schneider:

My client, Lt. Mathew Levy, has been waiting a long time for correction of his military records, through no fault of his own. The records are obviously erroneous and justice requires that they be corrected.

Lt. Levy was discharged on September 18, 1958 as a result of the errors in his records. Lt. Levy served on active duty for two weeks in 1957 and he again served on active duty for two weeks in 1958. However, the Selection Board's records erroneously indicated that Lt. Levy was called to active duty for the entire year, *i.e.*, for two consecutive six-month periods in 1957. Apparently, a different officer was in fact called up for the two six-month periods and that officer earned a poor performance review, as a result of which he was deemed unqualified for promotion. Attributing that poor performance to Lt. Levy, Lt. Levy was denied promotion and given an honorable discharge.

Lt. Levy sought correction of his file. However, a fire destroyed most of the records in your St. Louis office. The attachments included in this application had to be gathered from other sources and closed offices. The attachments, which include a letter from the U.S. Social Security Administration and Lt. Levy's Federal income tax return, verify that Lt. Levy was on active duty for only two weeks in each year and therefore that the adverse evaluations attributed to him were clearly not of Lt. Levy, who was not on active duty when they were made.

The Selection Board correctly noted that Lt. Levy was found fully qualified for promotion by his correct rating officer. In addition, Lt. Levy received a laudatory letter from his branch chief on the analysis of operational responsibilities he prepared while on his two-week duty. ("Your Analysis [sic] of operational responsibilities concerning our Branch is one of the finest I have had the privilege to read."). It is clear that, but for the erroneous entries in his records of the evaluation of the other officer, his record would have reflected not only an officer fully-qualified for promotion, but also an officer whose performance was exemplary. Instead of being denied promotion, Lt. Levy would have been promoted without question.

Equity and justice require that Lt. Levy's military records be corrected and that Lt. Levy be given the promotion in rank (to Captain) for which he was found to be fully qualified.

Your cooperation in this matter is appreciated. Please contact me if I may be of any assistance to the Board.

Sincerely,

Gilbert J. Ginsburg

GJG:ccl

# APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552

*(Please read instructions on reverse side BEFORE completing this application.)*

*Form Approved*
*OMB No. 0704-0003*
*Expires May 31, 2006*

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports (0704-0003), 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.
PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE ADDRESS. RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON THE BACK OF THIS PAGE.

## PRIVACY ACT STATEMENT

AUTHORITY: Title 10 US Code 1552, EO 9397.

PRINCIPAL PURPOSE: To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record.

ROUTINE USE(S): None.

DISCLOSURE: Voluntary; however, failure to provide identifying information may impede processing of this application. The request for Social Security number is strictly to assure proper identification of the individual and appropriate records.

**1. APPLICANT DATA** *(The person whose record you are requesting to be corrected.)*

a. BRANCH OF SERVICE *(X one)*: [ ] ARMY [ ] NAVY [ ] AIR FORCE [ ] MARINE CORPS [ ] COAST GUARD

b. NAME *(Print - Last, First, Middle Initial)*: Levy, Mathew

c. PRESENT OR LAST PAY GRADE: 0-2

d. SERVICE NUMBER *(If applicable)*: 0 981 133

e. SSN: 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

**2. PRESENT STATUS WITH RESPECT TO THE ARMED SERVICES** *(Active Duty, Reserve, National Guard, Retired, Discharged, Deceased)*: Discharged

**3. TYPE OF DISCHARGE** *(If by court-martial, state the type of court.)*: Honorable

**4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY** *(YYYYMMDD)*: 195 80918

**5. I REQUEST THE FOLLOWING ERROR OR INJUSTICE IN THE RECORD BE CORRECTED:** *(Entry required)*

I respectfully request reconsideration of the 1959 denial of the request to correct military records. I request reinstatement to the Service and the rescission of my discharge. I also request a promotion in rank to O-3.

**6. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST FOR THE FOLLOWING REASONS:** *(Entry required)*

In response to my Congressman's request for my records, I received a reconstructed service record. It reveals that the reason my request for correction of military records was denied on 7 Jan 1959 was based on a record-keeping error. (See continuation attached.)

**7. ORGANIZATION AND APPROXIMATE DATE** *(YYYYMMDD)* **AT THE TIME THE ALLEGED ERROR OR INJUSTICE IN THE RECORD OCCURRED** *(Entry required)*: 19580918

**8. DISCOVERY OF ALLEGED ERROR OR INJUSTICE**

a. DATE OF DISCOVERY *(YYYYMMDD)*: 20021030

b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THE APPLICATION.

**9. IN SUPPORT OF THIS APPLICATION, I SUBMIT AS EVIDENCE THE FOLLOWING ATTACHED DOCUMENTS:** *(If military documents or medical records are pertinent to your case, please send copies. If Veterans Affairs records are pertinent, give regional office location and claim number.)*

SEE SCHEDULE ATTACHED

**10. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C.** *(At no expense to the Government) (X one)*: [X] YES. THE BOARD WILL DETERMINE IF WARRANTED. [ ] NO. CONSIDER MY APPLICATION BASED ON RECORDS AND EVIDENCE.

**11.a. COUNSEL** *(If any)* **NAME** *(Last, First, Middle Initial)* **and ADDRESS** *(Include ZIP Code)*

Gilbert J. Ginsburg
Attorney and Counselor-at-Law
1250 24th Street, N.W., Suite 350, Washington, D.C. 20037

b. TELEPHONE *(Include Area Code)*: (202) 776-7772

c. E-MAIL ADDRESS: gilgins@aol.com

d. FAX NUMBER *(Include Area Code)*: (202) 776-7773

**12. APPLICANT MUST SIGN IN ITEM 15 BELOW.** If the record in question is that of a deceased or incompetent person, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY THE APPLICATION. If the application is signed by other than the applicant, indicate the name *(print)* and relationship by marking one box below.

[ ] SPOUSE [ ] WIDOW [ ] WIDOWER [ ] NEXT OF KIN [ ] LEGAL REPRESENTATIVE [ ] OTHER *(Specify)*

**13.a. COMPLETE CURRENT ADDRESS** *(Include ZIP Code)* **OF APPLICANT OR PERSON IN ITEM 12 ABOVE** *(Forward notification of all changes of address.)*

8084 Kennedy Road
Backlick, Ohio 43004-8726

b. TELEPHONE *(Include Area Code)*: (614) 861-8782

c. E-MAIL ADDRESS:

d. FAX NUMBER *(Include Area Code)*: (614) 861-8955

**14. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** *(U.S. Code, Title 18, Sections 287 and 1001, provide that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

CASE NUMBER *(Do not write in this space.)*

**15. SIGNATURE** *(Applicant must sign here.)*

**16. DATE SIGNED** *(YYYYMMDD)*

APPLICATION FOR CORRECTION OF
MILITARY RECORD UNDER THE PROVISION OF
TITLE 10, U.S. CODE, SECTION 1552.

Continuation Sheet

6. The file purports to describe my situation, but was obviously in error. First, it states that the General was my rating officer. (The note in the file states that I "was apparently accountable directly to the General.") That statement is incorrect. The General was never my rating officer.

More importantly, the file indicates I was on active duty for a full year ("two consecutive 6-month periods between 1 January 1957 through 31 December 1957"), during which time (says the file) my rating and endorsing officer purportedly found that I "had not demonstrated potential for promotion." But I *was not* on active duty for that year! I was only activated *for a two-week period* in 1957 and again in 1958. And I can *prove* it. *See* below. So, obviously, those rating and endorsing officers were *not* talking about *me*. Rather, *my* rating officer, on 16 September 1957, found me "fully qualified for promotion." Obviously, the negative evaluation referred to in the file was of *a different officer* (who apparently was called up for active duty for two 6-month periods in 1957).

As proof of the fact that I was on active duty for only two weeks in 1957 and not for the whole year, I have enclosed documentary evidence of my earnings.

Copies of my W-2 withholding tax statements from the U.S. Army report my earnings for 1957 as $277.40 and for 1958 as $217.50. The total F.I.C.A. wage for the tax years 1957 and 1958 were $198.90 and $217.50, respectively.

I was denied promotion and retention based upon a record-keeping error. Accordingly, I request correction of my military records.

# APPLICATION FOR CORRECTION OF MILITARY RECORD

In re: 1st Lt. Mathew Levy O-2. 0 981 133

In support of this application, I submit as evidence the following narrative and documents:

## FACTS

Lt. Levy was honorably discharged on 18 September 1958. Attachment A-2 January 1959 Memo for: Executive Secretary ABCMR. That memo (of 2 January 1959) states in pertinent part:

> His efficiency reports indicate that he was considered fully qualified for promotion by his rating officer on 16 Sep 57. However, he was on active duty for training for 2 consecutive 6-month periods beginning 1 Jan 57 through 31 Dec 57, and his rating officer on 21 Jan 58 felt that he had not demonstrated potential for promotion despite his opportunity to do so. The rating officer who rendered the favorable report on him in Sep 57, again considered appl qualified for promotion on 21 Jul 58, after appl had served on a 2-week tour of active duty for training.
>
> The law requires that an officer be discharged from the Res if he fails to be selected for promotion to the next higher grade by a Section Board after having twice been considered by a Selection Board.

Memorandum for: Executive Secretary, ABCMR 2 January 1959, Attachment A.

*Lt. Levy was only activated for two weeks of service in the year 1957* and again in 1958. The finding that Lt. Levy "was on active duty for training for 2 consecutive 6-month periods beginning 1 Jan 1957 through 31 Dec 1957" is an error. Lt. Levy was ordered for a tour of Active Duty Training from 14 Jul 1957 to 28 Jul 1957. A copy of the order is enclosed as Attachment B. Lt. Levy only served two weeks active duty in 1957 and was paid by the U.S. Army a total of $277.50 (F.I.C.A. wages $198.90) in that year as evidenced by his 1957 W-2 wage statement. Attachment C.

Lt. Levy's total income from employment in 1957 was as follows:

| | | |
|---|---|---|
| 1. | U.S. Army (F.I.C.A. wages of $198.90) | $ 277.50 |
| 2. | Fashion Institute of Technology | 752.50 |
| 3. | Bayshore Togs | 4,204.96 |
| | Total employment income: | $ 5,234.96 |

A marked up copy of Lt. Levy's 1957 U.S. Income Tax Return is enclosed as Attachment D.

In 1957, Lt. Levy's principal source of income, his full time job, was with Bayshore Togs. Mr. Levy was on the evening faculty of the Fashion Institute of Technology. (See page of faculty listing enclosed as Attachment E.) Lt. Levy was on active duty for and was only paid for two (2) weeks.

The Social Security Administrationm, in a letter dated April 15, 1960, verified Lt. Levy's Social Security income to be as follows:

| | | |
|---|---|---|
| 1. | Board of Education, City of New York (Fashion Institute of Technology) | $ 752.50 |
| 2. | United States Army — Chemical Procurement | 198.90 |
| 3. | Self-employment (Bayshore Togs) | 3,248.60[1/] |
| | 1957 Total Social Security Wages | $ 4,200.00 |

Thus, the United States Government, through the Social Security Administration, said in its letter that Lt. Levy only earned $198.90 as basic service pay in 1957.

---

1/ Only *the* first $3,248.60 of self-employment income was taxable to Social Security as the maximum social security wages in 1957 was $4,200. See Attachment F.

The memo claiming that Lt. Levy was on active duty for 2 six-month periods in 1957 is clearly in error and the less than superior rating for the 2 six-month periods belongs to someone else. Lt. Levy was denied promotion because of this error and was wrongfully discharged.

**Lt. Levy's Service Was Extraordinary and Without the Clerical Error He Would Have been Promoted**

On 24 Jan 1957 Lt. Levy was selected for a mobilization designation position as a Captain. *See* Attachment G.

On 28 Aug 1957 Lt. Levy received a memorandum from the Chief, Procurement Services Branch which said in pertinent part,

> Your analysis of operational responsibilities concerning our Branch is one of the finest I have had the privilege to read.[2]

*See* Attachment H.

The Memorandum for: Executive Secretary, ABMCR 2 Jan 1959 states in pertinent part,

> His efficiency reports indicate that he was considered fully qualified for promotion by his rating officer on 16 Sep 57. . .
>
> The rating officer who rendered the favorable report on him in Sep 57, again considered appl. qualified for promotion on 21 Jul 58; after appl had served on a 2-week tour of active duty for training.

