**BEFORE THE**
**UNITED STATES COURT OF FEDERAL CLAIMS**
**WASHINGTON, D.C.**

| | | |
|---|---|---|
| MATHEW LEVY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:07-cv-829 |

## THIRD AMENDED COMPLAINT

COMES NOW Plaintiff Mathew Levy, by and through counsel, and for his Third Amended Complaint does state:

### Parties

1. Plaintiff is a resident of Blacklick, Ohio.

2. Defendant is the United States of America, acting through the United States Department of the Army and the Army Board for Correction of Military Records.

### Jurisdictional Statement

3. This Court has jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491, and 10 U.S.C. §§ 12731, 14509 and 14515 for monetary and other relief arising from the Army's premature and unlawful termination of Plaintiff's military career.

4. Plaintiff was unlawfully removed from the rank, First Lieutenant, to which he had been duly appointed in 1953 when he was separated from the Army in 1958 based upon two failures of selection for promotion to Captain under circumstances where, as the Army now admits, false and erroneous adverse information was contained in

Plaintiff's service record that was reviewed by the two selection boards and resulted in the non-selections. One of the items of adverse information (handwritten notes) was not allowed to be in his service record; its inclusion was a violation of Army Regulation 640-98 (14 November 1955), Exhibit 1, paragraph 6, Anonymous Communications, which provided as following:

> 6. Anonymous communications. No anonymous communication will be made part of an individual's record. 1

5. AR 640-98 (14 Nov 1955) also placed an affirmative duty on the Army to notify a service member of any adverse information contained in the member's service record and to afford that individual an opportunity to reply to it. Id. para 4. Paragraph 4 of AR 640-98 stated, in pertinent part, as follows:

> 4. Adverse matter. No adverse matter (except that cited in par 5) will be made a part of an individual's record without his knowledge and an opportunity being afforded him either to make a written statement in reply to the adverse information, communication, or report, or to decline, in writing, to makes such a statement... The interpretation as to what constitutes adverse matter will be liberally interpreted in favor of an individual.

So, the army violated its own regulation with respect to the establishment of Plaintiff's service record, by its failure to notify Plaintiff of the erroneous adverse information in that service record, and by its failing to afford Plaintiff an opportunity to reply to it.

6. Because the two non-selections were the proximate result of the inclusion of false and erroneous adverse information in Plaintiff's service record in violation of applicable Army Regulations, the two non-selections were unlawful, did not provide a competent and substantial basis for Plaintiff's compelled separation, and as a result,

---

1 For convenience of the Court and the parties, the 1955 version of AR 640-98 has been included as an exhibit to this Third Amended Complaint. AR 640-98 stated as its "Purpose" to "preclude...from being held in an individual's record...[u]nsupported or unacted upon adverse matter...." Id., para.1.

Plaintiff was never lawfully separated from the Army and therefore maintained his status as a commissioned officer.

7. 10 U.S.C. § 14509 provides that a reserve Army officer below the grade of brigadier general shall be separated in accordance with 10 U.S.C. § 14515 upon reaching the age of 62. 10 U.S.C. § 14515 provides that a reserve officer who reaches the maximum age limit shall be transferred to the Retired Reserve. 10 U.S.C. § 12731 provides that a member of the Retired Reserve is entitled to military retirement. Finally, 10 U.S.C. § 12740 provides that only persons who are convicted of an offense under the Uniform Code of Military Justice that involves a death sentence, or persons who receive a punitive discharge or dismissal are ineligible for military retirement under 10 U.S.C. § 12732.

8. Because Plaintiff is not an ineligible person under 10 U.S.C. § 12740, Plaintiff has an action for money damages arising under 10 U.S.C. §§ 12731, 14509 and 14515 in the amount of his accrued reserve military retirement benefits since his 62nd birthday, November 23, 1988.

9. The Army failed to ever provide Plaintiff with copies of the adverse information contained in (a) the erroneous Officer Efficiency Report ("OER"), and (b) the executive memorandum to the Army Board for Correction of Military Records ("ABCMR") that referenced the false and erroneous information and which recommended denial of Plaintiff's ABCMR appeal.

10. Because the Army failed to provide Plaintiff with copies of the adverse OER and the ABCMR executive memorandum, the Army breached its duty to Plaintiff under AR 640-98 and such breach amounted to the affirmative concealment of material and

relevant facts.

11. Because of the affirmative concealment, there was no effective way for Plaintiff to have learned of the existence of the false and erroneous adverse information at the time Plaintiff filed his original appeal to the ABCMR or at any time thereafter.

