# Exhibit 15

GILBERT J. GINSBURG
ATTORNEY AND COUNSELOR AT LAW
1250 24TH STREET, N.W., SUITE 350
WASHINGTON, D.C. 20037
(202) 776-7772
FAX: (202) 776-7773
E-MAIL: gilgins@aol.com
www.profgilginsburg.com

June 10, 2005

Mr. Karl Schneider
Director
Army Review Board Agency
Support Division, St. Louis
Attn: SFMR -RBR-SL
9700 Page Blvd.
St. Louis, Missouri 63132-5200

Re: Application for Correction of Military Records
1st Lt. Mathew Levy 0 981 133

Dear Mr. Schneider:

My client, Lt. Mathew Levy, has been waiting a long time for correction of his military records, through no fault of his own. The records are obviously erroneous and justice requires that they be corrected.

Lt. Levy was discharged on September 18, 1958 as a result of the errors in his records. Lt. Levy served on active duty for two weeks in 1957 and he again served on active duty for two weeks in 1958. However, the Selection Board's records erroneously indicated that Lt. Levy was called to active duty for the entire year, *i.e.*, for two consecutive six-month periods in 1957. Apparently, a different officer was in fact called up for the two six-month periods and that officer earned a poor performance review, as a result of which he was deemed unqualified for promotion. Attributing that poor performance to Lt. Levy, Lt. Levy was denied promotion and given an honorable discharge.

Lt. Levy sought correction of his file. However, a fire destroyed most of the records in your St. Louis office. The attachments included in this application had to be gathered from other sources and closed offices. The attachments, which include a letter from the U.S. Social Security Administration and Lt. Levy's Federal income tax return, verify that Lt. Levy was on active duty for only two weeks in each year and therefore that the adverse evaluations attributed to him were clearly not of Lt. Levy, who was not on active duty when they were made.

The Selection Board correctly noted that Lt. Levy was found fully qualified for promotion by his correct rating officer. In addition, Lt. Levy received a laudatory letter from his branch chief on the analysis of operational responsibilities he prepared while on his two-week duty. ("Your Analysis [sic] of operational responsibilities concerning our Branch is one of the finest I have had the privilege to read."). It is clear that, but for the erroneous entries in his records of the evaluation of the other officer, his record would have reflected not only an officer fully-qualified for promotion, but also an officer whose performance was exemplary. Instead of being denied promotion, Lt. Levy would have been promoted without question.

Equity and justice require that Lt. Levy's military records be corrected and that Lt. Levy be given the promotion in rank (to Captain) for which he was found to be fully qualified.

Your cooperation in this matter is appreciated. Please contact me if I may be of any assistance to the Board.

Sincerely,

Gilbert J. Ginsburg

GJG:ccl

# APPLICATION FOR CORRECTION OF MILITARY RECORD UNDER THE PROVISIONS OF TITLE 10, U.S. CODE, SECTION 1552

*(Please read instructions on reverse side BEFORE completing this application.)*

*Form Approved OMB No. 0704-0003 Expires May 31, 2006*

The public reporting burden for this collection of information is estimated to average 30 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing the burden, to Department of Defense, Washington Headquarters Services, Directorate for Information Operations and Reports (0704-0003), 1215 Jefferson Davis Highway, Suite 1204, Arlington, VA 22202-4302. Respondents should be aware that notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information if it does not display a currently valid OMB control number.

PLEASE DO NOT RETURN YOUR COMPLETED FORM TO THE ABOVE ADDRESS. RETURN COMPLETED FORM TO THE APPROPRIATE ADDRESS ON THE BACK OF THIS PAGE.

**PRIVACY ACT STATEMENT**

AUTHORITY: Title 10 US Code 1552, EO 9397.

PRINCIPAL PURPOSE: To initiate an application for correction of military record. The form is used by Board members for review of pertinent information in making a determination of relief through correction of a military record.

ROUTINE USE(S): None.

DISCLOSURE: Voluntary; however, failure to provide identifying information may impede processing of this application. The request for Social Security number is strictly to assure proper identification of the individual and appropriate records.

**1. APPLICANT DATA** *(The person whose record you are requesting to be corrected)*

a. BRANCH OF SERVICE *(X one)* [ ] ARMY [ ] NAVY [ ] AIR FORCE [ ] MARINE CORPS [ ] COAST GUARD

b. NAME *(Print - Last, First, Middle Initial)*: Levy, Mathew

c. PRESENT OR LAST PAY GRADE: 0-2

d. SERVICE NUMBER *(If applicable)*: 0 981 133

e. SSN: 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

**2. PRESENT STATUS WITH RESPECT TO THE ARMED SERVICES** *(Active Duty, Reserve, National Guard, Retired, Discharged, Deceased)*: Discharged

**3. TYPE OF DISCHARGE** *(If by court-martial, state the type of court.)*: Honorable

**4. DATE OF DISCHARGE OR RELEASE FROM ACTIVE DUTY** *(YYYYMMDD)*: 195 80918

**5. I REQUEST THE FOLLOWING ERROR OR INJUSTICE IN THE RECORD BE CORRECTED:** *(Entry required)*

I respectfully request reconsideration of the 1959 denial of the request to correct military records. I request reinstatement to the Service and the rescission of my discharge. I also request a promotion in rank to O-3.

**6. I BELIEVE THE RECORD TO BE IN ERROR OR UNJUST FOR THE FOLLOWING REASONS:** *(Entry required)*

In response to my Congressman's request for my records, I received a reconstructed service record. It reveals that the reason my request for correction of military records was denied on 7 Jan 1959 was based on a record-keeping error. (See continuation attached.)

**7. ORGANIZATION AND APPROXIMATE DATE** *(YYYYMMDD)* **AT THE TIME THE ALLEGED ERROR OR INJUSTICE IN THE RECORD OCCURRED** *(Entry required)* 19580918

**8. DISCOVERY OF ALLEGED ERROR OR INJUSTICE**

a. DATE OF DISCOVERY *(YYYYMMDD)*: 20021030

b. IF MORE THAN THREE YEARS SINCE THE ALLEGED ERROR OR INJUSTICE WAS DISCOVERED, STATE WHY THE BOARD SHOULD FIND IT IN THE INTEREST OF JUSTICE TO CONSIDER THE APPLICATION.

**9. IN SUPPORT OF THIS APPLICATION, I SUBMIT AS EVIDENCE THE FOLLOWING ATTACHED DOCUMENTS:** *(If military documents or medical records are pertinent to your case, please send copies. If Veterans Affairs records are pertinent, give regional office location and claim number.)*

SEE SCHEDULE ATTACHED

**10. I DESIRE TO APPEAR BEFORE THE BOARD IN WASHINGTON, D.C.** *(At no expense to the Government) (X one)* [X] YES. THE BOARD WILL DETERMINE IF WARRANTED. [ ] NO. CONSIDER MY APPLICATION BASED ON RECORDS AND EVIDENCE.

**11.a. COUNSEL** *(If any)* **NAME** *(Last, First, Middle Initial)* **and ADDRESS** *(Include ZIP Code)*

Gilbert J. Ginsburg
Attorney and Counselor-at-Law
1250 24th Street, N.W., Suite 350, Washington, D.C. 20037

b. TELEPHONE *(Include Area Code)*: (202) 776-7772

c. E-MAIL ADDRESS: gilgins@aol.com

d. FAX NUMBER *(Include Area Code)*: (202) 776-7773

**12. APPLICANT MUST SIGN IN ITEM 15 BELOW.** If the record in question is that of a deceased or incompetent person, LEGAL PROOF OF DEATH OR INCOMPETENCY MUST ACCOMPANY THE APPLICATION. If the application is signed by other than the applicant, indicate the name *(print)* and relationship by marking one box below.

[ ] SPOUSE [ ] WIDOW [ ] WIDOWER [ ] NEXT OF KIN [ ] LEGAL REPRESENTATIVE [ ] OTHER *(Specify)*

**13.a. COMPLETE CURRENT ADDRESS** *(Include ZIP Code)* **OF APPLICANT OR PERSON IN ITEM 12 ABOVE** *(Forward notification of all changes of address.)*

8084 Kennedy Road
Backlick, Ohio 43004-8726

b. TELEPHONE *(Include Area Code)*: (614) 861-8782

c. E-MAIL ADDRESS:

d. FAX NUMBER *(Include Area Code)*: (614) 861-8955

**14. I MAKE THE FOREGOING STATEMENTS, AS PART OF MY CLAIM, WITH FULL KNOWLEDGE OF THE PENALTIES INVOLVED FOR WILLFULLY MAKING A FALSE STATEMENT OR CLAIM.** *(U.S. Code, Title 18, Sections 287 and 1001, provide that an individual shall be fined under this title or imprisoned not more than 5 years, or both.)*

CASE NUMBER *(Do not write in this space.)*

**15. SIGNATURE** *(Applicant must sign here.)*

**16. DATE SIGNED** *(YYYYMMDD)*

APPLICATION FOR CORRECTION OF
MILITARY RECORD UNDER THE PROVISION OF
TITLE 10, U.S. CODE, SECTION 1552.