*See* Attachment A.

**Lt. Levy was Erroneously Rated by the Selection Board**

Lt. Levy was not properly rated by the Selection Board. The Selection Board erroneously stated that Lt. Levy had been on active duty for two consecutive 6-month periods, stating:

---

[2] The analysis of operational responsibilities was conducted during the reserve period 14-28 July 1957 and the report is dated 21 July 1957. *See* Attachment I.

> However, he was on active duty for training for 2 consecutive 6 months periods beginning 1 Jan 57 through 31 Dec 57, and his rating officer on 21 Jan 58 felt he had not demonstrated potential for promotion despite his opportunity to do so.

*See* Attachment A.

However, as demonstrated above, Lt. Levy was *not* on active duty for two 6-month periods. So, the Board was relying on erroneous records, records relating to someone else. Lt. Levy's ratings were uniformly excellent, finding each time that he was "fully qualified for promotion."

Clearly, Lt. Levy would have been promoted as the two proper ratings found that "he was considered fully qualified for promotion," in addition to which he received the laudatory evaluation set forth in Attachment H.

Lt. Levy respectfully requests that his military records be corrected to reflect the fact that he was fully qualified for promotion, was *not* "passed over" for promotion, and that he be promoted to Captain USAR. His records should further be corrected to rescind his discharge of 18 Sep 1958, which had been issued for erroneous reasons.

# ATTACHMENT A

## Memorandum for: Executive Secretary, ABCMR 2 January 1959

MEMORANDUM FOR: Executive Secretary, ABCMR

2 January 1959

NAME: LEVY, MATHEW ASN: 0 981 133 RANK: 1st Lt HON DISCH: 18 Sep 58

APPLICANT REQUESTS: That, in effect, he be reinstated in the Res and promoted to the grade of Capt. He claims that a true and accurate account of his military efficiency is not reflected in his records. In support of his application he submits letters of commendation and character references.

MATERIAL EVIDENCE OF RECORD: DOB: 23 Nov 26. Enlisted service: 18 Nov 44 - 4 Nov 46. Appointed 2d Lt, ORC, 1 Oct 49. Promoted to 1st Lt 29 Jun 53. He was passed over for Res promotion in 1957 and 1958, and was honorably discharged on 18 Sep 58 as a result thereof.

His efficiency reports indicate that he was considered fully qualified for promotion by his rating officer on 16 Sep 57. However, he was on active duty for training for 2 consecutive 6-months periods beginning 1 Jan 57 through 31 Dec 57, and his rating officer on 21 Jan 58 felt that he had not demonstrated potential for promotion despite his opportunity to do so. The rating officer who rendered the favorable report on him in Sep 57, again considered appl qualified for promotion on 21 Jul 58, after appl had served on a 2-week tour of active duty for training.

The law requires that an officer be discharged from the Res if he fails to be selected for promotion to the next higher grade by a Selection Board, after having twice been considered by a Selection Board.

RECOMMENDATION: There is nothing in appl's records to indicate that he has not been properly rated. The reason or reasons for his pass over for promotion by the Selectio Boards is not known, as such Boards do not prepare proceedings, or leave any workup sheet in the files to show the basis for their selection or non-selection of an individual. Under the circumstances there appears to be no basis for a formal hearing, and a denial of appl's application is accordingly recommended.

Examiner

# ATTACHMENT B

## Orders for 1957 Active Duty

HEADQUARTERS
U.S. ARMY MILITARY DISTRICT, NEW YORK
90 Church Street, New York 7, NY

LO USAR 2415 19 July 1957

SUBJECT: Active Duty for Training

TO: 1ST LT MATHEW LEVY, 0981133, CMLC-USAR
2757 Claflin Ave, Bronx 68, NY

1. LO USAR 2171 this hq pertaining to 1ST LT MATHEW LEVY, 0981133, CMLC-USAR, 2757 Claflin Ave, Bronx 68 NY asg 1702 USAR Con Gp (Mob Designation) NY atch NY Mob Designation Det 10, 529 W 42nd St, New York, NY atch for ACDUTRA: US Army Chemical Center & Chemical Materiel Comd (9710) Army Chemical Center, Md (AUT) is revoked. (MOS: 4355) Appn: 2182070 832-1234 S49-092

2. By direction of the Secretary of the Army, you are ordered for a tour of Active Duty Training as indicated below:

VOCG 14 Jul 57 Cfm:
Eff Date of ACDUTRA: 14 Jul 57
Unit of asg: 1702 USAR Con Gp (Mob Designation) NY atch NY Mob Designation Det 10, 529 W 42d St, New York, NY
Orgn Sta to which atch for tng: NY Procurement District, 290 Broadway, New York 7, NY
Purpose: Annual Unit Tng
D/R: 7 Jul 57 DOB: 23 Nov 26 MOS: 4355 TD Nr: 03-9721 (M)
Date of Relief fr ACDUTRA: 28 Jul 57
Appn: 2182070 832-1234 P8113-01,15 P8173-02 S49-092 SEA 34-0114
Pending completion of final clearance individual has been granted an interim clearance for access to classified information and material to include SECRET.
AUTH: Title 10, USC sub-sec 672 (b), Cir 25, Hq First US Army 29 Feb 56; AR 140-220 and Ltr AGPR-DY, DA 12 Jun 57 subj: "ACDUTRA of Mobilization Designees UP of AR 140-220."

3. On eff date of ACDUTRA, you will proceed from your home to sta indicated. Upon completion of ACDUTRA, unless sooner reld, you will rtn to your home and stand reld from tng on date shown above. Tvl by railroad, bus, ship or air is auth (AR 55-21.) Nec tvl time (based on ground common carrier) from your home to duty sta and rtn is auth and is included in the period of tng shown above. Tvl by privately owned conveyance is not prohibited, provided tvl time will not be in excess of tvl time required by common carrier. PCS. Tvl of dependents and shipment of PCS weight allowance not auth. Appropriate uniform prescribed by AR 670-6 will be worn. TDN.

4. Commanders or organizations, stations or agencies to which member is attached for tng will maintain his records and submit reports as required by AR 140-220.

5. Finance Officers making payment under the above allotment will mail one copy of each paid voucher to Fiscal Officer cited in the appropriation.

FOR THE CHIEF:

C. Covotsos
C. COVOTSOS
Capt, AGC
Asst AG

DISTRIBUTION:
Special

# ATTACHMENT C

## 1957 W-2 from the U.S. Army

D/A
NY Mob Des Det #10
Maj. S. Wiener, Actg Adj

Type or print EMPLOYER'S identification number, name, and address above.

# WITHHOLDING TAX STATEMENT 1957

Federal Taxes Withheld From Wages

*Copy C—For Employee's Records*

| SOCIAL SECURITY INFORMATION | | INCOME TAX INFORMATION | |
|---|---|---|---|
| $198.90 Total F.I.C.A. Wages* paid in 1957 | $4.48 F.I.C.A. employee tax withheld, if any | $277.40 Total Wages* paid in 1957 | $35.60 Federal Income Tax withheld, if any |

Lt. Mathew Levy, 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
2757 Claflin Ave
Bronx 68, NY

Type or print EMPLOYEE'S social security account no., name, and address above.

NOTICE: If your wages were subject to Social Security taxes, but are not shown, your Social Security wages are the same as wages shown under "INCOME TAX INFORMATION," but not more than $4,200.

Keep this copy as part of your tax records.

FORM W-2—U.S. Treasury Department, Internal Revenue Service

*Before payroll deductions.

o9—16—72860-1

# ATTACHMENT D

## 1957 U.S. Individual Tax Return

FORM **1040**

U. S. Treasury Department
Internal Revenue Service

# U. S. INDIVIDUAL INCOME TAX RETURN—1957

or Other Taxable Year Beginning ............, 1957, Ending ............, 195...
(PLEASE TYPE OR PRINT)

Name ..........
(If this is a joint return of husband and wife, use first names of both)

Home address Box 638 Locust ST.
(Number and street or rural route)

Keyport N.J.
(City, town, or post office) (Postal zone number) (State)

Your Social Security Number | Occupation | Wife's Social Security Number | Occupation

**If Income Was All From Salaries and Wages, Use Pages 1 and 2 Only. See Page 3 of the Instructions.**

ATTACH COPY B OF FORMS W-2 HERE

Exemptions

1. Check blocks which apply. Check for wife if she had no income or her income is included in this return.
   (a) Regular $600 exemption ☐ Yourself ☐ Wife
   (b) Additional $600 exemption if 65 or over at end of taxable year ☐ Yourself ☐ Wife
   (c) Additional $600 exemption if blind at end of taxable year ☐ Yourself ☐ Wife
   Enter number of exemptions checked →
2. List first names of your children who qualify as dependents; give address if different from yours. Enter number of children listed →
3. Enter number of exemptions claimed for other persons listed at top of page 2
4. Enter the total number of exemptions claimed on lines 1, 2, and 3

Income

5. Enter all wages, salaries, bonuses, commissions, tips, and other compensation received in 1957, before payroll deductions.

| Employer's Name | Where Employed (City and State) | (a) Wages, etc. | (b) Income Tax Withheld |
|---|---|---|---|
| F.I.T. | N.Y. N.Y. | $752 50 | $52 3 |
| U.S. Army | N.Y. N.Y. | 277 40 | 35 4 |
| | Enter totals here → | $1029 90 | $87 9 |

6. Less: (a) Travel, reimbursed expenses, etc. (See instructions, page 6. Attach required statements.) $......
   (b) Excludable "Sick Pay" in line 5 ...... 45 00
7. Balance (line 5 less line 6) $984 90
8. Profit (or loss) from business from separate Schedule C
9. Profit (or loss) from farming from separate Schedule F
10. Other income (or loss) from page 3 (dividends, interest, rents, pensions, etc.) 4702 00
11. ADJUSTED GROSS INCOME (sum of lines 7, 8, 9, and 10) $5686 90

If social security tax (FICA) withheld from your wages exceeded $94.50, see instructions, page 5.

Unmarried or legally separated persons qualifying as "Head of Household," see instructions, page 7, and check here ☐

Widows and widowers who are entitled to the special tax computation, see instructions, page 7, and check here ☐

Tax due or refund

12. Tax on income on line 11. (If line 11 is under $5,000, and you do not itemize deductions, use Tax Table on page 16 of instructions to find your tax and check here ☐. If line 11 is $5,000 or more, or if you itemize deductions, compute your tax on page 2 and enter here the amount from line 9, page 2) $800 [illegible]

If income was all from wages, omit lines 13 through 16

13. (a) Dividends received credit from line 5 of Schedule J $18 72
    (b) Retirement income credit from line 12 of Schedule K 18 7[illegible]
14. Balance (line 12 less line 13) $781 3[illegible]
15. Enter your self-employment tax from separate Schedule C or F 107 8[illegible]
16. Sum of lines 14 and 15 $889 1[illegible]
17. (a) Tax withheld (line 5 above). Attach Forms W-2 (Copy B) $87 90
    (b) Payments and credits on 1957 Declaration of Estimated Tax (See page 8, instructions.) District Director's office where paid ...... $87 9[illegible]
18. If your tax (line 12 or 16) is larger than your payments (line 17), enter the balance due here → $801
    Pay in full with this return to "Internal Revenue Service." If less than $1.00, file return without payment.
19. If your payments (line 17) are larger than your tax (line 12 or 16), enter the overpayment here → $
    If less than $1.00, the overpayment will be refunded only upon application. See instructions, page 8.
20. Amount of line 19 to be: (a) Credited on 1958 estimated tax $......; (b) Refunded $......

County in which you live ...... | Is your wife (husband) making a separate return for 1957? ☐ Yes ☐ No If "Yes," enter her (his) name. | Do you owe any Federal tax for years before 1957? ☐ Yes ☐ No

TAXPAYER—I declare under the penalties of perjury that this return (including any accompanying schedules and statements) has been examined by me and to the best of my knowledge and belief is a true, correct, and complete return.

Sign here ........ (Your signature) (Date) (If this is a joint return, wife's signature) (Date)

→ To assure split-income benefits, husband and wife must include all their income and, even though only one has income, BOTH MUST SIGN

PREPARER (other than taxpayer)—I declare under the penalties of perjury that I prepared this return for the person(s) named herein; and that this return (including any accompanying schedules and statements) is, to the best of my knowledge and belief, a true, correct, and complete return based on all the information relating to the matters required to be reported in this return of which I have any knowledge.