12. The Army's affirmative concealment of material and relevant facts equitably tolled all applicable statutes of limitation for Plaintiff to bring an action concerning the inclusion of this false and erroneous adverse information until such time as Plaintiff was made aware of the existence of such material and informed by the Army of its significance.

13. Plaintiff's subsequent appeal and request for reconsideration filed with the ABCMR and this present action were all timely filed within all applicable statutes of limitation.

**Venue**

14. Venue is proper in the U.S. Court of Federal Claims under 28 U.S.C. § 1346.

**Statement of Facts**

15. This is a case involving mistaken identity by the Army which led to the improper and premature termination of Plaintiff's military career.

16. Plaintiff was born on November 23, 1926.

17. On November 18, 1944, Plaintiff joined the U.S. Army Reserve. From February 4, 1945 through November 4, 1946, Plaintiff served on active duty as an enlisted member in the U.S. Army, serving at various Army installations, including Ft. Lewis, Ft. Lawton, and Camp Shanks. He also served overseas in the China-Burma-India area of operations.

18. On October 1, 1949, Plaintiff was commissioned as a Second Lieutenant in the U.S. Army Officer Reserve Corps ("ORC"). He served a tour of duty at the Edgewood Arsenal Chemical School. On June 29, 1953, Plaintiff was promoted to First Lieutenant.

19. Plaintiff was appointed adjutant of his reserve unit and, for over five years he was also a member of the Board of Officers for ORC Appointments for the New York Military District. Exhibits 2 and 3.

20. On August 25, 1955, Plaintiff was awarded the Armed Forces Reserve Medal commemorating ten qualified years of service in the Army Reserve Corps. The Armed Services Reserve Medal description defines a qualified year of reserve service as a year in which the recipient earned at least 50 retirement points. Exhibit 4 at page 2, paragraph 1b. Thus, as of August 25, 1955, Plaintiff had ten qualifying years of service. Because of his erroneous discharge from the ORC (see para. 28), Plaintiff was unable to complete his twenty years of qualifying service in order to be eligible for retirement.

21. But for the Army's erroneous discharge of Plaintiff, Plaintiff would have accrued at least another ten years of qualifying service in the over 30 years remaining until Plaintiff would have retired from the ORC in November 1988.

22. Between July 14 and 28, 1957, Plaintiff was on active duty for training at the New York Procurement District in New York, New York. Exhibit 5. In September 1957, Plaintiff's rating officer found Plaintiff to be fully qualified for promotion. (See para. 31).

23. In a letter dated August 28, 1957, Plaintiff's supervisory officer, 1LT Thomas Murphy, discussed a report Plaintiff had prepared while on active duty for training. In the letter, 1LT Murphy described the report as "one of the finest I have had the privilege

to read." A copy of the August 28, 1957 letter is attached hereto and incorporated herein as Exhibit 6.

24. Plaintiff was not on active duty at any other time during 1957.

25. Plaintiff was on active duty for training from June 29, 1958 to July 13, 1958. Exhibit 7.

26. A selection board for Captain considered Plaintiff for promotion in 1957 and 1958, but did not select him to be promoted to Captain at either time. The selection board did not give any reason for its failure to select him for promotion.

27. The Army regulations in effect in 1957 and 1958, AR 135-155, required that an officer be discharged from the Officer Reserve Corps if he was passed over twice by a selection board.

28. On September 18, 1958, Plaintiff received an honorable discharge from the Army ORC.

29. In late 1958, Plaintiff applied to the ABCMR for reinstatement into the Army ORC.

30. In an internal memorandum dated January 2, 1959 to the ABCMR Executive Secretary, an ABCMR examiner recommended that Plaintiff's application be denied. A copy of the January 2, 1959 memorandum is attached hereto and incorporated herein as Exhibit 8.

31. In the January 2, 1959 memorandum, the ABCMR stated:

> His efficiency reports indicate that he was considered fully qualified for promotion by his rating officer on 16 Sep 57. However, he was on active duty for training for two consecutive 6-months [sic] periods beginning 1 Jan 57 through 31 Dec 57, and his rating officer on 21 Jan 58 felt that he had not demonstrated potential for promotion despite his opportunity to do so. The rating officer who rendered the favorable report on him in Sep

57, again considered appl qualified for promotion on 21 July 58, after appl had served on a 2-week tour of active duty for training.