Continuation Sheet

6. The file purports to describe my situation, but was obviously in error. First, it states that the General was my rating officer. (The note in the file states that I "was apparently accountable directly to the General.") That statement is incorrect. The General was never my rating officer.

More importantly, the file indicates I was on active duty for a full year ("two consecutive 6-month periods between 1 January 1957 through 31 December 1957"), during which time (says the file) my rating and endorsing officer purportedly found that I "had not demonstrated potential for promotion." But I *was not* on active duty for that year! I was only activated *for a two-week period* in 1957 and again in 1958. And I can *prove* it. *See* below. So, obviously, those rating and endorsing officers were *not* talking about *me*. Rather, *my* rating officer, on 16 September 1957, found me "fully qualified for promotion." Obviously, the negative evaluation referred to in the file was of *a different officer* (who apparently was called up for active duty for two 6-month periods in 1957).

As proof of the fact that I was on active duty for only two weeks in 1957 and not for the whole year, I have enclosed documentary evidence of my earnings.

Copies of my W-2 withholding tax statements from the U.S. Army report my earnings for 1957 as $277.40 and for 1958 as $217.50. The total F.I.C.A. wage for the tax years 1957 and 1958 were $198.90 and $217.50, respectively.

I was denied promotion and retention based upon a record-keeping error. Accordingly, I request correction of my military records.

# APPLICATION FOR CORRECTION OF MILITARY RECORD

In re: 1st Lt. Mathew Levy O-2, 0 981 133

In support of this application, I submit as evidence the following narrative and documents:

## FACTS

Lt. Levy was honorably discharged on 18 September 1958. Attachment A-2 January 1959 Memo for: Executive Secretary ABCMR. That memo (of 2 January 1959) states in pertinent part:

> His efficiency reports indicate that he was considered fully qualified for promotion by his rating officer on 16 Sep 57. However, he was on active duty for training for 2 consecutive 6-month periods beginning 1 Jan 57 through 31 Dec 57, and his rating officer on 21 Jan 58 felt that he had not demonstrated potential for promotion despite his opportunity to do so. The rating officer who rendered the favorable report on him in Sep 57, again considered appl qualified for promotion on 21 Jul 58, after appl had served on a 2-week tour of active duty for training.
>
> The law requires that an officer be discharged from the Res if he fails to be selected for promotion to the next higher grade by a Section Board after having twice been considered by a Selection Board.

Memorandum for: Executive Secretary, ABCMR 2 January 1959, Attachment A.

*Lt. Levy was only activated for two weeks of service in the year 1957* and again in 1958. The finding that Lt. Levy "was on active duty for training for 2 consecutive 6-month periods beginning 1 Jan 1957 through 31 Dec 1957" is an error. Lt. Levy was ordered for a tour of Active Duty Training from 14 Jul 1957 to 28 Jul 1957. A copy of the order is enclosed as Attachment B. Lt. Levy only served two weeks active duty in 1957 and was paid by the U.S. Army a total of $277.50 (F.I.C.A. wages $198.90) in that year as evidenced by his 1957 W-2 wage statement. Attachment C.

Lt. Levy's total income from employment in 1957 was as follows:

| | | |
|---|---|---|
| 1. | U.S. Army (F.I.C.A. wages of $198.90) | $ 277.50 |
| 2. | Fashion Institute of Technology | 752.50 |
| 3. | Bayshore Togs | 4,204.96 |
| | Total employment income: | $ 5,234.96 |

A marked up copy of Lt. Levy's 1957 U.S. Income Tax Return is enclosed as Attachment D.

In 1957, Lt. Levy's principal source of income, his full time job, was with Bayshore Togs. Mr. Levy was on the evening faculty of the Fashion Institute of Technology. (See page of faculty listing enclosed as Attachment E.) Lt. Levy was on active duty for and was only paid for two (2) weeks.

The Social Security Administrationm, in a letter dated April 15, 1960, verified Lt. Levy's Social Security income to be as follows:

| | | |
|---|---|---|
| 1. | Board of Education, City of New York (Fashion Institute of Technology) | $ 752.50 |
| 2. | United States Army — Chemical Procurement | 198.90 |
| 3. | Self-employment (Bayshore Togs) | 3,248.60[1] |
| | 1957 Total Social Security Wages | $ 4,200.00 |

Thus, the United States Government, through the Social Security Administration, said in its letter that Lt. Levy only earned $198.90 as basic service pay in 1957.

---

[1] Only *the* first $3,248.60 of self-employment income was taxable to Social Security as the maximum social security wages in 1957 was $4,200. See Attachment F.

The memo claiming that Lt. Levy was on active duty for 2 six-month periods in 1957 is clearly in error and the less than superior rating for the 2 six-month periods belongs to someone else. Lt. Levy was denied promotion because of this error and was wrongfully discharged.

### Lt. Levy's Service Was Extraordinary and Without the Clerical Error He Would Have been Promoted

On 24 Jan 1957 Lt. Levy was selected for a mobilization designation position as a Captain. *See* Attachment G.

On 28 Aug 1957 Lt. Levy received a memorandum from the Chief, Procurement Services Branch which said in pertinent part,

> Your analysis of operational responsibilities concerning our Branch is one of the finest I have had the privilege to read.[2]

*See* Attachment H.

The Memorandum for: Executive Secretary, ABMCR 2 Jan 1959 states in pertinent part,

> His efficiency reports indicate that he was considered fully qualified for promotion by his rating officer on 16 Sep 57. . . .
>
> The rating officer who rendered the favorable report on him in Sep 57, again considered appl. qualified for promotion on 21 Jul 58; after appl had served on a 2-week tour of active duty for training.

*See* Attachment A.

### Lt. Levy was Erroneously Rated by the Selection Board

Lt. Levy was not properly rated by the Selection Board. The Selection Board erroneously stated that Lt. Levy had been on active duty for two consecutive 6-month periods, stating:

---

[2] The analysis of operational responsibilities was conducted during the reserve period 14-28 July 1957 and the report is dated 21 July 1957. *See* Attachment I.

> However, he was on active duty for training for 2 consecutive 6 months periods beginning 1 Jan 57 through 31 Dec 57, and his rating officer on 21 Jan 58 felt he had not demonstrated potential for promotion despite his opportunity to do so.

*See* Attachment A.

However, as demonstrated above, Lt. Levy was *not* on active duty for two 6-month periods. So, the Board was relying on erroneous records, records relating to someone else. Lt. Levy's ratings were uniformly excellent, finding each time that he was "fully qualified for promotion."

Clearly, Lt. Levy would have been promoted as the two proper ratings found that "he was considered fully qualified for promotion," in addition to which he received the laudatory evaluation set forth in Attachment H.

Lt. Levy respectfully requests that his military records be corrected to reflect the fact that he was fully qualified for promotion, was *not* "passed over" for promotion, and that he be promoted to Captain USAR. His records should further be corrected to rescind his discharge of 18 Sep 1958, which had been issued for erroneous reasons.

# ATTACHMENT A

Memorandum for: Executive Secretary,
ABCMR 2 January 1959

MEMORANDUM FOR: Executive Secretary, ABCMR

2 January 1959

NAME: LEVY, MATHEW ASN: 0 981 133 RANK: 1st Lt HON DISCH: 18 Sep 58

APPLICANT REQUESTS: That, in effect, he be reinstated in the Res and promoted to the grade of Capt. He claims that a true and accurate account of his military efficiency is not reflected in his records. In support of his application he submits letters of commendation and character references.

MATERIAL EVIDENCE OF RECORD: DOB: 23 Nov 26. Enlisted service: 18 Nov 44 - 4 Nov 46. Appointed 2d Lt, ORC, 1 Oct 49. Promoted to 1st Lt 29 Jun 53. He was passed over for Res promotion in 1957 and 1958, and was honorably discharged on 18 Sep 58 as a result thereof.

His efficiency reports indicate that he was considered fully qualified for promotion by his rating officer on 16 Sep 57. However, he was on active duty for training for 2 consecutive 6-months periods beginning 1 Jan 57 through 31 Dec 57, and his rating officer on 21 Jan 58 felt that he had not demonstrated potential for promotion despite his opportunity to do so. The rating officer who rendered the favorable report on him in Sep 57, again considered appl qualified for promotion on 21 Jul 58, after appl had served on a 2-week tour of active duty for training.

The law requires that an officer be discharged from the Res if he fails to be selected for promotion to the next higher grade by a Selection Board, after having twice been considered by a Selection Board.