Sign here ........ (Individual or Firm Signature) (Address) (Date)

Form 1040—1957 EXEMPTIONS FOR PERSONS OTHER THAN YOUR WIFE AND CHILDREN Page 2

| Name | Relationship | Number of months dependent lived in your home. If born or died during year also write "B" or "D" | Did dependent have gross income of $600 or more? | Amount YOU spent for dependent's support. If 100% write "All" | Amount spent by OTHERS including dependent from own funds |
|---|---|---|---|---|---|
| | | | | $ | $ |
| | | | | | |
| | | | | | |

Enter on line 3, page 1, the number of exemptions claimed above.
→ If an exemption is based on a multiple-support agreement of a group of persons, attach information described on page 5 of instructions.

## ITEMIZED DEDUCTIONS—IF YOU DO NOT USE TAX TABLE OR STANDARD DEDUCTION

If Husband and Wife (Not Legally Separated) File Separate Returns and One Itemizes Deductions, the Other Must Also Itemize

State to whom paid. If necessary write more than one item on a line or attach additional sheets. Please put your name and address on any attachments.

| | | |
|---|---|---|
| Contributions | Red Cross, Veterans, [illegible], Alumni, [illegible], U.J.A., Polio, Cancer | |
| | Total paid but not to exceed 20% of line 11, page 1, except as described on page 8 of instructions | $ 56 00 |
| Interest | | |
| | Total interest | |
| Taxes | [illegible] 77.36 | |
| | [illegible] 58.80 | |
| | [illegible] 17.50 | |
| | [illegible] 04/gal $2.03 | |
| | 1300 gals | |
| | Total taxes | 196 81 |
| Medical and dental expense (If 65 or over, see instructions, page 9) | Submit itemized list. Do not enter any expense compensated by insurance or otherwise. | |
| | 1. Cost of medicines and drugs, in excess of 1 percent of line 11, page 1 ........ $ | |
| | 2. Other medical and dental expenses ........ | |
| | 3. Total ........ $ | |
| | 4. Enter 3 percent of line 11, page 1 ........ | |
| | 5. Allowable amount (excess of line 3 over line 4). (See instructions, page 10, for limitations.) | |
| Other Deductions (Including child care and casualty losses) | Enter child care expenses paid but not to exceed $600. Enter casualty losses which are not compensated by insurance or otherwise. See page 10 of instructions and attach information required. | |
| | [illegible] | |
| | Total | 1015 00 (~~180~~) |
| | TOTAL DEDUCTIONS (Enter here and on line 2 of Tax Computation, below) | $ |

## TAX COMPUTATION—IF YOU DO NOT USE THE TAX TABLE

| | |
|---|---|
| 1. Enter Adjusted Gross Income from line 11, page 1 | $ 5686 9 |
| 2. If deductions are itemized above, enter total of such deductions. If deductions are not itemized and line 1, above, is $5,000 or more: (a) a married person filing separately enter $500; (b) all others enter 10 percent of line 1, or $1,000, whichever is smaller | 1267 8 |
| 3. Balance (line 1 less line 2) | 4419 1 |
| 4. Multiply $600 by total number of exemptions claimed on line 4, page 1 | 600 0 |
| 5. TAXABLE INCOME (line 3 less line 4) | 3819 1 |
| 6. Tax on amount on line 5. Use appropriate Tax Rate Schedule on page 11 of instructions | 800 |
| 7. If you had capital gains and the alternative tax applies, enter the tax from separate Schedule D | |
| 8. Tax credits. If you itemized deductions, enter: (a) Credit for income tax payments to a foreign country or U. S. possession (Attach Form 1116) $ (b) Tax paid at source on tax-free covenant bond interest and credit for partially tax-exempt interest. Enter total → | |
| 9. Enter here and on line 12, page 1, the amount shown on line 6 or 7 less amount claimed on line 8 | $ |

16—73583-1 GPO

Form 1040—1957 Page

**IF INCOME WAS ALL FROM SALARIES AND WAGES, TEAR OFF THIS PAGE AND FILE ONLY PAGES 1 AND**

## Schedule A.—INCOME FROM DIVIDENDS (Income from Savings (Building) and Loan Associations and Credit Unions should be entered as interest in Schedule B)

| 1. Name of qualifying corporation declaring dividend (See instructions, page 12): (Indicate by (H), (W), (J) whether stock is held by husband, wife, or jointly) | Amount | |
|---|---|---|
| Con Edison | $ 240.00 | |
| I.D.C. Corp | 200.00 | |
| Kerr McGee | 28.00 | |
| Public Service of Indiana | 50.00 | |
| 2. Total | $ 518.00 | |
| 3. Exclusion of $50 (If both husband and wife received dividends, each is entitled to exclude not more than $50 of his (her) own dividends) | 50.00 | |
| 4. Excess, if any, of line 2 over line 3. Enter here and on line 1, Schedule J | $ 468.00 | |
| 5. Name of nonqualifying corporation declaring dividend: | | |
| 6. Enter total of lines 4 and 5 | | $ 468 |

## Schedule B.—INCOME FROM INTEREST

| Name of payer | Amount | Name of payer | Amount | |
|---|---|---|---|---|
| Savings Accts | $ 30.00 | | $ | |
| | | | Enter total here → | 30 |

## Schedule D Summary.—GAINS AND LOSSES FROM SALES OR EXCHANGES OF PROPERTY

1. From sale or exchange of capital assets (from separate Schedule D)
2. From sale or exchange of property other than capital assets (from separate Schedule D)

## Schedule E.—INCOME FROM PENSIONS AND ANNUITIES (See Instructions, page 13)

**Part I.—General Rule**

| | | | |
|---|---|---|---|
| 1. Investment in contract | $ | 4. Amount received this year | $ |
| 2. Expected return | $ | 5. Amount excludable (line 4 multiplied by line 3) | |
| 3. Percentage of income to be excluded (line 1 divided by line 2) | % | 6. Taxable portion (excess of line 4 over line 5) | |

**Part II.—Where your cost will be recovered within three years and your employer has contributed part of the cost**

| | | | |
|---|---|---|---|
| 1. Cost of annuity (amounts paid in) | $ | 4. Amount received this year | $ |
| 2. Cost received tax-free in past years | | | |
| 3. Remainder of cost (line 1 less line 2) | $ | 5. Taxable portion (excess, if any, of line 4 over line 3) | |

## Schedule G.—INCOME FROM RENTS AND ROYALTIES

| 1. Kind and location of property | 2. Amount of rent or royalty | 3. Depreciation (explain in Sch. I) or depletion | 4. Repairs (attach itemized list) | 5. Other expenses (attach itemized list) |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | | | | |
| | | | | |
| | | | | |
| 1. Totals | $ | $ | $ | $ |

2. Net income (or loss) from rents and royalties (column 2 less sum of columns 3, 4, and 5)

## Schedule H.—OTHER INCOME

| | |
|---|---|
| 1. Partnerships (name and address) Bayshore Togs Keyport N.J. | 4204 |
| 2. Estates or trusts (name and address) | |
| 3. Other sources (state nature) | |
| Total income (or loss) from above sources (Enter here and on line 10, page 1) | $ 4702 |

## Schedule I.—EXPLANATION OF DEDUCTION FOR DEPRECIATION CLAIMED IN SCHEDULE G

| 1. Kind of property (If buildings, state material of which constructed). Exclude land and other nondepreciable property | 2. Date acquired | 3. Cost or other basis | 4. Depreciation allowed (or allowable) in prior years | 5. Method of computing depreciation | 6. Rate (%) or life (years) | 7. Depreciation for this year |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | $ | $ | | | $ |
| | | | | | | |
| | | | | | | |
| | | | | | | |

251 / 480 / 1333 / 1310

IF INCOME WAS ALL FROM SALARIES AND WAGES, TEAR OFF THIS PAGE AND FILE ONLY PAGES 1 AND 2



## Schedule J.—DIVIDENDS RECEIVED CREDIT (See instructions, page 15)

| | | |
|---|---|---|
| 1. Amount of dividends on line 4, Schedule A | $ 468 | [illegible] |
| 2. Tentative credit (4 percent of line 1) | 18 | 7[illegible] |
| **LIMITATION ON CREDIT** | | |
| 3. Tax shown on line 12, page 1, plus amount, if any, shown on line 8(b), page 2 | 865 | [illegible] |
| 4. 4 percent of taxable income | 32 | [illegible] |
| Taxable Income Means: (a) If tax is computed on page 2, the amount shown on line 5, page 2. (b) If capital gains alternative tax applies, the amount shown on line 14, separate Schedule D. (c) If Tax Table is used, the amount shown on line 11, page 1, less 10 percent thereof, and less the deduction for exemptions ($600 multiplied by the number of exemptions claimed on line 4, page 1). | | |
| 5. Dividends received credit. Enter here and on line 13(a), page 1, the smallest of the amounts on line 2, 3, or 4, above | $ 18 | 7[illegible] |

## Schedule K.—RETIREMENT INCOME CREDIT (See instructions, page 15)

**This credit does not apply:**
1. If you received pensions or annuities of $1,200 or more from Social Security or Railroad Retirement,
2. If you are under 65 years of age and had "earned income" of $2,100 or more, OR
3. If you are 65 or over and under 72, and had "earned income" of $2,400 or more.

| If separate return, use column B only. If joint return, use column A for wife and column B for husband → | A | | B | |
|---|---|---|---|---|
| Did you receive earned income in excess of $600 in each of any 10 calendar years before the taxable year 1957? —Widow or widowers see instructions, page 15 | ☐ Yes ☐ No | | ☐ Yes ☐ No | |
| If answer above is "Yes" in either column, furnish all information below in that column. | | | | |
| 1. Retirement income for taxable year which is included in line 11, page 1, of this return: | | | | |
| (a) For taxpayers under 65 years of age: Enter only income received from pensions and annuities under public retirement systems, including retirement pay from Armed Forces | $ | | $ | |
| (b) For taxpayers 65 years of age or older: Enter total of pensions and annuities, including retirement pay from Armed Forces, interest, gross rents, and dividends | | | | |
| **LIMITATION ON RETIREMENT INCOME** | | | | |
| 2. Maximum amount of retirement income for credit computation | $ 1,200 | 00 | $ 1,200 | 00 |
| 3. Deduct: (a) Amounts received in taxable year as pensions or annuities under the Social Security Act, the Railroad Retirement Acts, and certain other exclusions from gross income | | | | |
| (b) Earned income received in taxable year: (This line does not apply to persons 72 years of age or over) | | | | |
| (1) Taxpayers under 65 years of age, enter amount in excess of $900 | | | | |
| (2) Taxpayers 65 or over and under 72, enter amount in excess of $1,200 | | | | |
| 4. Total of lines 3(a) and 3(b) | | | | |
| 5. Balance (line 2 minus line 4) | | | | |
| 6. Line 5 or line 1, whichever is smaller | | | | |
| 7. Tentative credit (20 percent of line 6) | | | | |

| | | |
|---|---|---|
| 8. Total tentative credit on this return (total of amounts on line 7, columns A and B) | | |
| **LIMITATION ON RETIREMENT INCOME CREDIT** | | |
| 9. Amount of tax shown on line 12, page 1 | | |
| 10. Less: Dividends received credit from line 5, Schedule J, above | | |
| 11. Balance (line 9 less line 10) | | |
| Retirement income credit. Enter here and on line 13(b), page 1, the amount on line 8 or line 11, whichever is smaller | $ | |

U. S. GOVERNMENT PRINTING OFFICE 16—73583-1

# ATTACHMENT E

Page of Faculty Listing of F.I.T.

state
university
of
new
york

FASHION INSTITUTE OF TECHNOLOGY

# FASHION INSTITUTE OF TECHNOLOGY

## special studies and evening programs

1956 - 1957

*faculty continued*

MATHEW LEVY Management; B.A. and M.A., New York University

GEORGE LINTON Textile Science Department; Philadelphia Textile Institute; B.S., Teachers College, Columbia University; M.A., Ph.D., Fordham University

ADELAIDE MANNO Industrial Management; B.A., Hunter College

JENNIE G. MORSE Chairman, Textile Design Department; New York School of Applied Design

ANGELA T. NEGLIA Textile Design

ELIZABETH PEYROUNE Apparel Design

ALEXANDER PITTS, JR. Management; B.A., Talladega College; M.A., Rutgers University

CHARLES REICHMAN Knitting; Harvard School of Business; B.B.A., City College of New York

HENRIETTE REISS Textile Design; Kunstgewerbeschule, Basel and Munich

MARIE ROBISON Apparel Design; Parsons School of Fine and Applied Arts

VITTORINA ROLFO Apparel Design; B.S., New York University

ULDERICO SACCO Management; B.S., M.B.A., New York University

FRANK SHAPIRO Chairman, Art Department; B.S. and M.S., City College of New York; National Academy of Design, New York

# ATTACHMENT F

## Letter from Social Security Administration

DEPARTMENT OF
HEALTH, EDUCATION, AND WELFARE
SOCIAL SECURITY ADMINISTRATION

BUREAU OF OLD-AGE AND SURVIVORS INSURANCE

IN REPLY REFER TO
FILE No. 14:WR:OW
OAR-L5148
Account No.
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

ADDRESS: SOCIAL SECURITY ADMINISTRATION
CANDLER BUILDING
BALTIMORE 2, MD.