32. This information was false and erroneous because Plaintiff was not on active duty continuously from January 1 to December 31, 1957. If Plaintiff had been on active duty, he could not have been on Active Duty for Training ("ACDUTRA") in July 1957 as reflected in Exhibit 5.

33. At no time was Plaintiff ever provided by the Army with a copy of any OER showing he was on active duty from January 1 to December 31, 1957 or with a copy of the handwritten notes or with a copy of the erroneous internal ABCMR January 2, 1959 memorandum, and Plaintiff was unaware of the existence of such documents.

34. Plaintiff was completely unaware of the fact that Plaintiff was a victim of mistaken identity or that there was a document - the January 2, 1959 internal ABCMR memorandum - which reflected that mistaken identity and that the promotion board had relied on that erroneous information which resulted from the case of mistaken identity.

35. In a memorandum dated January 13, 1959, the ABCMR requested the Adjutant General to notify Plaintiff that after examining and reviewing Plaintiff's application and records, the ABCMR determined on January 7, 1959 that there was insufficient evidence to indicate a probable material error or injustice and his application had been denied. A copy of the January 13, 1959 memorandum is attached hereto and incorporated herein as Exhibit 9.

36. In February 1959, Plaintiff sought the assistance of U.S. Senator Jacob K. Javits to determine the cause of his failure to be promoted. Senator Javits requested the

Army to furnish a report relative to Plaintiff's nonselection for captain. (See Exhibit 18, "Exhibit 1").

37. In a letter dated February 27, 1959, Acting Adjutant General Bruce Easley replied to Senator Javits and stated that Plaintiff had been discharged because he had been passed over for promotion twice. The letter further stated that "[t]he specific reasons for the decision of a selection board in any individual case are not known outside the board inasmuch as the board is not permitted to divulge such information." (See Exhibit 18, "Exhibit 2"). The Army thus informed Senator Javits that the reasons for the failure to promote would not be disclosed, even to a U.S. Senator

38. In 1973, a fire destroyed the National Personnel Records Center in St. Louis, Missouri.

39. In October 1997, Plaintiff's previous attorney contacted Plaintiff's Congressman, Hon. John Kasich, for assistance in obtaining retirement benefits from the Army.

40. On or about January 4, 1999, Congressman Kasich received copies of the few available documents from "alternate records sources" for Plaintiff's reconstructed service record from the National Personnel Records Center. The documents consisted of a letter from the Adjutant General, dated October 31, 1958 (a form rejection letter); a memorandum to the Adjutant General, dated January 13, 1959 from the ABCMR requesting that he send a form letter to Plaintiff informing Plaintiff that the ABCMR denied his request for correction of his military records; the January 2, 1959 memo for the Executive Secretary, ABCMR, discussed in paragraph 31, above; and the anonymous handwritten notes. Exhibit 10.

41. On June 1, 2001, Plaintiff's previous attorney prepared and signed an affidavit attesting to the fact that he had received the letter from the National Personnel Records Center, referred to in paragraph 40, and the four documents enclosed therewith. Mr. Croushure said that the letter from the National Personnel Records Center and the four documents enclosed with it were stapled together when he received them and were still stapled together when he executed the affidavit. Mr. Croushure stated:

> ...These documents were stapled together when I received them, have not been disassembled, and are in the present state that they were in when I received them from Congressman Kasich's office.

Exhibit 11.

42. Plaintiff did not see either the National Personnel Records Center letter or the enclosures contained therein prior to June 2001. Plaintiff was sent Mr. Croushure's affidavit with the enclosures shortly after it was executed, in June 2001. Plaintiff does not have any document indicating the exact date of receipt.

43. On or about December 17, 2001, Plaintiff's previous attorney submitted a request to the ABCMR to reconsider the 1959 decision on the basis of newly discovered evidence, to-wit: the erroneous 1957 OER and the erroneous internal ABCMR memorandum. A copy of Plaintiff's request is attached hereto and incorporated herein as Exhibit 12.

44. In a May 28, 2002 letter, the ABCMR requested additional information from Plaintiff, to which Plaintiff responded in an October 30, 2002 letter. The October 30, 2002 letter was the first time Plaintiff put together the facts and possible significance of

the Government's internal documents. A copy of Plaintiff's October 30, 2002 letter is attached hereto and incorporated herein as Exhibit 13.

45. In his October 30, 2002 letter, Plaintiff clarified for the ABCMR the basis for his request for reconsideration of the ABCMR's January 7, 1959 denial of his application to correct his records and reinstate him.