RECOMMENDATION: There is nothing in appl's records to indicate that he has not been properly rated. The reason or reasons for his pass over for promotion by the Selectio Boards is not known, as such Boards do not prepare proceedings, or leave any workup sheet in the files to show the basis for their selection or non-selection of an individual. Under the circumstances there appears to be no basis for a formal hearing, and a denial of appl's application is accordingly recommended.

[signature]
Examiner

# ATTACHMENT B

## Orders for 1957 Active Duty

HEADQUARTERS
U.S. ARMY MILITARY DISTRICT, NEW YORK
90 Church Street, New York 7, NY

LO USAR 2415 19 July 1957

SUBJECT: Active Duty for Training

TO: 1ST LT MATHEW LEVY, 0981133, CMLC-USAR
2757 Claflin Ave, Bronx 68, NY

1. LO USAR 2171 this hq pertaining to 1ST LT MATHEW LEVY, 0981133, CMLC-USAR, 2757 Claflin Ave, Bronx 68 NY asg 1702 USAR Con Gp (Mob Designation) NY atch NY Mob Designation Det 10, 529 W 42nd St, New York, NY atch for ACDUTRA: US Army Chemical Center & Chemical Materiel Comd (9710) Army Chemical Center, Md (AUT) is revoked. (MOS: 4355) Appn: 2182070 832-1234 S49-092.

2. By direction of the Secretary of the Army, you are ordered for a tour of Active Duty Training as indicated below:

| | |
|---|---|
| VOCG 14 Jul 57 Cfm: | |
| Eff Date of ACDUTRA: | 14 Jul 57 |
| Unit of asg: | 1702 USAR Con Gp (Mob Designation) NY atch NY Mob Designation Det. 10, 529 W 42d St, New York, NY |
| Orgn Sta to which atch for tng: | NY Procurement District, 290 Broadway, New York 7, NY |
| Purpose: | Annual Unit Tng |

D/R: 7 Jul 57 DOB: 23 Nov 26 MOS: 4355 TD Nr: 03-9721 (M)
Date of Relief fr ACDUTRA: 28 Jul 57
Appn: 2182070 832-1234 P8113-01,15 P8173-02 S49-092 SDA 34-0114
Pending completion of final clearance individual has been granted an interim clearance for access to classified information and material to include SECRET.
AUTH: Title 10, USC sub-sec 672 (b), Cir 25, Hq First US Army 29 Feb 56; AR 140-220 and Ltr AGPR-DY, DA 12 Jun 57 subj: "ACDUTRA of Mobilization Designees UP of AR 140-220."

3. On eff date of ACDUTRA, you will proceed from your home to sta indicated; Upon completion of ACDUTRA, unless sooner reld, you will rtn to your home and stand reld from tng on date shown above. Tvl by railroad, bus, ship or air is auth (AR 55-21.) Nec tvl time (based on ground common carrier) from your home to duty sta and rtn is auth and is included in the period of tng shown above. Tvl by privately owned conveyance is not prohibited, provided tvl time will not be in excess of tvl time required by common carrier. PCS. Tvl of dependents and shipment of PCS weight allowance not auth. Appropriate uniform prescribed by AR 670-6 will be worn. TDN.

4. Commanders or organizations, stations or agencies to which member is attached for tng will maintain his records and submit reports as required by AR 140-220.

5. Finance Officers making payment under the above allotment will mail one copy of each paid voucher to Fiscal Officer cited in the appropriation.

FOR THE CHIEF:

C. Covotsos
C. COVOTSOS
Capt, AGC
Asst AG

DISTRIBUTION:
Spcl

# ATTACHMENT C

## 1957 W-2 from the U.S. Army

D/A
NY Mob Des Dem #10
Maj. S. Wiener, Asts Adj

WITHHOLDING TAX STATEMENT 1957
Federal Taxes Withheld From Wages

Type or print EMPLOYER'S identification number, name, and address above.

Copy C—For Employee's Records

| SOCIAL SECURITY INFORMATION | | INCOME TAX INFORMATION | | |
|---|---|---|---|---|
| $198.90 Total F.I.C.A. Wages* paid in 1957 | $4.48 F.I.C.A. employee tax withheld, if any | $277.40 Total Wages* paid in 1957 | $36.80 Federal Income Tax withheld, if any | |

Lt. Mathew Levy 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
2757 Olaflin Ave
Bronx 68, NY

Type or print EMPLOYEE'S social security account no., name, and address above.

NOTICE: If your wages were subject to Social Security taxes, but are not shown, your Social Security wages are the same as wages shown under "INCOME TAX INFORMATION," but not more than $4,200.
Keep this copy as part of your tax records.

FORM W-2—U.S. Treasury Department, Internal Revenue Service

*Before payroll deductions.

o9—10—72856-1

# ATTACHMENT D

## 1957 U.S. Individual Tax Return

FORM **1040**
U. S. Treasury Department
Internal Revenue Service

# U. S. INDIVIDUAL INCOME TAX RETURN—1957

or Other Taxable Year Beginning ............ 1957, Ending ............ 195...
(PLEASE TYPE OR PRINT)

Name ...............
(If this is a joint return of husband and wife, use first names of both)

Home address Box 638 Locust ST.
(Number and street or rural route)

Keyport N.J.
(City, town, or post office) (Postal zone number) (State)

| Your Social Security Number | Occupation | Wife's Social Security Number | Occupation |
|---|---|---|---|
| | | | |

**If Income Was All From Salaries and Wages, Use Pages 1 and 2 Only. See Page 3 of the Instructions.**

Exemptions

1. Check blocks which apply. Check for wife if she had no income or her income is included in this return.
   (a) Regular $600 exemption ........ ☐ Yourself ☐ Wife
   (b) Additional $600 exemption if 65 or over at end of taxable year. ☐ Yourself ☐ Wife
   (c) Additional $600 exemption if blind at end of taxable year. ☐ Yourself ☐ Wife
   Enter number of exemptions checked →
2. List first names of your children who qualify as dependents; give address if different from yours. ........ Enter number of children listed →
3. Enter number of exemptions claimed for other persons listed at top of page 2 ........
4. Enter the total number of exemptions claimed on lines 1, 2, and 3 ........

ATTACH COPY B OF FORMS W-2 HERE — Income

5. Enter all wages, salaries, bonuses, commissions, tips, and other compensation received in 1957, before payroll deductions.

| Employer's Name | Where Employed (City and State) | (a) Wages, etc. | (b) Income Tax Withheld |
|---|---|---|---|
| F.I.T. | N.Y. N.Y. | $ 752 50 | $ 52 3 |
| U.S. Army | N.Y. N.Y. | 277 40 | 35 4 |
| | Enter totals here → | $ 1029 90 | $ 87 9 |

6. Less: (a) Travel, reimbursed expenses, etc. (See instructions, page 6. Attach required statements.) $ ............
   (b) Excludable "Sick Pay" in line 5 ........ 45 00
7. Balance (line 5 less line 6) ........ $ 984 90
8. Profit (or loss) from business from separate Schedule C ........
9. Profit (or loss) from farming from separate Schedule F ........
10. Other income (or loss) from page 3 (dividends, interest, rents, pensions, etc.) ........ 4702 00
11. ADJUSTED GROSS INCOME (sum of lines 7, 8, 9, and 10) ........ $ 5686 90

If social security tax (FICA) withheld from your wages exceeds $94.50, see instructions, page 5.

Unmarried or legally separated persons qualifying as "Head of Household," see instructions, page 7, and check here ☐

Widows and widowers who are entitled to the special tax computation, see instructions, page 7, and check here ☐

Tax due or refund

12. Tax on income on line 11. (If line 11 is under $5,000, and you do not itemize deductions, use Tax Table on page 16 of instructions to find your tax and check here ☐. If line 11 is $5,000 or more, or if you itemize deductions, compute your tax on page 2 and enter here the amount from line 9, page 2). $ 800 |

If income was all from wages, omit lines 13 through 16

13. (a) Dividends received credit from line 5 of Schedule J ........ $ 18 72
    (b) Retirement income credit from line 12 of Schedule K ........ 18 7
14. Balance (line 12 less line 13) ........ $ 781 3
15. Enter your self-employment tax from separate Schedule C or F ........
16. Sum of lines 14 and 15 ........ 107 8
17. (a) Tax withheld (line 5 above). Attach Forms W-2 (Copy B) ........ $ 87 90 $ 889 1
    (b) Payments and credits on 1957 Declaration of Estimated Tax (See page 8, instructions). District Director's office where paid ........ $ 87
18. If your tax (line 12 or 16) is larger than your payments (line 17), enter the balance due here → $ 801
    Pay in full with this return to "Internal Revenue Service." If less than $1.00, file return without payment.
19. If your payments (line 17) are larger than your tax (line 12 or 16), enter the overpayment here → $
    If less than $1.00, the overpayment will be refunded only upon application. See instructions, page 8.
20. Amount of line 19 to be: (a) Credited on 1958 estimated tax $........ ; (b) Refunded $........