April 15, 1960

Mr. Mathew Levy
2757 Claflin Avenue
Bronx 68, New York

Dear Mr. Levy:

Our investigation of your old-age and survivors insurance account has been completed. Information about your account is given on the enclosed page. The total shown may not include all of your earnings during the last calendar year. This is because of the time it takes to receive and record reports.

If you believe that the status of your account is not correct you may request that your case be re-examined. If you want this reconsideration, you must request it not later than 6 months from the date of this notice. You may make any such request through a social security district office. If additional evidence is available you should submit it with your request.

If you have any other questions about your case, you should visit or write your social security district office.

Sincerely yours,

J. L. Fay
Assistant Director

Enclosures (2)

Form OAR-L5148
10-59

Mr. Mathew Levy - Account No. 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 - April 15, 1960

A total of $40,646.25 is now credited to your account. This includes the following:

| Employer | Year | Amount |
|---|---|---|
| Board of Education, City of New York | 1957 | $ 752.50 |
| United States Army Chemical Procurement | 1957 | 198.90 |
| Self-Employment | 1957 | 3,248.60 |
| Board of Education, City of New York | 1958 | 826.00 |
| Mountain Top Manufacturing Company | 1958 | 4,290.00 |
| United States Army Procurement | 1958 | 217.50 |

The earnings you claim for employment with Fashion Institute of Technology during the years 1957 and 1958 were not reported by this employer. However, earnings are credited to your account for this period for employment you did not mention. Since employers sometimes report under names not known to their employees, we suggest that you compare your earnings with the itemization shown above. If a difference still exists, please take this letter and any evidence you may have of the earnings not credited to your account to the nearest Social Security Administration District Office for assistance in reconciling the difference.

The difference in the amount you stated you were paid by the United States Army in 1957 and the amount shown on our records may be due to the difference in basic service pay and other remuneration you may have received. Only basic service pay is considered "wages" for social security purposes. We have adjusted the amount of self-employment income to bring your 1957 annual earnings up to the maximum of $4,200.

An individual who derives all of his earnings from self-employment is required to pay social security tax on only the first $3,600 of his net earnings for each of the years 1951 through 1954, $4,200 for 1955 through 1958 and $4,800 after 1958.

The maximum amount of earnings which an employer is required to report for an employee is the first $3,000 for each of the years prior to 1951, $3,600 for 1951 through 1954, $4,200 for 1955 through 1958, and $4,800 after 1958.

If you had more than one employer and paid taxes on annual earnings over a maximum, you may claim a refund of these excess taxes on your income tax return for that year, or apply for a refund to the local district director of internal revenue within two years after the year in which the earnings were paid. Even though you may obtain a refund of taxes paid on earnings in excess of the maximum amount, these earnings may remain credited to your account. However, any amounts over the maximum limitation will not be used when figuring any benefits to which you may be entitled.

# ATTACHMENT G

## Mobilization Designation Assignment

H Blackner/ [illegible]
GE 9-5400 Ext 2154

HEADQUARTERS
NEW YORK MILITARY DISTRICT
90 Church Street
New York 7, N. Y.

Suspense
Date: 24 Jan 57

AHMPM(3)(1702) 201 (ADDRESSEE SHOWN BELOW)

10 Jan 57

SUBJECT: Mobilization Designation Assignment

TO: [illegible] Levy, 0 931 133
2757 [illegible] Ave.
Bronx, New York

1. You have been selected by the Department of the Army for the following mobilization designation position:

MOBILIZATION DESIGNATION T/D NUMBER: [illegible] (CS), New York Chemical Procurement District, NY, NY
[illegible]

T/D GRADE: Captain

MOS: 4220

MOS TITLE: [illegible]

2. An information sheet is inclosed to assist you in making a decision as to whether or not you desire to accept this assignment.

3. It is requested that you complete the inclosed acceptance form and return to this headquarters no later than 24 Jan 57.

4. A self addressed envelope is inclosed for your convenience.

FOR THE CHIEF:

C. Covotsos
C. COVOTSOS
Captain, AGC
Asst Pers Mgt Off

3 Incl
1. Info Sheet
2. Accept Form
3. Self add env

NYMD FL 492
18 May 1956

# ATTACHMENT H

## Memorandum of 28 August 1957
## From Chief, Procurement Services Branch

NEW YORK CHEMICAL PROCUREMENT DISTRICT, U. S. ARMY
~~180 VARICK STREET~~ 290 Broadway
NEW YORK ~~14~~ N. Y.
7

IN REPLY REFER TO:

CMLMC-NY-ZP-3

28 August 1957

First Lt. Mathew Levy
c/o Bayshore Togs
Locust Street
Keyport, N. J.

Dear Mat:

Please accept my apologies for the delay in the preparation of your report, (we have had our problems). Your original has been forwarded to the Commanding Officer for review.

Your Analysis of operational responsibilities concerning our Branch is one of the finest I have had the privilege to read.

I certainly hope your efforts will bring deserving rewards.

Very truly yours,

TWM

THOMAS W. MURPHY, 1st Lt CmlC
Chief, Procurement Services Branch.

1 Incl.
Analysis of BMS & Surplus Funds

# ATTACHMENT I

## Analysis of Operational Responsibilities

NYPD file
CG Terry
21 day 56

U. S. ARMY CHEMICAL PROCUREMENT DISTRICT, NEW YORK
290 Broadway
New York 7, N. Y.

ORC TRAINING DUTY

PROCUREMENT DIVISION

Officer: 1st Lt. Mathew Levy
14 - 28 July 1957

1. Subject

A. Evaluation and review of procedures on maintenance of DMS and internal control records under current Army Regulations.

B. Analysis of the Procurement Division's responsibility for reporting surplus (cited) funds.

2. Purpose

Provides administrative training in the field of chemical procurement procedures.

3. Scope

A. To review and evaluate procedures on maintenance of DMS and internal control records under pertinent Army Regulations.

B. To analyze the Procurement Division's responsibility for thorough and timely reporting of surplus funds (cited funds with FY limitations) in conjunction with similar responsibility of the Comptroller's Office.

4. References

A. USACPD-NY 80-7 (9 Nov 54 inc. changes)
B. AR 345 - 280 c 1

5. Contact Representatives

Mr. A. J. Cilento, Assistant Chief, Procurement Division
Mr. J. Zang, Deputy Comptroller
Capt. F. H. Tryon, Finance and Accounting Officer
Mr. F. Gorman, DMS Officer
Mr. S. Gordon, Assistant Chief, Procurement Services Branch

ORC Training Duty Rpt.
Lt. Mathew Levy

6. Problem

A. Prepare a resume of the status (adequacy or inadequacy) of conditions under the application of pertinent Army Regulations with respect to DMS records and reports and/internal office (Branch) records and reports as maintained in the Branch files.

B. Prepare an outline of a suggested procedure for maintenance of an internal office control device (or etc.) which could facilitate a thorough and timely system of providing information as to sufficiency of funds to each and every procurement authorization.

DATE: 21 July 1957

SUBJECT: Analysis of DMS and Surplus Funds, With Recommendations.

TO: Commanding Officer
U.S.A. Cml Procurement District New York
290 Broadway
New York 7, N.Y.

THRU: Chief,
Procurement Division, USACPD New York

1. Herewith attached is the analysis of the problem presented me by the New York Procurement District.

2. Section A encompasses a review and evaluation of procedures on maintenance of Defense Materials System (DMS) and internal control records under current Army Regulations.

3. Section B is an analysis of the Procurement Division's responsibility for reporting surplus (stock) funds.

4. In the analysis of the above problems it has been my intention to briefly summarize the overall picture; review the Procurement District's obligations and submit any and all recommendations feasible.

5. At this time I wish to acknowledge the excellent guidance given me by the members of the Procurement Staff, especially the assistance of:

| | |
|---|---|
| Mr. F. Garusa | DMS Officer |
| Mr. S. Gordon | Asst. Chief, Proc. Services Branch |
| Mr. A.J. DiLeuto | Asst. Chief, Procurement Division |
| Lt. T. Murphy | Chief, Procurement Services Branch |
| Capt. Tryon | Finance Officer |
| Miss. M. Brenner | Supervisory Accountant |

6. This report is, therefore, submitted for your consideration.

NATHAN LEVY
1st Lt. CmlC
O-981137

SECTION A

"Review and Evaluation of Procedures on Maintenance of [illegible] and Internal Control Records"

Under current regulations the Defense Materials System, referred to as DMS, serves as an operating material control system designed to permit quick, "all out" industrial mobilization in time of national emergency. The system, in order to operate at peak efficiency is dependent upon the following:

1. Good, reliable information.
2. Qualified trained personnel.
3. Existance of ready plans.

The functions of DMS, therefore, are designed to meet the following requirements:

1. To insure the completion of all military programs on time.
2. To retain a framework of a control system for quickly expanding military needs in time of total mobilization.
3. To avoid unrestricted use of priority ratings.
4. To minimize the need for establishing contracts on civilian production and construction in case of emergency.
5. To provide for identifications of Defense Orders.

II

GLOSSARY OF TERMS TO BE USED

Rated Order - A delivery order for any product or material (other than a controlled material) bearing an authorized rating.

CONTROLLED MATERIALS - All metals listed in Schedule I DMS Regulation I.

Class A Product - Any product which is not a Class B Product - A product produced for sale to a few specialized customers.

Class B Product - Products for sale to many customers.

III

In general, the System provides for the identification of all Defense Orders by an appropriate program symbol in the form of rated orders or authorized controlled material orders; the preferential treatment of such orders by suppliers; and the accounting for the greater part of the controlled materials used in Defense programs.

Therefore, rated contracts of the Department of Defense will contain a clause, requiring the contractor to agree that he will follow the provisions of the applicable rules and regulations of DMS in use of materials required for his contract quarter. (Reports governing each calendar quarter production are reviewed by the O.D.M. which authorizes the fulfillment of the programs it approves under the provisions of DMS).

Under DMS regulations, military contractors and sub-contractors have two mandatory obligations:

1. All purchase orders for materials and products needed to fulfill defense contracts must be identified by an appropriate program symbol as prescribed.
2. The quantity of materials ordered with the preferential Defense identifications must not exceed that required by contractor's production schedule.

IV.

Procedure Used by USAGPD

1. Prior to awarding the contract and after bids have been distributed the DMS Officer will determine how much controlled material is required for the item. (The determination is accomplished with consultation of the Engineering Division as to approved production schedules.)

2. When the contract is signed and production schedules are authorized, the required material is requested from Chemical Material Command (MatCom), by Code, for use in the calendar quarter in accordance with approved production schedules.

3. Upon receipt of DMS 4A the allotment and authorized production schedule are extended to the contractor on Form DMS 10.

The Procurement Division of USACPDNY accomplishes it's mission thru the use of four (4) major DMS records:

1. DMS-4A - Application for allotment and Authorized Production Schedule.

2. DMS-10 - Allotment of Controlled Materials to Contractor.

3. CmlC MatCom 4R - Controlled Material Status.

4. DD 492 - Report of Allotment

1. DMS 4A - is submitted by the contractor at request of the Procurement Office (See Exhibit A). It is accomplished only upon request for an initial or supplemental supply of controlled material. Therefore, in the normal performance of a contract it is submitted for the yearly quarters of life of contract. Under unusual circumstances the number of application is dependent upon the nature of the contract.