46. In a letter dated July 7, 2003, the ABCMR denied Plaintiff's October 30, 2002 request. A copy of the July 7, 2003 letter is attached hereto and incorporated herein as Exhibit 14.

47. In its July 7, 2003 letter, the ABCMR stated it would only reconsider ABCMR decisions more than one year after the original decision "if substantial relevant evidence has been submitted that shows fraud, mistake in law, mathematical miscalculation, manifest error, or if there exists substantial relevant new evidence discovered contemporaneously with or within a short time after the ABCMR's original decision."

48. In its July 7, 2003 letter, the ABCMR further stated that Plaintiff's claim could not be considered because it arose more than six years after it accrued and the Army no longer had Plaintiff's pay records.

49. In the July 7, 2003 letter, the ABCMR also failed to even address Plaintiff's contentions that the factual basis for the recommendation in the January 2, 1959 memorandum was clearly erroneous in that Plaintiff did not serve on active duty continuously between January 1 and December 31, 1957.

50. In the July 7, 2003 letter, the ABCMR also stated that if Plaintiff had "copies of the pertinent IRS income statements and/or copies of your Army pay records for the pertinent period, you must provide them with your application."

51. On June 8, 2005, Plaintiff submitted a revised application to the ABCMR that contained copies of Plaintiff's tax records for 1957 as well as a statement from the Social Security Administration listing Plaintiff's wages for 1957 and 1958. A copy of the June 8, 2005 revised application is attached hereto and incorporated herein as Exhibit 15. In the submittal, Plaintiff listed the "date of discovery" as "20021030" (October 30, 2002).

52. According to the Defense Finance Accounting Service, the monthly basic pay for a First Lieutenant with over six (6) years of cumulative military service in 1957 was $335.40. *See http://www.dfas.mil/militarypay/ 2006militarypaytables/militarypaypriorrates/ 1955.pdf*, a copy of which is attached hereto and incorporated herein as Exhibit 16.

53. Had Plaintiff served on active duty from January 1 to December 31, 1957, he would have received at least $4,024.80 in basic pay.

54. The Social Security Administration records in Exhibit 12 (attachment F) show that Plaintiff's wages from the Army in 1957 were $198.90.

55. In a decision dated January 26, 2006, the ABCMR denied Plaintiff's "application for correction of military records". A copy of the January 26, 2006 ABCMR decision is attached hereto and incorporated herein as Exhibit 17.

56. In the January 26, 2006 decision, the ABCMR acknowledged that Plaintiff discovered the alleged error or injustice on 30 October 2002. The Board went on to state however, that Plaintiff "had the opportunity to question the error in the ABCMR's 2 January 1959 memorandum in 1959."

57. Further, the ABCMR stated that if Plaintiff had wanted to obtain a copy of the erroneous January 2, 1959 memorandum (which Plaintiff did not know existed), he should have requested a copy in 1959.

58. Further, the ABCMR stated that because Plaintiff could have discovered the error in 1959 by obtaining a copy of the erroneous January 2, 1959 memorandum, the statute of limitations, 10 U.S.C. § 1552(b), on his claim expired in January 1962.

59. Significantly, in the January 26, 2006 decision, the ABCMR admitted that Plaintiff's pay records were "sufficient evidence to show he was not on active duty for the period of 1 January through 31 December 1957" and that the January 2, 1959 memorandum "incorrectly noted the applicant was on duty for two consecutive six-month periods beginning 1 January 1957 through 31 December 1957 and that his rating officer on 21 January 1958 felt he had not demonstrated potential for promotion."

60. In the January 26, 2006 decision, the ABCMR stated that Plaintiff should have received or requested a copy of the January 2, 1959 internal ABCMR memorandum in 1959, which would have permitted Plaintiff to discover the error before the 1973 fire at the National Personnel Records Center and Plaintiff would then have been better able to provide the ABCMR with contemporary supporting documents.

61. In the January 26, 2006 decision, the ABCMR admitted that if the error had been discovered in 1959, the ABCMR could have reviewed Plaintiff's records and resubmitted Plaintiff to a new Selection Board.

62. In the January 26, 2006 decision, the ABCMR stated it was not in the interests of justice to waive the 3-year statute of limitations, and even if the statute of limitations was waived, Plaintiff's claim would be barred by laches.