County in which you live ........ | Is your wife (husband) making a separate return for 1957? ☐ Yes ☐ No If "Yes," enter her (his) name. | Do you owe any Federal tax for years before 1957? ☐ Yes ☐ No

TAXPAYER—I declare under the penalties of perjury that this return (including any accompanying schedules and statements) has been examined by me and to the best of my knowledge and belief is a true, correct, and complete return.

Sign here ............ (Your signature) ............ (Date) ............ (If this is a joint return, wife's signature) ............ (Date)

→ To assure split-income benefits, husband and wife must include all their income and, even though only one has income, BOTH MUST SIGN

PREPARER (other than taxpayer)—I declare under the penalties of perjury that I prepared this return for the person(s) named herein, and that this return (including any accompanying schedules and statements) is, to the best of my knowledge and belief, a true, correct, and complete return based on all the information relating to the matters required to be reported in this return of which I have any knowledge.

Sign here ............ (Individual or Firm Signature) ............ (Address) ............ (Date)

Form 1040—1957 **EXEMPTIONS FOR PERSONS OTHER THAN YOUR WIFE AND CHILDREN** Page 2

| Name | Relationship | Number of months dependent lived in your home. If born or died during year also write "B" or "D" | Did dependent have gross income of $600 or more? | Amount YOU spent for dependent's support. If 100% write "All" | Amount spent by OTHERS including dependent from own funds |
|---|---|---|---|---|---|
| | | | | $ | $ |
| | | | | | |
| | | | | | |

Enter on line 3, page 1, the number of exemptions claimed above.

→ If an exemption is based on a multiple-support agreement of a group of persons, attach information described on page 5 of instructions.

## ITEMIZED DEDUCTIONS—IF YOU DO NOT USE TAX TABLE OR STANDARD DEDUCTION

If Husband and Wife (Not Legally Separated) File Separate Returns and One Itemizes Deductions, the Other Must Also Itemize

State to whom paid. If necessary write more than one item on a line or attach additional sheets. Please put your name and address on any attachments.

**Contributions**

Red Cross, Veterans, Savings, Alumni, Church, U.J.A., Polio, Cancer

Total paid but not to exceed 20% of line 11, page 1, except as described on page 8 of instructions — $ 56 | 00

**Interest**

Total interest

**Taxes**

NY State 77.36
NY City Estimate 58.80
Auto Registration 17.50
Gasoline tax 04/gal $2.00 — 1300 gals

Total taxes — 196 | 81

**Medical and dental expense** (If 65 or over, see instructions, page 9)

Submit itemized list. Do not enter any expense compensated by insurance or otherwise.

1. Cost of medicines and drugs, in excess of 1 percent of line 11, page 1 — $
2. Other medical and dental expenses
3. Total — $
4. Enter 3 percent of line 11, page 1
5. Allowable amount (excess of line 3 over line 4). (See instructions, page 10, for limitations.)

**Other Deductions** (Including child care and casualty losses)

Enter child care expenses paid but not to exceed $600. Enter casualty losses which are not compensated by insurance or otherwise. See page 10 of instructions and attach information required.

[illegible handwritten entry] — 1015 | 0

Total — [illegible]

TOTAL DEDUCTIONS (Enter here and on line 2 of Tax Computation, below) — $

## TAX COMPUTATION—IF YOU DO NOT USE THE TAX TABLE

| | | |
|---|---|---|
| 1. Enter Adjusted Gross Income from line 11, page 1 | $5686 | 9 |
| 2. If deductions are itemized above, enter total of such deductions. If deductions are not itemized *and line 1, above, is $5,000 or more:* (a) a married person filing separately enter $500; (b) all others enter 10 percent of line 1, or $1,000, whichever is smaller | 1267 | 8 |
| 3. Balance (line 1 less line 2) | 4419 | 1 |
| 4. Multiply $600 by total number of exemptions claimed on line 4, page 1 | 600 | 0 |
| 5. TAXABLE INCOME (line 3 less line 4) | 3819 | 1 |
| 6. Tax on amount on line 5. Use appropriate Tax Rate Schedule on page 11 of instructions | 800 | |
| 7. If you had capital gains and the alternative tax applies, enter the tax from separate Schedule D | | |
| 8. Tax credits. If you itemized deductions, enter: (a) Credit for income tax payments to a foreign country or U. S. possession (Attach Form 1116) $ ; (b) Tax paid at source on tax-free covenant bond interest and credit for partially tax-exempt interest. Enter total → | | |
| 9. Enter here and on line 12, page 1, the amount shown on line 6 or 7 less amount claimed on line 8 | $ | |

GPO

Form 1040—1957 Page

IF INCOME WAS ALL FROM SALARIES AND WAGES, TEAR OFF THIS PAGE AND FILE ONLY PAGES 1 AND

**Schedule A.—INCOME FROM DIVIDENDS** (Income from Savings (Building) and Loan Associations and Credit Unions should be entered as interest in Schedule B)

1. Name of qualifying corporation declaring dividend (See instructions, page 12):
(Indicate by (H), (W), (J) whether stock is held by husband, wife, or jointly)

| Name | Amount |
|---|---|
| Con Edison | $ 240.00 |
| Idaho Power | 200.00 |
| Kerr McGee | 28.00 |
| Public Service of Indiana | 50.00 |

2. Total ........ $ 518.00
3. Exclusion of $50 (If both husband and wife received dividends, each is entitled to exclude not more than $50 of his (her) own dividends) ........ 50.00
4. Excess, if any, of line 2 over line 3. Enter here and on line 1, Schedule J ........ $ 468.00
5. Name of nonqualifying corporation declaring dividend:
6. Enter total of lines 4 and 5 ........ $ 468

**Schedule B.—INCOME FROM INTEREST**

| Name of payer | Amount | Name of payer | Amount |
|---|---|---|---|
| Savings Accts | $ 30.00 | | $ |

Enter total here → 30

**Schedule D Summary.—GAINS AND LOSSES FROM SALES OR EXCHANGES OF PROPERTY**
1. From sale or exchange of capital assets (from separate Schedule D) ........
2. From sale or exchange of property other than capital assets (from separate Schedule D) ........

**Schedule E.—INCOME FROM PENSIONS AND ANNUITIES** (See instructions, page 13)

Part I.—General Rule

1. Investment in contract ........ $
2. Expected return ........ $
3. Percentage of income to be excluded (line 1 divided by line 2) ........ %
4. Amount received this year ........ $
5. Amount excludable (line 4 multiplied by line 3) ........
6. Taxable portion (excess of line 4 over line 5) ........

Part II.—Where your cost will be recovered within three years and your employer has contributed part of the cost

1. Cost of annuity (amounts paid in) ........ $
2. Cost received tax-free in past years ........
3. Remainder of cost (line 1 less line 2) ........ $
4. Amount received this year ........ $
5. Taxable portion (excess, if any, of line 4 over line 3) ........

**Schedule G.—INCOME FROM RENTS AND ROYALTIES**

| 1. Kind and location of property | 2. Amount of rent or royalty | 3. Depreciation (explain in Sch. I) or depletion | 4. Repairs (attach itemized list) | 5. Other expenses (attach itemized list) |
|---|---|---|---|---|
| | $ | $ | $ | $ |
| | | | | |
| | | | | |
| | | | | |
| 1. Totals ........ | $ | $ | $ | $ |

2. Net income (or loss) from rents and royalties (column 2 less sum of columns 3, 4, and 5) ........

**Schedule H.—OTHER INCOME**

1. Partnerships (name and address) Bayshore Toys Keyport N.J. ........ 4204
2. Estates or trusts (name and address)
3. Other sources (state nature)

Total income (or loss) from above sources (Enter here and on line 10, page 1) ........ $4702

**Schedule I.—EXPLANATION OF DEDUCTION FOR DEPRECIATION CLAIMED IN SCHEDULE G**

| 1. Kind of property (if buildings, state material of which constructed). Exclude land and other nondepreciable property | 2. Date acquired | 3. Cost or other basis | 4. Depreciation allowed (or allowable) in prior years | 5. Method of computing depreciation | 6. Rate (%) or life (years) | 7. Depreciation for this year |
|---|---|---|---|---|---|---|
| | | $ | $ | | | $ |
| | | | | | | |
| | | | | | | |
| | | | | | | |