2. DMS-10 - Issued by Materiel Command Procurement Division upon receipt of DMS 4A from contractor (See Exhibit B). This form is accomplished by Chief DMS only upon inspection and approval of DMS 4A. This form, as form DMS 4A, under normal circumstances is submitted for the yearly quarters.

3. CmlC MatCom 4R - Submitted by the Procurement Division. It is a monthly report form maintained by this Office. Its purpose is to check upon the usage of the allocated materials for the month (See Exhibit C). The information for item 7 is supplied by MatCom and Item 8 is supplied by inspection reports submitted on 28 of each month.

4. DD 492 - Submitted monthly by the Procurement District breaks the allocations down the various Defense Claimant Programs by name and Code Number (See Exhibit D). This form tends to accumulate the total amounts by group rather than contract.

V

SUMMARY AND RECOMMENDATIONS

Since it has been the primary objective of this report to evaluate the status of conditions under Army regulations with respect to DMS records and reports, it is only fitting that we do not attempt justification of the system in general.

The major objective, as it appears, is to maintain a system of checks, balances governing the allocation of controlled material, thereby insuring proper division of the available supply to all necessary contractors based upon their production needs.

Exhibit A although apparently adequate leaves one small point to be desired. The form lists two types of applications - Initial and Supplementary. The Initial application is self explanatory, but it is my contention that a Supplemental application, should require justification by the requesting contractor, as to what conditions prevail to make a Supplemental action necessary.

The remainder of the records accomplish their purpose admirably. The wealth of information that is supplied to higher echelon is tremendous.

Only one point needs clarification in my mind. All manufacturing processes of hard goods require the accumulation of a waste that is in the form of this product. No where in these records do I find an accounting for the waste and the final disposition of these items. Through proper

accounting and processing of these wastes, it might become possible to add to the stock pile of available material.

This form should be accomplished by the contractor and submitted to the Procurement Division for transmission to Materiel Command.

As a final recommendation, the matter of record and maintenance comes to mind. Since the prime objective of this program is to supply information to Department of Defense and O.S.R.D., who is responsible for the final allocation recording, it does not seem feasible for the Procurement Division to maintain as complete a file of records that now is in existence. The information in the records is in duplication of the offices of Materiel Command, Department of Defense and O.S.R.D. It is my contention, therefore, that, a review of the record maintenance be accomplished with the view in mind of eliminating as many records, supplying duplicate information, as possible.

# APPENDIX A

## Classification of Controlled Materials

| Class # | Nomenclature |
|---|---|
| 10 | Carbon Steel |
| 20 | Alloy Steel |
| 30 | Stainless Steel |
| 40 | Copper & Copper Base Alloy Brass Mill Products |
| 50 | Copper Wire Mill Products |
| 60 | Copper and Copper Base Alloy Foundry Products and Powder |
| 70 | Aluminum |
| 80 | Nickel and Nickel Base Alloy |

## APPENDIX B

## DMS TRANSACTION FLOW AT NYCPD




Prime Contractor may request materials by submitting Form DMS-4A.

REFERENCES:

| | |
|---|---|
| Cml-AM-M-TP | Army Chemical Center, 19 April 1957 |
| DMS Reg 1 | 1 April 1954 |
| DMS Reg 2 | 1 April 1954 |
| DMS Reg 1, Dir 4 | 11 April 1957 |
| DMS Reg 2, Dir 3 | 11 April 1957 |
| DOD Emergency Priorities and Allocations Manual | 12 Sep 1955 |
| SR 715-5-10 | Dept of Army 1954 |

I

28 July 1957

The problem of surplus funds is one that presents a challenge to management. In accounting procedure and recording, but the channels through wich this procedure must pass is one clogged with many managerial pitfalls.

Before we get into the problem and its solutions we must cite the industrial management difficulties. Basically the problem is one of authority and responsibility.

One of the Cardinal rules of industrial management, cited by the founders of the science and carried forth to today's usage is the relationship between authority and responsibility.

"One should never accept responsibility without the proper authority - Authority should never be cited without the corresponding responsibility".

The problem, therefore can only be handled properly, by first locating the responsible agencies, and then determining if the corresponding authority is available to these agencies.

II

Basically the responsibility lies with two agencies. First with the Comptroller, and second with the Procurement Division.

The responsibility of the Comptroller is clearly defined in Regulation 80-7 dated 9 Nov 1954. The Comptroller is responsible for:

1. Reporting funds deemed to be in excess
2. Requesting from higher authority additional funds necessary
3. Insuring that no obligations or expenditures exceed allocated funds.

The responsibility of the Procurement Division also clearly defined but the moral responsibility is only implied. The Chief, Procurement Division

is responsible for:

1. Reporting to Comptroller any excess in procurement of a directive.

2. Requesting additional funds to complete a directive

III

Since the responsibilities are clearly defined we need not consider them too carefully. What we must consider is the aforementioned moral responsibility of the Chief, Procurement Division. A moral responsibility is one of implication rather than one of definition. The first evidence of its existence appears in the listed responsibilities of the Procurement Division and Comptroller. All funds that are in excess are only deemed to be so therefore by the Chief, Procurement Division; the Comptroller can only act on the information given by the Chief. It is true that the Comptroller through simple accounting procedure can arrive at an excess balance between allocated funds and directed funds, but he can not call them surplus unless so informed by the Chief that they are in excess of the requirement to complete the procurement directive. We therefore, place a moral responsibility upon the Chief to carefully scrutinize the records and clearly define what funds are surplus and what funds are necessarily maintained for contract completion. This is carefully defined in Regulation 80-7 Section 5 (3B).

IV

Through a careful check of all existing records we find that there are enough forms available to complete the cycle between Procurement and Comptroller the basic form is USACPEKY FL 120 (Exhibit A) originally instituted 28 Dec 55, amended 4 Nov 54 and finally amended 4 Jan 56. Even at this date this form is deemed inadequate by your author. A further review of this form will appear in the section on recommended [illegible]

CmlC Form 3625 (Exhibit B). Request for Procurement Funding is submitted to Materiel Command by the Comptroller's office. The interesting feature of the form, is that according, to existing precedent this form can be instituted by the receipt of a 120 from Procurement or can be instituted by the Comptroller, with no contact with Procurement, when the records show the necessity of a funding change.

Forms NYPD 79, exhibit C, and NYPD 91 exhibit D are communicating links between the Contracting Offices and the Comptroller. These forms are initiated by the contracting officer and submitted to the Comptroller. In actuality the forms accomplish the same purpose for different types of contracts. NYPD 79 being submitted for Negotiated Agreements and NYPD 91 for Formally Advertised contracts.

NYPD form 46, obviously a liaison form between the contracting officer and Comptroller has provisions for initiation at either end. In essence, it should originate from the Comptroller upon their discovery of a surplus amount and be transmitted to the Contracting Officer for information as to what action should be taken.

CmlMat C- NY-8, exhibit F, a form used entirely by the Comptroller, attempts to secure information relative to find disposition of unobligated funds. It is initiated by the Comptroller's office.

V

Summary and recommendations

After careful consideration of all the factors at hand we find that the problem of surplus funds (cited) is no problem at all. Regulations state what the responsibility of the Procurement and Comptroller's Divisions are. The connection between the divisions is filled with numerous forms from USACPDNY, Materiel Command, and the individual divisions.

In fact the quantity of forms used is tremendous. Many are in duplication, and many are just to secure information that should be included on a previous form. In actuality the only concrete change that can be recommended is to secure a stronger liaison between the two divisions other than that of combined efforts of the appropriation accounts division of the Comptroller's office and of the Procurement Services Branch as it exists.

All recommendations must of necessity start with the revision of inter communication records.

A - Form 120

1. According to Regulation 80-7 Form 120 must be submitted to Comptroller upon the final award of the contract. The strength of the regulation does not seem to be enough to insure the completion of Form 120. Therefore it is recommended that form 120 be made mandatory to all contract awards and should pass through the Procurement Services Branch to the Comptroller. In case of single contract awards for a Procurement Authority Instrument no action other than recording will be accomplished by the Procurement Service Branch. In multi contracts of a Procurement Authority Instrument, it shall be the responsibility of the Procurement Service Branch to compile the information of the various 120 forms and submit a consolidated 120 to the Comptroller.

2. The initial completion of the 120 Form should be the responsibility of the Contracting Officer.

3. Form 120 should be revised to include a justification for the holding of any surplus funds. This justification should include Research and Development, the procurement of all items up to and including the pilot plant stage, and those dealing with extenuating transportation difficulties.

B - Forms 79 & 91

Again according to 80-7 these forms must accompany a contract award. The usage of two different forms to supply the same information is based only upon the type of contract. It is therefore recommended that these forms be united to one form and a column added that would indicate whether it was for a Negotiated Agreement or a Formally Advertized Contract.

C - NYPD 46 and Comptroller Form Cml MD-NY-6

These forms in actuality are in duplication of each other. The necessity of these forms should be challenged if recommendation is followed; if not they should be consolidated to one form.

D - Through a closer contact between the Contracting and Negotiating Officers, and the Comptroller's office by whatever managerial channels are necessary, especially by the delegation of more authority to the Appropriation Accounts Supervisor. The tense situation of surplus funds as it exists today can certainly be reduced if not completely eliminated.

References

AR 37-20
SR 37-20-1
Regulation 80-7 with Change 1

Exhibit 13

# Monthly Incentive Pay (Aviation Pay Crew-Member and Submarine Duty Pay) and Other Special Pay

Effective: 1 April 1955

| Rank | Cumulative Years of Service 1/ Under 2 | Over 2 | Over 3 | Over 4 | Over 6 | Over 8 | Over 10 | Over 12 | Over 14 | Over 16 | Over 18 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| O-10 | 165.00 | | | | | | | | | | |
| O-9 | 165.00 | | | | | | | | | | |
| O-8 | 155.00 | | 165.00 | | | | | | | | |
| O-7 | 150.00 | | 160.00 | | | | | | | | |
| O-6 | 200.00 | | 215.00 | | | | | | | 220.00 | 245.00 |
| O-5 | 190.00 | | 205.00 | | | | | 210.00 | 225.00 | 230.00 | 245.00 |
| O-4 | 170.00 | | 185.00 | | | 195.00 | 210.00 | 215.00 | 220.00 | 230.00 | 240.00 |
| O-3 | 145.00 | | 155.00 | 165.00 | 180.00 | 185.00 | 190.00 | 200.00 | 205.00 | | |
| O-2 | 115.00 | 125.00 | 150.00 | | 160.00 | 165.00 | 170.00 | 180.00 | 185.00 | | |
| O-1 | 100.00 | 105.00 | 135.00 | | 140.00 | 145.00 | 155.00 | 160.00 | 170.00 | | |
| W-4 | 115.00 | | | | 120.00 | 125.00 | 135.00 | 145.00 | 155.00 | 160.00 | 165.00 |
| W-3 | 110.00 | 115.00 | | | 120.00 | | 125.00 | 135.00 | 140.00 | | |
| W-2 | 105.00 | 110.00 | | | 115.00 | 120.00 | 125.00 | 130.00 | 135.00 | | |
| W-1 | 100.00 | 105.00 | | | 110.00 | 120.00 | 125.00 | 130.00 | | | |
| E-7 | 80.00 | 85.00 | | | 90.00 | 95.00 | 100.00 | 105.00 | | | |
| E-6 | 70.00 | 75.00 | | 80.00 | 85.00 | 90.00 | 95.00 | | 100.00 | | |
| E-5 | 60.00 | 70.00 | | 80.00 | | 85.00 | 90.00 | 95.00 | | | |
| E-4 | 55.00 | 65.00 | | 70.00 | 75.00 | 80.00 | | | | | |
| E-3 | 55.00 | 60.00 | | | | | | | | | |
| E-2 | 50.00 | 60.00 | | | | | | | | | |
| E-1 +4mos | 50.00 | 55.00 | | | | | | | | | |
| E-1 -4mos | 50.00 | | | | | | | | | | |
| NavCad | 50.00 | | | | | | | | | | |

Family
Separation Allowance
Officers - $30.00
*Enlisted - $30.00
* Applies to E-4 (Over 4 and Above)