63. In the January 26, 2006 decision, the ABCMR issued the following determinations and recommendations:

> 1. The Board determined that the evidence presented does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined that the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned.
>
> 2. As a result, the Board further determined that there is no evidence provided which shows that it would be in the interest of justice to excuse the applicant's failure to timely file this application within the 3-year statute of limitations prescribed by law. Therefore, there is insufficient basis to waive the statute of limitations for timely filing or for correction of the records of the individual concerned.

64. The Board's statements regarding waiving the three-year statute of limitations were erroneous because Plaintiff had timely filed within the three-year statute of limitations, which runs from the time the applicant discovers the Government's "error or injustice" which is the basis for the claim. 10 U.S.C. § 1552(b).

65. The Board went on to say in its January 30, 2006 cover letter to the January 26, 2006 decision that "You may request reconsideration of this decision within one year only if you can present new evidence or argument that was not considered by the Board when it denied your original application."

66. In response to the ABCMR's invitation to request reconsideration based on evidence or argument not considered by the Board in rendering its original decision, on August 29, 2006 Plaintiff submitted a Motion for Reconsideration of the ABCMR's January 26, 2006 decision, pointing out that Plaintiff had in 1959 indeed sought the documents, including the January 2, 1959 erroneous internal ABCMR memorandum. Not only did Plaintiff seek the documents but he enlisted the aid of Senator Javits who

requested a report from the Army; and that the Army refused to furnish any documents to the Senator and stated that the reasons for failing to promote and the supporting documentation would not be disclosed, even to a U.S. Senator. A copy of the Motion for Reconsideration is attached hereto and incorporated herein as Exhibit 18.

67. By letter of November 28, 2006, the ABCMR returned Plaintiff's Motion for Reconsideration stating that his August 29, 2006 request for reconsideration was not submitted within one year of the ABCMR's original decision in January 1959, that his request had already been considered, and therefore did not qualify for reconsideration by the ABCMR. A copy of the November 28, 2006 ABCMR letter is attached hereto and incorporated herein as Exhibit 19. In the November 28th letter, the Board told Plaintiff you have the "option to seek relief in a court of appropriate jurisdiction."

**Count I**

68. Plaintiff restates, realleges and incorporates by reference the allegations in paragraphs 1 through 67.

69. The internal ABCMR memorandum dated January 2, 1959 was prepared after reviewing Plaintiff's OER and personnel file.

70. The January 2, 1959 ABCMR internal memorandum states that there was an OER in Plaintiff's file that indicated Plaintiff was on active duty for two consecutive six-month periods in 1957 and that Plaintiff's senior rating officer stated that Plaintiff was not recommended for promotion.

71. The January 2, 1959 ABCMR memorandum does not reflect any other adverse information either in Plaintiff's OERs or Plaintiff's personnel file.

72. The erroneous 1957 OER and the anonymous and erroneous handwritten notes were the only adverse information contained in Plaintiff's personnel file that was reviewed by the 1958 Captain selection board.

73. Because the erroneous 1957 OER that was purportedly based on 12 months of active duty (significantly longer than the typical two weeks of active duty served by a Reserve Officer) and the anonymous handwritten notes were the only adverse information in Plaintiff's personnel file as noted by the ABCMR internal memorandum, and contained an adverse recommendation that Plaintiff not be promoted to Captain, it is evident that the 1958 Captain selection board gave great weight to the erroneous 1957 OER in determining not to select Plaintiff for promotion.

74. The action of the 1958 Captain selection board was arbitrary and capricious because Plaintiff's personnel file that was reviewed by the selection board improperly included the erroneous 1957 OER, and also the handwritten notes which AR 640-98 prohibited from being there.

**Count II**

75. Plaintiff restates and realleges the allegations set forth in paragraphs 1 through 74 which are incorporated herein by reference.

76. On January 7, 1959, the ABCMR wrongfully denied Plaintiff's appeal.

77. The January 7, 1959 ABCMR decision was arbitrary and capricious because that decision was based upon the erroneous 1957 OER, the erroneous anonymous handwritten notes and the erroneous January 2, 1959 ABCMR internal memorandum.

## Count III

78. Plaintiff restates and realleges the allegations in paragraphs 1 through 77, which are incorporated herein by reference.

79. After learning about the existence of the erroneous January 2, 1959 ABCMR memorandum and the erroneous 1957 OER, Plaintiff applied to the ABCMR for reconsideration of the 1959 decision based on the discovery of this new relevant evidence that appeared to contradict the basis for the original 1959 ABCMR decision.