1383
1340

IF INCOME WAS ALL FROM SALARIES AND WAGES, TEAR OFF THIS PAGE AND FILE ONLY PAGES 1 AND 2



## Schedule J.—DIVIDENDS RECEIVED CREDIT (See instructions, page 15)

| | | |
|---|---|---|
| 1. Amount of dividends on line 4, Schedule A | $ 468 | 01 |
| 2. Tentative credit (4 percent of line 1) | 18 | 72 |
| **LIMITATION ON CREDIT** | | |
| 3. Tax shown on line 12, page 1, plus amount, if any, shown on line 8(b), page 2 | 805 | 71 |
| 4. 4 percent of taxable income | 32 | 0 |
| Taxable Income Means (a) If tax is computed on page 2, the amount shown on line 5, page 2. (b) If capital gains alternative tax applies, the amount shown on line 14, separate Schedule D. (c) If Tax Table is used, the amount shown on line 11, page 1, less 10 percent thereof, and less the deduction for exemptions ($600 multiplied by the number of exemptions claimed on line 4, page 1). | | |
| 5. Dividends received credit. Enter here and on line 13(a), page 1, the smallest of the amounts on line 2, 3, or 4, above | $ 18 | 72 |

## Schedule K.—RETIREMENT INCOME CREDIT (See instructions, page 15)

This credit does not apply:
1. If you received pensions or annuities of $1,200 or more from Social Security or Railroad Retirement,
2. If you are under 65 years of age and had "earned income" of $2,100 or more, OR
3. If you are 65 or over and under 72, and had "earned income" of $2,400 or more.

| If separate return, use column B only. If joint return, use column A for wife and column B for husband | A | | B | |
|---|---|---|---|---|
| Did you receive earned income in excess of $600 in each of any 10 calendar years before the taxable year 1957? —Widow or widowers see instructions, page 15 | ☐ Yes ☐ No | | ☐ Yes ☐ No | |
| If answer above is "Yes" in either column, furnish all information below in that column. | | | | |
| 1. Retirement income for taxable year which is included in line 11, page 1, of this return: | | | | |
| (a) For taxpayers under 65 years of age: Enter only income received from pensions and annuities under public retirement systems, including retirement pay from Armed Forces | $ | | $ | |
| (b) For taxpayers 65 years of age or older: Enter total of pensions and annuities, including retirement pay from Armed Forces, interest, gross rents, and dividends | | | | |
| **LIMITATION ON RETIREMENT INCOME** | | | | |
| 2. Maximum amount of retirement income for credit computation | $ 1,200 | 00 | $ 1,200 | 00 |
| 3. Deduct: (a) Amounts received in taxable year as pensions or annuities under the Social Security Act, the Railroad Retirement Acts, and certain other exclusions from gross income | | | | |
| (b) Earned income received in taxable year: (This line does not apply to persons 72 years of age or over) | | | | |
| (1) Taxpayers under 65 years of age, enter amount in excess of $900 | | | | |
| (2) Taxpayers 65 or over and under 72, enter amount in excess of $1,200 | | | | |
| 4. Total of lines 3(a) and 3(b) | | | | |
| 5. Balance (line 2 minus line 4) | | | | |
| 6. Line 5 or line 1, whichever is smaller | | | | |
| 7. Tentative credit (20 percent of line 6) | | | | |

| | | |
|---|---|---|
| 8. Total tentative credit on this return (total of amounts on line 7, columns A and B) | | |
| **LIMITATION ON RETIREMENT INCOME CREDIT** | | |
| 9. Amount of tax shown on line 12, page 1 | | |
| 10. Less: Dividends received credit from line 5, Schedule J, above | | |
| 11. Balance (line 9 less line 10) | | |
| Retirement income credit. Enter here and on line 13(b), page 1, the amount on line 8 or line 11, whichever is smaller | $ | |

# ATTACHMENT E

## Page of Faculty Listing of F.I.T.

state
university
of
new
york

FASHION INSTITUTE OF TECHNOLOGY

special studies and evening programs

1956-1957

*faculty continued*

MATHEW LEVY Management; B.A. and M.A., New York University

GEORGE LINTON Textile Science Department; Philadelphia Textile Institute; B.S., Teachers College, Columbia University; M.A., Ph.D., Fordham University

ADELAIDE MANNO Industrial Management; B.A., Hunter College

JENNIE G. MORSE Chairman, Textile Design Department; New York School of Applied Design

ANGELA T. NEGLIA Textile Design

ELIZABETH PEYROUNE Apparel Design

ALEXANDER PITTS, JR. Management; B.A., Talladega College; M.A., Rutgers University

CHARLES REICHMAN Knitting; Harvard School of Business; B.B.A., City College of New York

HENRIETTE REISS Textile Design; Kunstgewerbeschule, Basel and Munich

MARIE ROBESON Apparel Design; Parsons School of Fine and Applied Arts

VITTORINA ROLFO Apparel Design; B.S., New York University

ULDERICO SACCO Management; B.S., M.B.A., New York University

FRANK SHAPIRO Chairman, Art Department; B.S. and M.S., City College of New York; National Academy of Design, New York

# ATTACHMENT F

## Letter from Social Security Administration

DEPARTMENT OF
HEALTH, EDUCATION, AND WELFARE
SOCIAL SECURITY ADMINISTRATION

BUREAU OF OLD-AGE AND SURVIVORS INSURANCE

IN REPLY REFER TO
FILE No. 14:WR:OW
OAR-L5148
Account No.
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

ADDRESS: SOCIAL SECURITY ADMINISTRATION
CANDLER BUILDING
BALTIMORE 2, MD.

April 15, 1960

Mr. Mathew Levy
2757 Claflin Avenue
Bronx 68, New York

Dear Mr. Levy:

Our investigation of your old-age and survivors insurance account has been completed. Information about your account is given on the enclosed page. The total shown may not include all of your earnings during the last calendar year. This is because of the time it takes to receive and record reports.

If you believe that the status of your account is not correct you may request that your case be re-examined. If you want this reconsideration, you must request it not later than 6 months from the date of this notice. You may make any such request through a social security district office. If additional evidence is available you should submit it with your request.

If you have any other questions about your case, you should visit or write your social security district office.

Sincerely yours,

J. L. Fay
Assistant Director

Enclosures (2)

Form OAR-L5148
10-59

A total of $40,646.25 is now credited to your account. This includes the following:

| Employer | Year | Amount |
|---|---|---|
| Board of Education, City of New York | 1957 | $ 752.50 |
| United States Army Chemical Procurement | 1957 | 198.90 |
| Self-Employment | 1957 | 3,248.60 |
| Board of Education, City of New York | 1958 | 826.00 |
| Mountain Top Manufacturing Company | 1958 | 4,290.00 |
| United States Army Procurement | 1958 | 217.50 |

The earnings you claim for employment with Fashion Institute of Technology during the years 1957 and 1958 were not reported by this employer. However, earnings are credited to your account for this period for employment you did not mention. Since employers sometimes report under names not known to their employees, we suggest that you compare your earnings with the itemization shown above. If a difference still exists, please take this letter and any evidence you may have of the earnings not credited to your account to the nearest Social Security Administratic District Office for assistance in reconciling the difference.

The difference in the amount you stated you were paid by the United States Army in 1957 and the amount shown on our records may be due to the difference in basic service pay and other remuneration you may have received. Only basic service pay is considered "wages" for social security purposes. We have adjusted the amount of self-employment income to bring your 1957 annual earnings up to the maximum of $4,200.

An individual who derives all of his earnings from self-employment is required to pay social security tax on only the first $3,600 of his net earnings for each of the years 1951 through 1954, $4,200 for 1955 through 1958 and $4,800 after 1958.

The maximum amount of earnings which an employer is required to report for an employee is the first $3,000 for each of the years prior to 1951, $3,600 for 1951 through 1954, $4,200 for 1955 through 1958, and $4,800 after 1958.

If you had more than one employer and paid taxes on annual earnings over a maximum, you may claim a refund of these excess taxes on your income tax return for that year, or apply for a refund to the local district director of internal revenue within two years after the year in which the earnings were paid. Even though you may obtain a refund of taxes paid on earnings in excess of the maximum amount, these earnings may remain credited to your account. However, any amounts over the maximum limitation will not be used when figuring any benefits to which you may be entitled.

# ATTACHMENT G

## Mobilization Designation Assignment

H Blackner/
GE 9-5400 Ext 2154

HEADQUARTERS
NEW YORK MILITARY DISTRICT
90 Church Street
New York 7, N. Y.

Suspense
Date: 24 Jan 57

AHMPM(3)(1702) 201 (ADDRESSEE SHOWN BELOW)

10 Jan 57

SUBJECT: Mobilization Designation Assignment

TO:
1st Lt Arthur Levy, 0 981 133
2757 Claflin Ave.
Bronx, New York

1. You have been selected by the Department of the Army for the following mobilization designation position:

MOBILIZATION DESIGNATION T/D NUMBER: 3-9721 (M), New York Chemical Procurement District, NY, NY

T/D GRADE: Captain

POSITION: Procurement Expediter

MOS: 4220

MOS TITLE: Procurement Officer

2. An information sheet is inclosed to assist you in making a decision as to whether or not you desire to accept this assignment.