Special Pay Sea & Foreign Duty Pay

| | | | |
|---|---|---|---|
| E-9 | 22.50 | E-4 | 13.00 |
| E-8 | 22.50 | E-3 | 9.00 |
| E-7 | 22.50 | E-2 | 8.00 |
| E-6 | 20.00 | E-1 | 8.00 |
| E-5 | 16.00 | NavCad | 8.00 |

Basic Allowance for Subsistence
Enlisted:
When rations in kind are not available $2.57 per day

Notes:

1. If no amount is shown for a pay grade under cumulative years of service, the amount immediately to the left applies.

# Monthly Basic Pay and Allowances

Effective: 1 April 1955

| Rank | Under 2 | Over 2 | Over 3 | Over 4 | Over 6 | Over 8 | Over 10 | Over 12 | Over 14 | Over 16 | Over 18 | Over 20 | Over 22 | Over 26 | Over 30 | Personal Money Allowance | Basic Allowance for Subsistence | Basic Allowance for Quarters With Dependent | Basic Allowance for Quarters Without Dependent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Cumulative Years of Service 1/ | | | | | | | | | | | | | | | | | | |
| FL ADM | 963.30 | | 1,021.80 | | | | | | | | | | | | 1,076.40 | 333.33 | 47.88 | 171.00 | 136.80 |
| O-10 | 963.30 | | 1,021.80 | | | | | | | | | | | | 1,276.40 | 183.33 | 47.88 | 171.00 | 136.80 |
| O-9 | 963.30 | | 1,021.80 | | | | | | | | | | | | 1,176.40 | 41.67 2/ | 47.88 | 171.00 | 136.80 |
| O-8 | 963.30 | | 1,021.80 | | | | | | | | | | | | 1,076.40 | | 47.88 | 171.00 | 136.80 |
| O-7 | 800.28 | | 850.00 | | | | | | | | | | | 904.80 | 967.20 | | 47.88 | 171.00 | 136.80 |
| O-6 | 592.80 | | 631.80 | | | | | | | 655.20 | 717.60 | | 748.80 | 780.00 | 811.20 | | 47.88 | 136.80 | 119.70 |
| O-5 | 474.24 | | 507.00 | | | | | 530.40 | 561.60 | 577.20 | 608.40 | | 639.60 | 670.80 | | | 47.88 | 136.80 | 102.60 |
| O-4 | 400.14 | | 429.00 | | | 452.40 | 483.60 | 499.20 | 514.80 | 530.40 | 561.60 | | 577.20 | 592.80 | | | 47.88 | 119.70 | 94.20 |
| O-3 | 326.04 | | 351.00 | 374.40 | 405.60 | 421.20 | 436.80 | 452.40 | 468.00 | 483.60 | 499.20 | | 514.80 | | | | 47.88 | 102.60 | 85.50 |
| O-2 | 259.36 | 274.18 | 335.40 | | 351.00 | 366.60 | 382.20 | 397.80 | 413.40 | | | | | | | | 47.88 | 94.20 | 77.10 |
| O-1 | 222.30 | 237.12 | 296.40 | | 312.00 | 327.60 | 343.20 | 358.80 | 374.40 | | | | | | | | 47.88 | 85.50 | 68.40 |
| W-4 | 332.90 | 354.90 | | | 370.50 | 386.10 | 401.70 | 421.20 | 452.40 | 468.00 | 483.60 | | 499.20 | 514.20 | 530.40 | | 47.88 | 119.70 | 94.20 |
| W-3 | 302.64 | 323.70 | | | 331.50 | 339.30 | 347.10 | 358.80 | 374.40 | 382.20 | 405.60 | | 428.00 | 443.60 | 459.20 | | 47.88 | 102.60 | 85.50 |
| W-2 | 264.82 | 280.80 | | | 288.60 | 304.20 | 319.80 | 335.40 | 350.00 | 357.80 | 373.40 | | 389.40 | 404.60 | 420.20 | | 47.88 | 94.20 | 77.10 |
| W-1 | 219.42 | 251.20 | | | 266.80 | 286.30 | 294.10 | 305.80 | 313.60 | 321.40 | 337.00 | | 352.60 | 368.20 | | | 47.88 | 85.50 | 68.40 |

| Rank | Under 2 | Over 2 | Over 3 | Over 4 | Over 6 | Over 8 | Over 10 | Over 12 | Over 14 | Over 16 | Over 18 | Over 20 | Over 22 | Over 26 | Over 30 | Basic Allowance for Quarters Without Dependent | One Dependent | Two Dependent | Three or Dependents |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Cumulative Years of Service 1/ | | | | | | | | | | | | | | | | | | |
| E-7 | 206.39 | 222.30 | | 230.10 | 237.90 | 253.50 | 261.30 | 273.00 | 280.80 | 288.60 | 304.20 | | 319.80 | 335.40 | | 51.30 | 77.10 | 77.10 | 96.90 |
| E-6 | 175.81 | 187.20 | | 195.00 | 214.50 | 222.30 | 234.00 | 241.80 | 249.60 | 257.40 | 273.00 | | 288.60 | | | 51.30 | 77.10 | 77.10 | 96.90 |
| E-5 | 145.24 | 163.80 | | 183.30 | 191.10 | 202.80 | 210.60 | 218.40 | 226.20 | 234.00 | 241.80 | | 257.50 | | | 51.30 | 77.10 | 77.10 | 96.90 |
| E-4 | 122.30 | 140.40 | | 159.90 | 167.70 | 179.40 | 187.20 | 195.00 | 202.80 | 210.60 | 218.40 | | | | | 51.30 | 77.10 | 77.10 | 96.90 |
| E-3 | 99.37 | 117.00 | | 132.60 | 140.40 | 148.20 | 156.00 | 159.90 | 163.80 | | | | | | | 51.30 | 51.30 | 77.10 | 96.90 |
| E-2 | 85.80 | 101.40 | | 109.20 | 117.00 | 124.80 | 132.60 | | | | | | | | | 51.30 | 51.30 | 77.10 | 96.90 |
| E-1 +4mos | 83.20 | 98.80 | | 106.60 | | | | | | | | | | | | 51.30 | 51.30 | 77.10 | 96.90 |
| E-1 -4mos | 78.00 | | | | | | | | | | | | | | | 51.30 | 51.30 | 77.10 | 96.90 |

Notes:

1. If no amount is shown for a pay grade under cumulative years of service, the amount immediately to the left applies.
2. While serving as U.N. member $225.00

Exhibit 14

DEPARTMENT OF THE ARMY
BOARD FOR CORRECTION OF MILITARY RECORDS
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

January 30, 2006

AR20050009008, Levy, Mathew

Mr. Mathew Levy
8084 Kennedy Road
Backlick OH 43004-8726

Dear Mr. Levy:

I regret to inform you that the Army Board for Correction of Military Records denied your application.

The Board considered your application under procedures established by the Secretary of the Army. I enclose a copy of the Board's Record of Proceedings. This decision explains the Board's reasons for denying your application.

This decision in your case is final. You may request reconsideration of this decision within one year only if you can present new evidence or argument that was not considered by the Board when it denied your original application.

Sincerely,

Carl W. S. Chun
Director, Army Board for Correction
of Military Records

Enclosure

DEPARTMENT OF THE ARMY
BOARD FOR CORRECTION OF MILITARY RECORDS
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

SFMR-RBR January 30, 2006

MEMORANDUM FOR US ARMY REVIEW BOARDS AGENCY SUPPORT DIVISION, ST. LOUIS (SFMR-RBR-SL), 9700 PAGE AVENUE, ST. LOUIS, MO 63132-5200

SUBJECT: Army Board for Correction of Military Records Record of Proceedings for Levy, Mathew, SSN 051280933, AR20050009008

The application submitted by the individual concerned has been denied by the Army Board for Correction of Military Records.

Signed

Carl W. S. Chun
Director, Army Board for Correction
of Military Records

Encl

CF:
( )OMPF
(√)

DEPARTMENT OF THE ARMY
BOARD FOR CORRECTION OF MILITARY RECORDS
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

# RECORD OF PROCEEDINGS

IN THE CASE OF: LEVY, MATHEW

BOARD DATE: 26 January 2006
DOCKET NUMBER: AR20050009008

I certify that hereinafter is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in the case of the above-named individual.

| | |
|---|---|
| Mr. Carl W. S. Chun | Director |
| Mrs. Nancy L. Amos | Analyst |

The following members, a quorum, were present:

| | |
|---|---|
| Mr. John T. Meixell | Chairperson |
| Mr. Jeffrey C. Redmann | Member |
| Ms. Rose M. Lys | Member |

The Board considered the following evidence:

Exhibit A - Application for correction of military records.

Exhibit B - Military Personnel Records (including advisory opinion, if any).

THE APPLICANT'S REQUEST, STATEMENT, AND EVIDENCE:

1. The applicant requests reconsideration of the 1959 decision to correct his records. He requests reinstatement and promotion to captain, O-3. The 1959 Army Board for Correction of Military Records (ABCMR) decision is not available and this case will be considered de novo.

2. The applicant states that, in response to his Congressman's request for his records, he received a reconstructed service record. It reveals that the reason his request for correction of military records was denied on 7 January 1959 was based on a record-keeping error. First, the file states the General was his rating officer. The note in the file states that he "was apparently accountable directly to the General." The General was never his rating officer. More importantly, the file indicates he was on active duty for a full year during which time (says the file) his rating and endorsing officer purportedly found he "had not demonstrated potential for promotion."

3. The applicant states he was not on active duty for that year. He was only activated for a two-week period in 1957 and again in 1958. The documents he now provides proves it. Obviously, the negative evaluation referred to in the file was of a different officer. He was denied promotion and retention based upon a record-keeping error. The ABCMR relied on erroneous records, records relating to someone else. Clearly, he would have been promoted as the two proper ratings found "he was considered fully qualified for promotion," in addition to which he received laudatory evaluations.

4. The applicant listed the date of discovery of the alleged error or injustice as 30 October 2002.

5. The applicant provides nine attachments:

A. A memorandum for the Executive Secretary, ABCMR, dated 2 January 1959.

B. U. S. Army Military District, New York Letter Orders U. S. Army Reserve (USAR) 2415, dated 19 July 1957.

C. His 1957 Army Form W-2 (Withholding Tax Statement).

D. His 1957 Form 1040 (U. S. Individual Income Tax Return – 1957).

E. A 1956 – 1957 faculty listing for the Fashion Institute of Technology.

F. A 15 April 1960 letter from the Social Security Administration.

G. A 10 January 1957 letter, subject: Mobilization Designation Assignment.

H. A 28 August 1957 letter from the Chief, Procurement Services Branch.

I. A July 1957 report, subject: Evaluation and review of procedures on maintenance of GMS and internal control records under current Army Regulations.

COUNSEL'S REQUEST, STATEMENT AND EVIDENCE:

1. Counsel requests the applicant's records be corrected and he be given the promotion to captain for which he was found to be fully qualified.

2. Counsel states the "Selection Board's" (apparently meaning the ABCMR's) records erroneously indicated the applicant was called to active duty for the entire year. Apparently, a different officer was in fact called up for the two six-month periods and that officer earned a poor performance review, as a result of which that officer was deemed unqualified for promotion. Attributing that poor performance to the applicant, the applicant was denied promotion and given an honorable discharge. The applicant sought correction of his file; however, a fire destroyed most of the records in St. Louis. The attachments with this current application had to be gathered from other sources and from closed offices. These documents verify the applicant was on active duty for only two weeks in each year and therefore the adverse evaluations attributed to him were clearly not of the applicant.

CONSIDERATION OF EVIDENCE:

1. The applicant is requesting correction of an alleged error or injustice which occurred around January 1959, the date of the original ABCMR action. The application submitted in this case is dated 8 June 2005.

2. Title 10, U.S. Code, Section 1552(b), provides that applications for correction of military records must be filed within 3 years after discovery of the alleged error or injustice. This provision of law allows the Army Board for Correction of Military Records (ABCMR) to excuse failure to file within the 3-year statute of limitations if the ABCMR determines that it would be in the interest of justice to do so. In this case, the ABCMR will conduct a review of the merits of the case to determine if it would be in the interest of justice to excuse the applicant's failure to timely file.