80. In its July 7, 2003 letter, the ABCMR denied Plaintiff's request for reconsideration but invited Plaintiff to submit copies of relevant pay records for the 1957 time period to show that he was not on active duty for the entire year and to show that the 1957 OER was in error.

81. On June 8, 2005, Plaintiff complied with the ABCMR suggestion and submitted a revised request that included copies of the relevant pay records for 1957 that showed Plaintiff did not serve two consecutive six month periods of active duty, thus refuting the information in the erroneous 1957 OER and the erroneous 1959 internal ABCMR memorandum.

82. In its January 26, 2006 decision, the ABCMR admitted that Plaintiff's pay records show that Plaintiff was not on active duty for two consecutive six-month periods in 1957 and that both the 1957 OER and the January 2, 1959 internal ABCMR memorandum were legally in error.

83. The January 26, 2006 ABCMR decision was arbitrary and capricious because:

(A) Plaintiff could not have reasonably discovered the erroneous 1957 OER, the erroneous anonymous handwritten notes and the erroneous January 2, 1959 internal ABCMR memorandum in 1959 because he was totally unaware that such documents even existed and the Army wrongfully failed to provide Plaintiff with copies of said documents;

(B) Because Plaintiff was totally unaware of the erroneous 1957 OER and the January 2, 1959 internal ABCMR memorandum and the Army wrongfully failed to provide Plaintiff with copies of said documents, Plaintiff could not have filed for reconsideration within the original three-year period. Indeed, Plaintiff filed within the original three-year statute of limitations, since the statute of limitations runs from the time an applicant discovers the Government "error or injustice" which is the basis for his claim. 10 U.S.C. § 1552 (b);

(C) Plaintiff has acted in good faith and without any undue delay throughout these proceedings, and Plaintiff's request to the ABCMR was not barred by the doctrine of laches;

(D) The ABCMR admits that the substantive basis for Plaintiff's claim has legal merit; and

(E) Because of the underlying circumstances of this matter, even if Plaintiff had not timely filed within three years of discovering the erroneous reasons for the refusal to promote, the interests of justice would have excused Plaintiff's failure to timely file for reconsideration of the 1959 ABCMR decision.

**PRAYER**

WHEREFORE, Plaintiff prays that the Court enter judgment in favor of Plaintiff and against Defendant, and reverse and remand this matter to the Army Board for Correction of Military Records with direction:

(a) to grant Plaintiff's request for reconsideration and reverse the January 1959 ABCMR decision;

(b) to expunge all records of Plaintiff's wrongful separation from the Army Officer Reserve Corps and to reinstate Plaintiff's commission as a reserve officer in the Army Reserve Corps;

(c) to initiate action to convene a special selection board to consider Plaintiff for promotion in the ordinary course to Captain, Major, Lieutenant Colonel and Colonel when Plaintiff would have been eligible for such promotions in the absence of his wrongful discharge from the U.S. Army Reserve (Plaintiff was and still is prepared to attend the Command and General Staff College in order to qualify for promotion to full Colonel); and

(d) to recognize Plaintiff's entitlement to retire from the Army ORC with at least twenty (20) qualifying years of service as of November 23, 1988, when Plaintiff became 62 years of age; and Plaintiff further prays that this Court award Plaintiff retirement pay since November 23, 1988 in at least the amount of $273 per month (the retirement pay of a first lieutenant) until the date of judgment, plus interest at the Treasury rate from November 23, 1988.

Plaintiff further prays that this Court adjust the retirement pay awarded to the rank at which Plaintiff would have been promoted as of his retirement ($ 497 per month

for Lieutenant Colonel and $ 568 per month for full Colonel), plus interest at the Treasury rate from November 23, 1988.

Furthermore, Plaintiff prays the Court find that, based in part on the Army's prior admissions, the Army's conduct, being in violation of law and regulation, was not substantially justified. Plaintiff respectfully requests that he be awarded his reasonable attorneys fees and costs under the Equal Access to Justice Act, and that the Court award all such further relief the Court deems just and appropriate.

Respectfully submitted,

s/Gilbert J. Ginsburg
Attorney and Counselor at Law
1250 24th Street NW, Suite 350
Washington, DC 20037
Tel: (202) 776-7772
Fax: (202) 776-7773
E-mail: gilgins@aol.com

Counsel for Mathew Levy

Dated: May 9, 2008

OF COUNSEL:

Timothy Sullivan
Stephen Jeffery
Katherine Gehringer
Thompson Coburn LLP
1909 K. St. NW, Suite 600
Washington, DC 20006