3. It is requested that you complete the inclosed acceptance form and return to this headquarters no later than 24 Jan 57.

4. A self addressed envelope is inclosed for your convenience.

FOR THE CHIEF:

C. Covotsos

C. COVOTSOS
Captain, AGC
Asst Pers Mgt Off

3 Incl
1. Info Sheet
2. Accept Form
3. Self add env

NYMD FL 0492
18 May 1956

# ATTACHMENT H

Memorandum of 28 August 1957
From Chief, Procurement Services Branch

NEW YORK CHEMICAL PROCUREMENT DISTRICT, U. S. ARMY
~~XXXXXXXXXXXXXXXX~~ 290 Broadway
NEW YORK ~~XX~~ N. Y.
7

IN REPLY REFER TO:

CMLNC-NY-ZP-3

28 August 1957

First Lt. Mathew Levy
c/o Bayshore Togs
Locust Street
Keyport, N. J.

Dear Mat:

Please accept my apologies for the delay in the preparation of your report, (we have had our problems). Your original has been forwarded to the Commanding Officer for review.

Your Analysis of operational responsibilities concerning our Branch is one of the finest I have had the privilege to read.

I certainly hope your efforts will bring deserving rewards.

Very truly yours,

TOM

THOMAS W. MURPHY, 1st Lt CmlC
Chief, Procurement Services Branch.

1 Incl.
Analysis of BMS & Surplus Funds

# ATTACHMENT I

## Analysis of Operational Responsibilities

N4PO File
CG Terry
23 May 58

U. S. ARMY CHEMICAL PROCUREMENT DISTRICT, NEW YORK
290 Broadway
New York 7, N. Y.

ORC TRAINING DUTY

PROCUREMENT DIVISION

Officer: 1st Lt. Mathew Levy
14 - 28 July 1957

1. Subject

A. Evaluation and review of procedures on maintenance of DMS and internal control records under current Army Regulations.

B. Analysis of the Procurement Division's responsibility for reporting surplus (cited) funds.

2. Purpose

Provides administrative training in the field of chemical procurement procedures.

3. Scope

A. To review and evaluate procedures on maintenance of DMS and internal control records under pertinent Army Regulations.

B. To analyze the Procurement Division's responsibility for thorough and timely reporting of surplus funds (cited funds with FY limitations) in conjunction with similar responsibility of the Comptroller's Office.

4. References

A. USACPD-NY 80-7 (9 Nov 54 inc. changes)
B. AR 345 - 280 c 1

5. Contact Representatives

Mr. A. J. Cilento, Assistant Chief, Procurement Division
Mr. J. Zang, Deputy Comptroller
Capt. F. H. Tryon, Finance and Accounting Officer
Mr. F. Gorman, DMS Officer
Mr. S. Gordon, Assistant Chief, Procurement Services Branch

6. Problem

A. Prepare a resume of the status (adequacy or inadequacy) of conditions under the application of pertinent Army Regulations with respect to DMS records and reports and/internal office (Branch) records and reports as maintained in the Branch files.

B. Prepare an outline of a suggested procedure for maintenance of an internal office control device (or etc.) which could facilitate a thorough and timely system of providing information as to sufficiency of funds to each and every procurement authorization.

DATE: 21 July 1957

SUBJECT: Analysis of DMS and Surplus Funds, with Recommendations.

TO: Commanding Officer
U.S.A. QM Procurement District New York
290 Broadway
New York 7, N.Y.

THRU: Chief,
Procurement Division, USAQMPD New York

1. Herewith attached is the analysis of the problem presented me by the New York Procurement District.

2. Section A encompasses a review and evaluation of procedures on maintenance of Defense Materials System (DMS) and internal control records under current Army Regulations.

3. Section B is an analysis of the Procurement Division's responsibility for reporting surplus (excess) funds.

4. In the analysis of the above problems it has been my intention to briefly summarize the overall picture; review the Procurement District's obligations and submit any and all recommendations feasible.

5. At this time I wish to acknowledge the excellent guidance given me by the members of the Procurement Staff, especially the assistance of:

| | |
|---|---|
| Mr. F. Garone | DMS Officer |
| Mr. S. Gordon | Asst. Chief, Proc. Services Branch |
| Mr. A.J. Gliasco | Asst. Chief, Procurement Division |
| Lt. T. Murphy | Chief, Procurement Services Branch |
| Capt. Tyson | Finance Officer |
| Miss. M. Brenner | Supervisory Accountant |

6. This report is, therefore, submitted for your consideration.

NATHAN LEVY
1st Lt., QMC
0-981139

Exhibit A

"Review and Evaluation of Procedures in Maintenance of [illegible] and External Control Records"

Under current regulations the Defense Materials System, referred to as DMS, serves as an operating material control system designed to permit quick, "all out" industrial mobilization in time of national emergency. The system, in order to operate at peak efficiency is dependent upon the following:

1. Good, reliable information.
2. Qualified trained personnel.
3. Existance of ready plans.

The functions of DMS, therefore, are designed to meet the following requirements:

1. To insure the completion of all military programs on time.
2. To retain a framework of a control system for quickly expanding military needs in time of total mobilization.
3. To avoid unrestricted use of priority ratings.
4. To minimize the need for establishing contracts on civilian production and construction in case of emergency.
5. To provide for identifications of Defense Orders.

II

GLOSSARY OF TERMS TO BE USED

Rated Order - A delivery order for any product or material (other than a controlled material) bearing an authorized rating.

CONTROLLED MATERIALS - All metals listed in Schedule I DMS Regulation I.

Class A Product - Any product which is not a Class B Product - A product produced for sale to a few specialized customers.

Class B Product - Products for sale to many customers.

III

In general, the System provides for the identification of all Defense Orders by an appropriate program symbol in the form of rated orders or authorized controlled material orders; the preferential treatment of such orders by suppliers; and the accounting for the greater part of the controlled materials used in Defense programs.

Therefore, rated contracts of the Department of Defense will contain a clause, requiring the contractor to agree that he will follow the provisions of the applicable rules and regulations of DMS in use of materials required for his contract quarter. (Reports governing each calendar quarter production are reviewed by the O.D.M. which authorizes the fulfillment of the programs it approves under the provisions of DMS).

Under DMS regulations, military contractors and subcontractors have two mandatory obligations:

1. All purchase orders for materials and products needed to fulfill defense contracts must be identified by an appropriate program symbol as prescribed.
2. The quantity of materials ordered with the preferential Defense identifications must not exceed that required by contractor's production schedule.

IV.

Procedure Used by USACPD

1. Prior to awarding the contract and after bids have been distributed the DMS Officer will determine how much controlled material is required for the item. (The determination is accomplished with consultation of the Engineering Division as to approved production schedules.)

2. When the contract is signed and production schedules are authorized, the required material is requested from Chemical Material Command (MatCom), by Code, for use in the calendar quarter in accordance with approved production schedules.

3. Upon receipt of DMS 4A the allotment and authorized production schedule are extended to the contractor on Form DMS 10.

The Procurement Division of USACPDNY accomplishes it's mission thru the use of four (4) major DMS records:

1. DMS-4A - Application for Allotment and Authorized Production Schedule.
2. DMS-10 - Allotment of Controlled Materials to Contractor.
3. CmlC MatCom 4R - Controlled Material Status.
4. DD 492 - Report of Allotment

1. DMS 4A - is submitted by the contractor at request of the Procurement Office (See Exhibit A). It is accomplished only upon request for an initial or supplemental supply of controlled material. Therefore, in the normal performance of a contract it is submitted for the yearly quarters of life of contract. Under unusual circumstances the number of application is dependent upon the nature of the contract.

2. DMS-10 - Issued by Materiel Command Procurement Division upon receipt of DMS 4A from contractor (See Exhibit B). This form is accomplished by Chief DMS only upon inspection and approval of DMS 4A. This form, as form DMS 4A, under normal circumstances is submitted for the yearly quarters.

3. CmlC MatCom 4R - Submitted by the Procurement Division. It is a monthly report form maintained by this Office. Its purpose is to check upon the usage of the allocated materials for the month (See Exhibit C). The information for item 7 is supplied by MatCom and Item 8 is supplied by inspection reports submitted on 28 of each month.

4. DD 492 - Submitted monthly by the Procurement District breaks the allocations down the various Defense Claimant Programs by name and Code Number (See Exhibit D). This form tends to accumulate the total amounts by group rather than contract.

V.

SUMMARY AND RECOMMENDATIONS

Since it has been the primary objective of this report to evaluate the status of conditions under Army regulations with respect to DMS records and reports, it is only fitting that we do not attempt justification of the system in general.