3. The applicant's military records are not available to the Board for review. A fire destroyed approximately 18 million service members' records at the National Personnel Records Center in 1973. It is believed that the applicant's records were lost or destroyed in that fire. However, there were sufficient documents remaining in a reconstructed record for the Board to conduct a fair and impartial review of this case.

4. After having had prior enlisted service, the applicant was appointed a second lieutenant in the Officer Reserve Corps on 1 October 1949. He was promoted to first lieutenant on 29 June 1953.

5. U. S. Army Military District, New York Letter Orders U. S. Army Reserve (USAR) 2415, dated 19 July 1957, ordered the applicant to annual unit training for the period 7 through 28 July 1957.

6. The applicant was twice nonselected for promotion to captain and as a result was discharged on 18 September 1958.

7. The applicant applied to the ABCMR for reinstatement in the USAR around 1958. The applicant provided the examiner's memorandum for the Executive Secretary of the ABCMR, dated 2 January 1959. The decision document is not available but presumably the applicant's request was denied. The 2 January 1959 memorandum stated in part, "His efficiency reports indicate that he was considered fully qualified for promotion by his rating officer on 16 September 1957. However, he was on active duty for training for 2 consecutive 6-month periods beginning 1 Jan 57 through 31 Dec 57, and his rating officer on 21 January 1958 felt that he had not demonstrated potential for promotion despite his opportunity to do so. The rating officer who rendered the favorable report on him in Sep 57, again considered appl qualified for promotion on 2 Jul 58, after appl had served on a 2-week tour of active duty for training."

8. The 2 January 1959 memorandum further noted that the reason(s) for the applicant's nonselection for promotion by the selection board was not known as such boards did not prepare proceedings or leave any workup sheet in the files to show the basis for their selection or nonselection of an individual.

9. The applicant provided a 1957 Withholding Tax Statement showing he was paid $277.40 in total wages that year [for military service].

10. Army Regulation 135-155 (Promotion of Commissioned Officers other than General Officers Not on Active Duty), in effect at the time, provided in pertinent part that, when officers of the Army Reserve in grade of first lieutenant, captain, or major were to be considered by a selection board for [nonunit] promotion, the

convening officer would furnish to the selection board the names of such officers to be considered for promotion to the grade concerned. Unless the Department of the Army specifically directed the board to select for promotion a specified number of officers whom the board considered to be the best qualified of those named for consideration, the board would select those officers whom it considered fully qualified for promotion and to report those officers who were deemed not to be fully qualified for promotion.

11. The doctrine of laches is defined by Black's Law Dictionary, sixth edition as the neglect to assert a right or claim which, taken together with lapse of time and other circumstances causing prejudice to the adverse party, operates as a bar in a court of equity.

DISCUSSION AND CONCLUSIONS:

1. The pay rate for a first lieutenant in 1958 is not known; however, informal research revealed the monthly pay rate for a second lieutenant in June 1960 was $222.30. Therefore, the 1957 W-2 form provided by the applicant showing he was paid a total of $277.40 [for military service] for that year is accepted as sufficient evidence to show he was not on active duty for the period 1 January through 31 December 1957.

2. For the above reason, it appears the 2 January 1959 memorandum from the ABCMR examiner incorrectly noted the applicant was on active duty for two consecutive six-month periods beginning 1 January 1957 through 31 December 1957 and that his rating officer on 21 January 1958 felt he had not demonstrated potential for promotion.

3. Nevertheless, the error in the 2 January 1959 memorandum, whether obtained from an error in the applicant's records or a clerical error on the part of the ABCMR's staff, does not negate the fact it is not known why the applicant was not selected for promotion to captain. Promotion boards at the time, as currently, do not leave a written record of why an officer is selected or not selected for promotion. It cannot even be determined at this point in time if the criteria for promotion to captain during the two boards he was considered but not selected was "fully qualified" or "best qualified."

4. The applicant stated that, in response to his Congressman's request for his records, he received a reconstructed service record. It appears this may have occurred on 30 October 2002, the date he "discovered" the alleged error or injustice.

5. However, the applicant had the opportunity to question the "error" in the ABCMR's 2 January 1959 memorandum in 1959. If he had never received the ABCMR memorandum, he should have requested a copy of it from the ABCMR in 1959. He could have discovered the error long before the 1973 fire at the National Personnel Records Center. He should have been able to more easily obtain his 1957 Form W-2 and the other contemporary documents needed for this application in 1959.

6. Had the applicant brought the apparent error to the ABCMR's attention in 1959 or so, it would have been possible to review his records and, if indeed the error was in his records, to correct the records and have a promotion selection board reconsider his records for promotion to captain and reinstatement. However, due to the passage of time, favorable consideration of the applicant's request would be barred by laches if the ABCMR's statute of limitations were waived. The Board concludes that it is not in the interest of justice to waive the statute of limitations.

7. Records show the applicant should have discovered the alleged error or injustice now under consideration around January 1959; therefore, the time for the applicant to file a request for correction of any error or injustice expired around January 1962. The applicant did not file within the 3-year statute of limitations and has not provided a compelling explanation or evidence to show that it would be in the interest of justice to excuse failure to timely file in this case.

BOARD VOTE:

________ ________ ________ GRANT FULL RELIEF

________ ________ ________ GRANT PARTIAL RELIEF

________ ________ ________ GRANT FORMAL HEARING

[signature] [signature] [signature] DENY APPLICATION

BOARD DETERMINATION/RECOMMENDATION:

1. The Board determined that the evidence presented does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined that the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned.

2. As a result, the Board further determined that there is no evidence provided which shows that it would be in the interest of justice to excuse the applicant's

failure to timely file this application within the 3-year statute of limitations prescribed by law. Therefore, there is insufficient basis to waive the statute of limitations for timely filing or for correction of the records of the individual concerned.

CHAIRPERSON

Exhibit 15

Before the Department of the Army
Board for Correction of Military Records

In the Case of Levy, Mathew
Docket No. AR 20050009008

# MOTION FOR RECONSIDERATION OF THE ABCMR'S DECISION OF 26 JANUARY 2006

The Applicant, Mathew Levy (herein sometimes "Lt. Levy" or "Dr. Levy"), respectfully requests reconsideration of the Army Board for the Correction of Military Records ("the ABCMR" or "the Board") decision of 26 January 2006 in the subject case based, in substantial part, on evidence apparently not considered by the ABCMR. The Board's decision makes it evident that the Board was either unaware of or overlooked the correspondence from and to Senator Jacob K. Javits in February 1959 with respect to Lieutenant Levy's non-selection for promotion to Captain. In paragraph 5 of DISCUSSIONS and CONCLUSIONS in its decision, the Board faults Lt. Levy for not having called to the Board's attention its error in not selecting him for promotion and for not having obtained from the Board a copy of its 2 January 1959 memorandum (Exh. 3), that disclosed the error of mistaken identity in the selection board's records and deliberations. The Board, however, failed to mention that the matter of Lieutenant Levy's nonselection for promotion was expressly called to the Army's attention by Senator Javits in February 1959, who asked the Army for a complete report. (Exh. 1) Nor did the Board mention in its decision that the Army did not, in its report to Senator Javits, furnish a copy of the ABCMR's memo or that the Army, in its reply to the Senator, said that the reasons for nonselection could not be divulged. See Army letter of 27 February 1959 to Senator Javits (Exh. 2).

In its decision of 26 January 2006 on Mathew Levy's application, the ABCMR correctly points out, on page 3, that the applicable statute, 10 U.S. Code Section 1552 (b), provides that:

> Applications for correction of military records must be filed within 3 years after discovery of the alleged error or injustice.

The decision goes on to say that:

> This provision of law allows the Army Board for Correction of Military Records (ABCMR) to excuse failure to file within the 3-year statute of limitations if the ABCMR determines that it would be in the interest of justice to do so. In this case, the ABCMR will conduct a review of the merits of the case to determine if it would be in the interest of justice to excuse the applicant's failure to timely file.

The Board assumes that Dr. Levy failed to file his application within 3 years of discovering the error in the selection board's decision. However, Dr. Levy did file his application within the 3-year period of discovering the error. And he could not have reasonably discovered the error earlier than he did.

The Board, in paragraph 5 of DISCUSSIONS AND CONCLUSIONS, said:

> 5. However, the applicant had the opportunity to question the "error" in the ABCMR's 2 January 1959 memorandum in 1959. If he had never received the ABCMR memorandum, he should have requested a copy of it from theABCMR in 1959. He could have discovered the error long before the 1973 fire at the National Personnel Records Center.

And the Board then concludes, in paragraph 7:

> 7. Records show the applicant should have discovered the alleged error or injustice now under consideration around January 1959; therefore, the time for the applicant to file a request for correction of any error or injustice expired around January 1962. The applicant did not file within the 3-year statute of limitations and has not provided a compelling explanation or evidence to show that it would be in the interest of justice to excuse failure to timely

file in this case.

Lieutenant Levy was never furnished a copy of the ABCMR's memorandum of 2 January 1959 (Exh. 3) until 30 October 2002, when he received his "reconstructed service record" in response to his Congressman's request. See ABCMR Decision AR20050009008, 26 January 2006, DISCUSSION AND CONCLUSIONS, para. 4. Nor was he ever notified that he could obtain a copy of the ABCMR's 2 January 1959 memorandum. Of course, he had no idea that there was a basic error of mistaken identity in that memorandum.

Dr. Levy and his counsel have searched diligently but have not found a regulation of the ABCMR or a similar publication that notifies persons in Lieutenant Levy's position that a copy of the ABCMR's memorandum will be made available to the reservist upon request. Counsel respectfully requests that the ABCMR identify for Dr. Levy where such notice is published. Moreover, the Army's letter of 27 February 1959 to Senator Javits (Exh. 2) appears to say that ABCMR memos regarding promotion selection or non-selection information are not made publicly available. See the discussion below.

In the absence of publication of such notice, Dr. Levy respectfully requests that the ABCMR withdraw paragraphs 5 and 7 of its DISCUSSION AND CONCLUSIONS and revise its decision accordingly.

Lieutenant Levy in fact did bring the matter of his erroneous nonselection to the attention of the ABCMR in 1959, the time when the Board, in paragraphs 5 and 7 of its Discussion and Conclusions, said he should have done so. He brought the matter of his erroneous nonselection to the Board's attention by obtaining the assistance of Hon. Jacob K. Javits in doing so. Senator Javits wrote to the Board in February 1959, requesting a complete report relative to Lieutenant

Levy's non-selection. In response, the Acting Adjutant General sent the enclosed reply of 27 February 1959 (Exh. 2). Interestingly, the Army's reply to Senator Javits did not include a copy of the ABCMR memorandum of 2 January 1959 (Exh. 3), which had been issued only the month before. Indeed, the Army's 27 February 1959 letter (Exh. 2) seems to say that the ABCMR 2 January 1959 memo and similar reports are not available to reservists like Lieutenant Levy or even to United States Senators:

> ...The specific reasons for the decision of a selection board in any individual case are not known outside the board inasmuch as the board is not permitted to divulge such information. (Emphasis supplied).

And the Army's cover memo from the Executive Secretary of the ABCMR (of Jan 13, 1959) (Exh. 4) specified what the applicant (Lt. Levy) was to be told, i.e., that "insufficient evidence had been presented to indicate probable material error or injustice" and that the application had been denied. The Executive Secretary also specified that the "notice to the applicant [of the denial] will be in the form prescribed by the [ABCMR's} memo [of] 10 August 1955". Thus, not only did the ABCMR not inform the Adjutant General that the ABCMR memo of 2 January 1959 could be furnished to Mr. Levy, it prescribed both the contents and the form of the notice of the denial.

REQUEST FOR RELIEF

In light of the February 1959 correspondence from and to Senator Javits relative to Lt. Levy's nonselection for promotion to Captain, especially the Army's failure to release the ABCMR's memo of 2 January 1959 (Exh. 3), information which the ABCMR apparently did not consider in issuing its decision, we respectfully request that the Board reconsider its decision of 26 January

2006.

And, in the absence of a published regulation or similar notice to reservists of the ACBMR memo of 2 January 1959, the Board should find that Dr. Levy timely filed his application for correction of his military records within 3 years of the date he learned of the error.