The major objective, as it appears, is to maintain a system of checks, balances governing the allocation of controlled material, thereby insuring proper division of the available supply to all necessary contractors based upon their production needs.

Exhibit A although apparently adequate leaves one small point to be desired. The form lists two types of applications - Initial and Supplementary. The Initial application is self explanatory, but it is my contention that a Supplemental application, should require justification by the requesting contractor, as to what conditions prevail to make a Supplemental action necessary.

The remainder of the records accomplish their purpose admirably. The wealth of information that is supplied to higher echelon is tremendous.

Only one point needs clarification in my mind. All manufacturing processes of hard goods require the accumulation of a waste that is in the form of this product. No where in these records do I find an accounting for the waste and the final disposition of these items. Through proper

accounting and processing of these waste, it might become possible to add to the stock pile of available material.

This form should be accomplished by the contractor and submitted to the Procurement Division for transmission to Material Command.

As a final recommendation, the matter of record and maintenance comes to mind. Since the prime objective of this program is to supply information to Department of Defense and O.D.M., who is responsible for the final allocation recording, it does not seem feasible for the Procurement Division to maintain as complete a file of records that now is in existence. The information in the records is in duplication of the offices of Material Command, Department of Defense and O.D.M. It is my contention, therefore, that a review of the record maintenance be accomplished with the view in mind of eliminating as many records, supplying duplicate information, as possible.

# APPENDIX A

## Classification of Controlled Materials

| Class # | Nomenclature |
|---|---|
| 10 | Carbon Steel |
| 20 | Alloy Steel |
| 30 | Stainless Steel |
| 40 | Copper & Copper Base Alloy Brass Mill Products |
| 50 | Copper Wire Mill Products |
| 60 | Copper and Copper Base Alloy Foundry Products and Powder |
| 70 | Aluminum |
| 80 | Nickel and Nickel Base Alloy |

APPENDIX B

DMS TRANSACTION FLOW AT NYCPD




Prime Contractor may request materials by submitting Form DMS-4A.

REFERENCES:

| | |
|---|---|
| Cml-AM-M-P | Army Chemical Center, 19 April 1957 |
| DMS Reg 1 | 1 April 1954 |
| DMS Reg 2 | 1 April 1954 |
| DMS Reg 1, Dir 4 | 11 April 1957 |
| DMS Reg 2, Dir 3 | 11 April 1957 |
| DOD Emergency Priorities and Allocations Manual | 12 Sep 1955 |
| SR 715-5-10 | Dept of Army 1954 |

I

28 July 1957

The problem of surplus funds is one that presents a challenge to management. In accounting procedure and recording, but the channels through wich this procedure must pass is one clogged with many managerial pitfalls.

Before we get into the problem and its solutions we must cite the industrial management difficulties. Basically the problem is one of authority and responsibility.

One of the Cardinal rules of industrial management, cited by the founders of the science and carried forth to today's usage is the relationship between authority and responsibility.

"One should never accept responsibility without the proper authority - Authority should never be cited without the corresponding responsibility".

The problem, therefore can only be handled properly, by first locating the responsible agencies, and then determining if the corresponding authority is available to these agencies.

II

Basically the responsibility lies with two agencies. First with the Comptroller, and second with the Procurement Division.

The responsibility of the Comptroller is clearly defined in Regulation 80-7 dated 9 Nov 1954. The Comptroller is responsible for:

1. Reporting funds deemed to be in excess
2. Requesting from higher authority additional funds necessary
3. Insuring that no obligations or expenditures exceed allocated funds.

The responsibility of the Procurement Division also clearly defined but the moral responsibility is only implied. The Chief, Procurement Division

is responsible for:

1. Reporting to Comptroller any excess in procurement of a directive.

2. Requesting additional funds to complete a directive

III

Since the responsibilities are clearly defined we need not consider them too carefully. What we must consider is the aforementioned moral responsibility of the Chief, Procurement Division. A moral responsibility is one of implication rather than one of definition. The first evidence of its existence appears in the listed responsibilities of the Procurement Division and Comptroller. All funds that are in excess are only deemed to be so therefore by the Chief, Procurement Division; the Comptroller can only act on the information given by the Chief. It is true that the Comptroller through simple accounting procedure can arrive at an excess balance between allocated funds and directed funds, but he can not call them surplus unless so informed by the Chief that they are in excess of the requirement to complete the procurement directive. We therefore, place a moral responsibility upon the Chief to carefully scrutinize the records and clearly define what funds are surplus and what funds are necessarily maintained for contract completion. This is carefully defined in Regulation 80-7 Section 5 (38).

IV

Through a careful check of all existing records we find that there are enough forms available to complete the cycle between Procurement and Comptroller the basic form is USACPBKY FL 120 (Exhibit A) originally instituted 28 Dec 55, amended 4 Nov 54 and finally amended 4 Jan 56. Even at this date this form is deemed inadequate by your author. A further review of this form will appear in the section on recommended action

Cml C Form 3625 (Exhibit B). Request for Procurement Funding is submitted to Materiel Command by the Comptroller's office. The interesting feature of the form, is that according, to existing precedent this form can be instituted by the receipt of a 120 from Procurement or can be instituted by the Comptroller, with no contact with Procurement, when the records show the necessity of a funding change.

Forms NYPD 79, exhibit C, and NYPD 91 exhibit D are communicating links between the Contracting Offices and the Comptroller. These forms are initiated by the contracting officer and submitted to the Comptroller. In actuality the forms accomplish the same purpose for different types of contracts. NYPD 79 being submitted for Negotiated Agreements and NYPD 91 for Formally Advertised contracts.

NYPD form 46, obviously a liaison form between the contracting officer and Comptroller has provisions for initiation at either end. In essence, it should originate from the Comptroller upon their discovery of a surplus amount and be transmitted to the Contracting Officer for information as to what action should be taken.

CmlMat G- NY-8, exhibit F, a form used entirely by the Comptroller, attempts to secure information relative to find disposition of unobligated funds. It is initiated by the Comptroller's office.

V

Summary and recommendations

After careful consideration of all the factors at hand we find that the problem of surplus funds (cited) is no problem at all. Regulations state what the responsibility of the Procurement and Comptroller's Divisions are. The connection between the divisions is filled with numerous forms from USACPINY, Materiel Command, and the individual divisions.

In fact the quantity of forms used is tremendous. Many are in duplication, and many are just to secure information that should be included on a previous form. In actuality the only concrete change that can be recommended is to secure a stronger liaison between the two divisions other than that of combined efforts of the appropriation accounts division of the Comptroller's office and of the Procurement Services Branch as it exists.

All recommendations must of necessity start with the revision of later compilation records.

A - Form 120

1. According to Regulation 80-7 Form 120 must be submitted to Comptroller upon the final award of the contract. The strength of the regulation does not seem to be enough to insure the completion of Form 120. Therefore it is recommended that form 120 be made mandatory to all contract awards and should pass through the Procurement Services Branch to the Comptroller. In case of single contract awards for a Procurement Authority Instrument no action other than recording will be accomplished by the Procurement Service Branch. In multi contracts of a Procurement Authority Instrument, it shall be the responsibility of the Procurement Service Branch to compile the information of the various 120 forms and submit a consolidated 120 to the Comptroller.

2. The initial completion of the 120 Form should be the responsibility of the Contracting Officer.

3. Form 120 should be revised to include a justification for the holding of any surplus funds. This justification should include Research and Development, the procurement of all items up to and including the pilot plant stage, and those dealing with extenuating transportation difficulties.

B - Forms 79 & 91

Again according to 80-7 these forms must accompany a different award. The usage of two different forms to supply the same information is based only upon the type of contract. It is therefore recommended that these forms be united to one form and a column added that would indicate whether it was for a Negotiated Agreement or a Formally Advertised Contract.

C - NYPD 16 and Comptroller Form Cml. ND-NY-G

These forms in actuality are in duplication of each other. The necessity of these forms should be challenged if recommendation is followed; if not they should be consolidated to one form.

D - Through a closer contact between the Contracting and Negotiating Officers, and the Comptroller's office by whatever managerial channels are necessary, especially by the delegation of more authority to the Appropriations Accounts Supervisor. The tense situation of surplus funds as it exists today can certainly be reduced if not completely eliminated.

References

AR 37-20
SR 37-20-1
Regulation 80-7 with Change 1.