Moreover, even if there were a regulation or other source of notice to Lt. Levy of the availability of the ABCMR memo, the Army's failure to furnish a copy to Senator Javits in response to the Senator's request for a complete report as to the Army's decision not to select Lieutenant Levy for promotion to captain, along with the Army's 27 February 1959 letter (Exh. 2) stating that information regarding selection and nonselection was not publicly available, misled both Lt. Levy and Senator Javits into believing that no such information was available. For this reason, also, the Board should find that Dr. Levy's application was timely filed.

Finally, the Board states in paragraph 3 of its DISCUSSION AND CONCLUSION:

> 3. Nevertheless, the error in the 2 January 1959 memorandum, whether obtained from an error in the applicant's records or a clerical error on the part of the ABCMR's staff, does not negate the fact it is not known why the applicant was not selected for promotion to captain. Promotion boards at the time, as currently, do not leave a written record of why an officer is selected or not selected for promotion. It cannot even be determined at this point in time if the criteria for promotion to captain during the two boards he was considered but not selected was "fully qualified" or "best qualified".

First, the reasons for nonselection for promotion by the selection board are obvious. The writeup of the Examiner in the 2 January 1959 memo to the Executive Secretary of the ABCMR, after stating the Lt. Levy was passed over for promotion twice, then discussed his qualifications for promotion that resulted in his being passed over. The writeup emphasized that Lt. Levy was

found by his rating officer for each of his two (nonexistent) 6 month periods of active duty for training "to not [have] demonstrated the potential for promotion." The clear implication from this memo is that Lt. Levy was passed over for promotion because of the poor ratings given him by his "rating officer". Moreover, since the Army and its selection officers made the mistake in identity, if there had been any doubt, the benefit of the doubt would have to have been given to Lt. Levy.

As to what the criteria for promotion to captain during the two boards were at the time, i.e., "fully qualified" or "best qualified", this information is singularly within the exclusive knowledge of the Army, who has the responsibility for it. In the absence of the Army demonstrating that "best qualified" was the standard at the time, the Board should find that Lt. Levy, who was fully qualified for promotion[1], would have been promoted to captain.

In that connection, the undersigned was on the faculty of the Army Judge Advocate General's School (in Charlottesville, VA) from 1959 to 1962. Besides teaching duties, I also was assigned to the Reserve Affairs Division. In that capacity, I used to see the promotion lists. In addition, I was a first lieutenant then and, since I thought I would be up for promotion to captain during my 3-year tour, I regularly monitored the promotion lists. In fact, I was promoted to Captain, USAR, in 1962 and I remember that all those first lieutenants deemed to be fully qualified made the promotion list in 1962 and for the several years before, from 1959 to 1962. See Affidavit of Gilbert J. Ginsburg (Exh. 5).

Moreover, even if the standard for promotion to captain at the time had been best

---

[1]Lieutenant Levy was expressly found fully qualified for promotion by his rating officer in September 1957 and again in July 1958 (Exh. 3). Indeed, his performance as a reserve officer was exemplary.

qualified (which it was not), Lt. Levy would still have been promoted. There was a laudatory letter in his file from the chief of his unit. Thus, the chief of the Procurement Services Branch of the New York Chemical Procurement District, U.S. Army, wrote, on 28 August 1957, to Lt. Levy: "[Y]our analysis of operational responsibilities concerning our Branch is one of the finest I have had the privilege to read." Therefore, based on his record, Lt. Levy would have been promoted to captain even if the promotion standard had been "best qualified", which it was not.

For the foregoing reasons, the military records of Mathew Levy should be corrected to show him promoted to the rank of captain in 1958.

Respectfully submitted,

Gilbert J. Ginsburg
Counsel for Mathew Levy
Attorney & Counselor at Law
1250 24th Street NW
Suite 350
Washington, DC 20037
(202) 776-7772

# EXHIBIT 1

JACOB K. JAVITS
NEW YORK

United States Senate
WASHINGTON, D. C.

February 5, 1959

Mr. Mathew Levy
2757 Claflin Ave.
Bronx 68, NY

Dear Mr. Levy:

This will acknowledge your letter of recent date concerning your problem.

Your request will have my immediate attention as I am looking into this matter for you and have asked for a report. I hope in this way I can be of some help to you and appreciate your giving me this opportunity to do what I can.

You may be assured when the report is received I will be in touch with you again.

Sincerely,

Jacob K. Javits U.S.S.

JKJ:McF

# EXHIBIT 2

AGPR-AP 201 Levy, Mathew
0 981 133 (12 Feb 59)

27 FEB 1959

Honorable Jacob K. Javits
United States Senate

Dear Senator Javits:

The Chief, Legislative Liaison, has asked me to reply to your recent inquiry in behalf of First Lieutenant Mathew Levy.

Public Law 773, 83d Congress, as amended, provides that a nonunit Reserve officer who fails to be selected upon the first consideration for promotion will again be considered by an appropriate selection board. An officer who is considered for promotion a second time and who fails of selection will not thereafter be considered. Within 90 days (120 days if on active duty) after the second selection board reports its findings, the officer will be discharged or transferred to the Retired Reserve.

The selection board does not limit its scope to any specific items, but has at its disposal the officer's entire military record. The specific reasons for the decision of a selection board in any individual case are not known outside the board inasmuch as the board is not permitted to divulge such information. However, selection for promotion is the responsibility of a board of senior officers especially chosen for this duty. The actions of the board are based on impartial and proper consideration of the officer's qualifications.

Lieutenant Levy was considered a second time for promotion to captain, USAR, by a Reserve Selection Board which convened under the authority of the Commanding General, First United States Army, and was not selected. Therefore, it was mandatory that he be discharged from the Army Reserve.

I appreciate your interest in this matter and I am sorry that I cannot give you a more favorable reply.

Sincerely yours,

BRUCE EASLEY

BRUCE EASLEY
Major General, USA
Acting The Adjutant General

Inclosure

# EXHIBIT 3

MEMORANDUM FOR: Executive Secretary, ABCMR

2 January 1959

NAME: LEVY, MATHEW ASN: 0 981 133 RANK: 1st Lt HON DISCH: 18 Sep 58

APPLICANT REQUESTS: That, in effect, he be reinstated in the Res and promoted to the grade of Capt. He claims that a true and accurate account of his military efficiency is not reflected in his records. In support of his application he submits letters of commendation and character references.

MATERIAL EVIDENCE OF RECORD: DOB: 23 Nov 26. Enlisted service: 18 Nov 44 - 4 Nov 46. Appointed 2d Lt, ORC, 1 Oct 49. Promoted to 1st Lt 29 Jun 53. He was passed over for Res promotion in 1957 and 1958, and was honorably discharged on 18 Sep 58 as a result thereof.

His efficiency reports indicate that he was considered fully qualified for promotio by his rating officer on 16 Sep 57. However, he was on active duty for training fo 2 consecutive 6-months periods beginning 1 Jan 57 through 31 Dec 57, and his rating officer on 21 Jan 58 felt that he had not demonstrated potential for promotion despite his opportunity to do so. The rating officer who rendered the favorable report on him in Sep 57, again considered appl qualified for promotion on 21 Jul 58 after appl had served on a 2-week tour of active duty for training.

The law requires that an officer be discharged from the Res if he fails to be selec for promotion to the next higher grade by a Selection Board, after having twice bee considered by a Selection Board.

RECOMMENDATION: There is nothing in appl's records to indicate that he has not bee properly rated. The reason or reasons for his pass over for promotion by the Sele Boards is not known, as such Boards do not prepare proceedings, or leave any worku sheet in the files to show the basis for their selection or non-selection of an individual. Under the circumstances there appears to be no basis for a formal hearing, and a denial of appl's application is accordingly recommended.

[signature]

Examiner

# EXHIBIT 4

DEPARTMENT OF THE ARMY
OFFICE OF THE UNDER SECRETARY
WASHINGTON, D. C.

In Reply Refer To:

JAN 13 1959

AG 201 - LEVY, MATHEW
0 981 133

MEMORANDUM FOR THE ADJUTANT GENERAL:

It is requested that the applicant and counsel, if any, be notified that following examination and consideration of the application and records, the Army Board for Correction of Military Records on JAN 7 1959 determined that insufficient evidence has been presented to indicate probable material error or injustice, and the application is denied.

The notice to the applicant will be in the form prescribed by the memorandum from Executive Secretary, Army Board for Correction of Military Records to The Adjutant General, subject, Notice of Denial of Application for Correction of Military Records, dated 10 August 1955.

Inclosures:

DD Form 149
AG 201 File
Service Record
Eff File

Raymond J. Williams
Executive Secretary
Army Board for Correction
of Military Records

# EXHIBIT 5

# Affidavit of Gilbert J. Ginsburg

I, Gilbert J. Ginsburg, being over the age of 18, do solemnly swear as follows:

1. I am an attorney in practice in Washington, D.C.

2. I am the attorney for Dr. Mathew Levy.

3. From September 13, 1959 to September 12, 1962, I was in the Army Reserve on active duty.

4. After basic infantry officer's training, I was assigned to the Army Judge Advocate General ("JAG") School in Charlottesville, VA as an instructor and staff member. A part of my assignment was with the Reserve Affairs Division. In that capacity, I used to see the promotion lists for, among other things, captain in the Army Reserve.

5. My entry into the Army was as a First Lieutenant JAGC-USAR. Since I thought I would be up for Captain during my three year tour at the JAG School, I paid particular attention to the promotion lists. In fact, in 1962 I was promoted to Captain JAGC-USAR.

6. During my three-year tour at the JAG School from 1959 to 1962, I remember that <u>all</u> those first lieutenants who were deemed fully qualified for promotion, made the promotion list for captain.

[signature]
Gilbert J. Ginsburg

Sworn to and subscribed before me the 24th [August], 2006.

Commonwealth of Virginia Notary Public

[signature]
Notary Public
My Commission Expires January 31, 2009

My Commission Expires January 31, 2009
My Commission Expires

Exhibit 16

DEPARTMENT OF THE ARMY
BOARD FOR CORRECTION OF MILITARY RECORDS
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

November 28, 2006

Case Management Division/wa
LEVY, MATTHEW
AR20060000 14462

Mr. Joel D. Davis
Gilbert J. Ginsburg
Attorney and Counselor at Law
1250 24th Street, N.W. Suite 350
Washington, DC 20037

Mr. Davis:

This is in response to your August 29, 2006 letter submitted on behalf of Mr. Matthew Levy requesting reconsideration of a previous Army Board For Correction of Military Records (ABCMR) decision. The original case was considered by the ABCMR in 1959 and reconsidered (case AR20050009008) on 26 January 2006.

Army Regulation 15-185 sets forth procedures for processing requests for correction of military records. Paragraph 2-15b governs requests for reconsideration. This provision of the regulation allows an applicant to request reconsideration of an earlier ABCMR decision if the request is received within one year of the ABCMR's original decision and it has not previously been reconsidered.

The staff of the ABCMR reviewed your request for reconsideration and determined that your request for reconsideration was not received within one year of the ABCMR's original decision and has been previously reconsidered. As a result, your request for reconsideration does not meet the criteria outlined above, and we are returning your request without further action.

The ABCMR will not consider any further requests for reconsideration of this matter. However, you have the option to seek relief in a court of appropriate jurisdiction.

Sincerely,

Walter Avery
Chief, Case Management Division

Exhibit 17

National Personnel Records Center

9700 Page Avenue St. Louis, Missouri 63132-5100

JAN 0 4 1999

Honorable John R. Kasich
Attn: Mark Bell
2700 East Dublin-Granville Road, Suite 525
Columbus, OH 43231

**Veteran's name: Levy, Mathew**

**Service number/SSN: 0 981-133 and 12 236 330**

**Constituent's name: Same**

Dear Mr. Kasich:

The record needed to answer your inquiry is not in our files. If the record were here on July 12, 1973, it would have been in the area that suffered the most damage in the fire on that date and may have been destroyed. The fire destroyed the major portion of records of Army military personnel for the period 1912 through 1959, and records of Air Force personnel with surnames Hubbard through Z for the period 1947 through 1963. Fortunately, there are alternate records sources that often contain information which can be used to reconstruct some service record data lost in the fire. However, a complete service record cannot be reconstructed.

Enclosed are copies of all available personnel documents in Mr. Levy's reconstructed service record. They were obtained from an alternate records source.

We regret that our response could not be more positive; however, we hope this information will be helpful to your constituent.

Sincerely,

for Bettie Stafford
DAVID L. PETREE
Director

Enclosures