Exhibit 16

# Monthly Incentive Pay (Aviation Pay Crew-Member and Submarine Duty Pay) and Other Special Pay

Effective: 1 April 1955

Cumulative Years of Service 1/

| Rank | Under 2 | Over 2 | Over 3 | Over 4 | Over 6 | Over 8 | Over 10 | Over 12 | Over 14 | Over 16 | Over 18 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| O-10 | 165.00 | | | | | | | | | | |
| O-9 | 165.00 | | | | | | | | | | |
| O-8 | 155.00 | | 165.00 | | | | | | | | |
| O-7 | 150.00 | | 160.00 | | | | | | | | |
| O-6 | 200.00 | | 215.00 | | | | | | | 220.00 | 245.00 |
| O-5 | 190.00 | | 205.00 | | | | | 210.00 | 225.00 | 230.00 | 245.00 |
| O-4 | 170.00 | | 185.00 | | | 195.00 | 210.00 | 215.00 | 220.00 | 230.00 | 240.00 |
| O-3 | 145.00 | | 155.00 | 165.00 | 180.00 | 185.00 | 190.00 | 200.00 | 205.00 | | |
| O-2 | 115.00 | 125.00 | 150.00 | | 160.00 | 165.00 | 170.00 | 180.00 | 185.00 | | |
| O-1 | 100.00 | 105.00 | 135.00 | | 140.00 | 145.00 | 155.00 | 160.00 | 170.00 | | |
| W-4 | 115.00 | | | | 120.00 | 125.00 | 135.00 | 145.00 | 155.00 | 160.00 | 165.00 |
| W-3 | 110.00 | 115.00 | | | 120.00 | | 125.00 | 135.00 | 140.00 | | |
| W-2 | 105.00 | 110.00 | | | 115.00 | 120.00 | 125.00 | 130.00 | 135.00 | | |
| W-1 | 100.00 | 105.00 | | | 110.00 | 120.00 | 125.00 | 130.00 | | | |
| E-7 | 80.00 | 85.00 | | | 90.00 | 95.00 | 100.00 | 105.00 | | | |
| E-6 | 70.00 | 75.00 | | 80.00 | 85.00 | 90.00 | 95.00 | | 100.00 | | |
| E-5 | 60.00 | 70.00 | | 80.00 | | 85.00 | 90.00 | 95.00 | | | |
| E-4 | 55.00 | 65.00 | | 70.00 | 75.00 | 80.00 | | | | | |
| E-3 | 55.00 | 60.00 | | | | | | | | | |
| E-2 | 50.00 | 60.00 | | | | | | | | | |
| E-1 +4mos | 50.00 | 55.00 | | | | | | | | | |
| E-1 -4mos | 50.00 | | | | | | | | | | |
| NavCad | 50.00 | | | | | | | | | | |

Family
Separation Allowance
Officers - $30.00
*Enlisted - $30.00
* Applies to E-4 (Over 4 and Above)

Special Pay Sea & Foreign Duty Pay

| | | | |
|---|---|---|---|
| E-9 | 22.50 | E-4 | 13.00 |
| E-8 | 22.50 | E-3 | 9.00 |
| E-7 | 22.50 | E-2 | 8.00 |
| E-6 | 20.00 | E-1 | 8.00 |
| E-5 | 16.00 | NavCad | 8.00 |

Basic Allowance for Subsistence
Enlisted:
When rations in kind are not available $2.57 per day

Notes:

1. If no amount is shown for a pay grade under cumulative years of service, the amount immediately to the left applies.

# Monthly Basic Pay and Allowances

Effective: 1 April 1955

| Rank | Cumulative Years of Service 1/ Under 2 | Over 2 | Over 3 | Over 4 | Over 6 | Over 8 | Over 10 | Over 12 | Over 14 | Over 16 | Over 18 | Over 20 | Over 22 | Over 26 | Over 30 | Personal Money Allowance | Basic Allowance for Subsistence | Basic Allowance for Quarters: With Dependent | Basic Allowance for Quarters: Without Dependent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FL ADM | 963.30 | | 1,021.80 | | | | | | | | | | | | 1,076.40 | 333.33 | 47.88 | 171.00 | 136.80 |
| O-10 | 963.30 | | 1,021.80 | | | | | | | | | | | | 1,276.40 | 183.33 | 47.88 | 171.00 | 136.80 |
| O-9 | 963.30 | | 1,021.80 | | | | | | | | | | | | 1,176.40 | 41.67 2/ | 47.88 | 171.00 | 136.80 |
| O-8 | 963.30 | | 1,021.80 | | | | | | | | | | | | 1,076.40 | | 47.88 | 171.00 | 136.80 |
| O-7 | 800.28 | | 850.00 | | | | | | | | | | | 904.80 | 967.20 | | 47.88 | 171.00 | 136.80 |
| O-6 | 592.80 | | 631.80 | | | | | | | 655.20 | 717.60 | | 748.80 | 780.00 | 811.20 | | 47.88 | 136.80 | 119.70 |
| O-5 | 474.24 | | 507.00 | | | | | 530.40 | 561.60 | 577.20 | 608.40 | | 639.60 | 670.80 | | | 47.88 | 136.80 | 102.60 |
| O-4 | 400.14 | | 429.00 | | | 452.40 | 483.60 | 499.20 | 514.80 | 530.40 | 561.60 | | 577.20 | 592.80 | | | 47.88 | 119.70 | 94.20 |
| O-3 | 326.04 | | 351.00 | 374.40 | 405.60 | 421.20 | 436.80 | 452.40 | 468.00 | 483.60 | 499.20 | | 514.80 | | | | 47.88 | 102.60 | 85.50 |
| O-2 | 259.36 | 274.18 | 335.40 | | 351.00 | 366.60 | 382.20 | 397.80 | 413.40 | | | | | | | | 47.88 | 94.20 | 77.10 |
| O-1 | 222.30 | 237.12 | 296.40 | | 312.00 | 327.60 | 343.20 | 358.80 | 374.40 | | | | | | | | 47.88 | 85.50 | 68.40 |
| W-4 | 332.90 | 354.90 | | | 370.50 | 386.10 | 401.70 | 421.20 | 452.40 | 468.00 | 483.60 | | 499.20 | 514.20 | 530.40 | | 47.88 | 119.70 | 94.20 |
| W-3 | 302.64 | 323.70 | | | 331.50 | 339.30 | 347.10 | 358.80 | 374.40 | 382.20 | 405.60 | | 428.00 | 443.60 | 459.20 | | 47.88 | 102.60 | 85.50 |
| W-2 | 264.82 | 280.80 | | | 288.60 | 304.20 | 319.80 | 335.40 | 350.00 | 357.80 | 373.40 | | 389.40 | 404.60 | 420.20 | | 47.88 | 94.20 | 77.10 |
| W-1 | 219.42 | 251.20 | | | 266.80 | 286.30 | 294.10 | 305.80 | 313.60 | 321.40 | 337.00 | | 352.60 | 368.20 | | | 47.88 | 85.50 | 68.40 |

| Rank | Cumulative Years of Service 1/ Under 2 | Over 2 | Over 3 | Over 4 | Over 6 | Over 8 | Over 10 | Over 12 | Over 14 | Over 16 | Over 18 | Over 20 | Over 22 | Over 26 | Over 30 | Basic Allowance for Quarters: Without Dependent | One Dependent | Two Dependent | Three or Dependents |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| E-7 | 206.39 | 222.30 | | 230.10 | 237.90 | 253.50 | 261.30 | 273.00 | 280.80 | 288.60 | 304.20 | | 319.80 | 335.40 | | 51.30 | 77.10 | 77.10 | 96.90 |
| E-6 | 175.81 | 187.20 | | 195.00 | 214.50 | 222.30 | 234.00 | 241.80 | 249.60 | 257.40 | 273.00 | | 288.60 | | | 51.30 | 77.10 | 77.10 | 96.90 |
| E-5 | 145.24 | 163.80 | | 183.30 | 191.10 | 202.80 | 210.60 | 218.40 | 226.20 | 234.00 | 241.80 | | 257.50 | | | 51.30 | 77.10 | 77.10 | 96.90 |
| E-4 | 122.30 | 140.40 | | 159.90 | 167.70 | 179.40 | 187.20 | 195.00 | 202.80 | 210.60 | 218.40 | | | | | 51.30 | 77.10 | 77.10 | 96.90 |
| E-3 | 99.37 | 117.00 | | 132.60 | 140.40 | 148.20 | 156.00 | 159.90 | 163.80 | | | | | | | 51.30 | 51.30 | 77.10 | 96.90 |
| E-2 | 85.80 | 101.40 | | 109.20 | 117.00 | 124.80 | 132.60 | | | | | | | | | 51.30 | 51.30 | 77.10 | 96.90 |
| E-1 +4mos | 83.20 | 98.80 | | 106.60 | | | | | | | | | | | | 51.30 | 51.30 | 77.10 | 96.90 |
| E-1 -4mos | 78.00 | | | | | | | | | | | | | | | | | | |

## Notes:

1. If no amount is shown for a pay grade under cumulative years of service, the amount immediately to the left applies.
2. While serving as U.N. member $225.00