IN THE UNITED STATES COURT OF FEDERAL CLAIMS
WASHINGTON, D.C.

| | | |
|---|---|---|
| MATHEW LEVY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-829C |
| | ) | Judge Horn |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

COMES NOW Mathew Levy, by and through counsel, and for his Memorandum in Opposition to Defendant's Motion to Dismiss states:

Standard of Review

In evaluating a claim pursuant to RCFC 12(b)(1) for lack of jurisdiction, the court must accept as true any undisputed allegations of fact made by the non-moving party and draw all reasonable inferences from those facts in the non-moving party's favor. *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995); *Reynolds v. Army & Air Force Exch. Service,* 846 F.2d 746, 747 (Fed. Cir. 1988).

In acting on a motion to dismiss a complaint for failure to state a claim for which relief can be granted under RCFC 12(b)(6), a court must accept as true the facts alleged in the complaint, *Pi Elecs. Corp. v. United States*, 55 Fed. Cl. 279, 285 (2003)(citing *Davis v. Monroe County Bd. Of Educ.*, 526 U.S. 629 (1999)), and must construe all reasonable inferences in favor of the non-moving party, *Pi Elecs.*, 55 Fed. Cl. At 285 (citing *Sommars Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001)).

Facts

The Government acknowledges several of the significant facts involved in this case in its Statement of Facts. Defendant's Motion to Dismiss ("Defendant's Motion"), pp. 2-3. Moreover,

the Government fails to dispute, and therefore admits, the most salient fact in this case: the single most important event in this case occurred on January 26, 2006 when the Army admitted that Mr. Levy had shown with "sufficient evidence" that he did not serve on active duty for two consecutive six-month periods in 1957 and that the 1959 internal memo for the Army Board for Correction of Military Records ("ABCMR") "incorrectly noted" that Mr. Levy was on active duty for two consecutive six-month periods – January 1 to June 30 and July 1 to December 31 - in 1957.[1] With this admission, the Army acknowledged the mistaken identity which served as the factual predicate for Mr. Levy's wrongful separation.[2]

Argument

In Defendant's Motion, the Government asserts there should be no remedy for Mr. Levy. The Government argues his claims are barred by the six-year statute of limitations in 28 U.S.C. § 2501 because either his claim accrued in 1958 when he was separated from the Army (Defendant's Motion, pp. 7-8) or because his claim accrued in 2001 when he first received copies of the erroneous documents (Defendant's Motion, pp. 9-11). In addition, the Government argues Mr. Levy just waited too long to bring his claim and the Government is prejudiced by the delay (Defendant's Motion, pp. 14-15) and that Mr. Levy has not alleged any money-mandating statute to confer jurisdiction on this Court (Defendant's Motion, pp. 11-14).

However, it is axiomatic in American jurisprudence that every wrong has a remedy. In a case handed–down on January 15, 2008, Justice Stevens stated:

> During the first two centuries of this Nation's history much of our law was developed by judges in the common-law tradition. A basic principle animating our

[1] As documented by official Army orders, Mr. Levy served on active duty for training ("ACDUTRA") for the period July 14-28, 1957. If he was already on active duty as alleged by the erroneous officer efficiency reports ("OERs"), then he could not have simultaneously served in an ACDUTRA status.

[2] The basis for the inclusion of these erroneous documents in Mr. Levy's service record will probably never be determined. One possible explanation could be that a clerical error occurred and information on two different officers was mixed up. Another possible explanation could be that in the Army of the 1950s, Mr. Levy was the victim of a deliberate effort to remove him from the service.

jurisprudence was enshrined in state constitution provisions guaranteeing, in substance, that "every wrong shall have a remedy." Fashioning appropriate remedies for the violation of rules of law designed to protect a class of citizens was the routine business of judges. See *Marbury v. Madison,* 1 Cranch 137, 166, 2 L.Ed. 60 (1803). While it is true that in the early days state law was the source of most of those rules, throughout our history - until 1975 - the same practice prevailed in federal courts with regard to federal statutes that left questions of remedy open for judges to answer. In *Texas & Pacific R. Co. v. Rigsby,* 241 U.S. 33, 39, 36 S.Ct. 482, 60 L.Ed. 874 (1916), this Court stated the following:

> A disregard of the command of the statute is a wrongful act, and where it results in damage to one of the class for whose especial benefit the statute was enacted, the right to recover the damages from the party in default is implied, according to a doctrine of the common law expressed in 1 Com. Dig., *tit.* Action upon Statute (F), in these words: 'So, in every case, where a statute enacts, or prohibits a thing for the benefit of a person, he shall have a remedy upon the same statute for the thing enacted for his advantage, or for the recompense of a wrong done to him contrary to the said law.' ( *Per* Holt, C. J., *Anon.,* 6 Mod. 26, 27.).

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, -- U.S. --, 128 S.Ct. 761, 779 –780 (2008).

A. Mr. Levy's claim is timely filed in accordance with 28 U.S.C. § 2501

In military discharge cases, the general rule is that a plaintiff's claim accrues on the date of actual discharge from the military. *Martinez v. United States*, 333 F.3d 1295, 1310 (Fed. Cir. 2003). However, the Government conveniently ignores the exception to this general rule. In this context, the Court in *Martinez* stated that where a correction board makes a favorable determination and the service member seeks to implement or enforce the correction board's favorable determination, then the service member's cause of action does not accrue on the date of discharge but on the date of the action by the correction board. *See Martinez*, 333 F.3d at 1315, n. 4 ("A different analysis applies when the correction board has granted relief and the service member seeks to enforce or challenge the implementation or scope of the remedial order, since in those cases the question whether the original discharge was lawful is no longer in issue and accrual therefore does not occur at the time of the allegedly improper discharge") and *Anderson v. United States*, No. 03-767-C, Court of Federal Claims (February 17, 2004)

("Major Anderson's cause of action in the present case [did not accrue on the date of his discharge but] accrued in May 2000 when the ABCMR granted retrospective relief in the form of a captain's pay. His subsequent request to the ABCMR challenged the implementation and scope of the ABCMR's May 2000 remedial order, A.R. 12, and his complaint reiterates the subsequent implementation in modified form. The complaint was filed in April 2003, well within the six-year period prescribed by Section 2501, when the triggering date is understood to be May 2000, as *Martinez* commands").

It is undisputed that on January 26, 2006, the ABCMR agreed with Mr. Levy when it expressly admitted the underlying facts showing the mistaken identity.[3] In this regard, the ABCMR specifically concluded that Mr. Levy had shown with "sufficient evidence" he was not on active duty for two consecutive six-month periods in 1957 and that the 1959 ABCMR internal memo was "incorrect." Therefore, based on the January 26, 2006 ABCMR determination, the factual basis for Mr. Levy's 1958 separation was clearly erroneous and the resulting separation was wrongful.

Because Mr. Levy now seeks to enforce the January 26, 2006 ABCMR determination which admits the mistaken identity (and hence the wrongful separation), Mr. Levy's present cause of action did not accrue at the time of the 1958 wrongful separation. Rather, Mr. Levy's cause of action accrued on January 26, 2006 when the Army admitted the facts underlying the wrongful separation. The two cases – *Martinez* and *Hurick v. Lehman*, 782 F.2d 984 (Fed. Cir. 1986) cited in Defendant's Motion for the proposition that a claim for wrongful discharge accrues at the time of discharge, are both distinguishable in that neither involved circumstances where the military correction board reached a favorable conclusion that the service member had

[3] In Defendant's Motion, the Government fails to dispute the express finding made by the ABCMR on January 26, 2006 that Mr. Levy presented "sufficient evidence" showing that he was not on active duty for two six-month periods in 1957 and the 1959 ABCMR internal memo was "incorrect." The legal effect of these ABCMR admissions and the Government's failure to deny them is that the Government admits that the underlying factual basis for Mr. Levy's 1958 separation was wrongful.

shown with "sufficient evidence" that the adverse information in his service record that led to his separation was "incorrect."

Accordingly, because Mr. Levy's claim accrued on January 26, 2006 when the ABCMR admitted that the underlying facts upon which his separation was predicated were incorrect, the present action in this Court was filed well within the six-year statute of limitations in 28 U.S.C. § 2501 and in accordance with *John R. Sand & Gravel Co. v. United States*, -- U.S. --, 128 S. Ct. 750 (2008).[4]

B. Mr. Levy states a claim based on a money-mandating statute

Because Mr. Levy received a commission as an officer in the U. S. Army Reserve, he continues to hold the status as a commissioned officer until such time that he is lawfully separated. *See, e.g., Parrish v. Brownlee*, 335 F.Supp.2d 661, 669 (E.D.N.C. 2004) ("Under statutes and regulations governing the status of commissioned officers, plaintiff, as an officer in the IRR who did not resign his commission upon completion of his MSO, remained under the jurisdiction of the Army"). Consequently, because Mr. Levy's 1958 separation was wrongful and he has not resigned his commission or otherwise been separated, he has maintained his status as a commissioned officer in the U.S. Army Reserve.

Because he has continued to maintain a commission as a reserve officer, Mr. Levy is subject to the statutory requirements concerning length of service requirements for commissioned officers. In this context, 10 U.S.C. § 14515 provides that a reserve officer in an inactive status who reaches the maximum age for the officer's grade, is by operation of law

[4] As discussed later in the Memorandum in Opposition, Mr. Levy has a statutory entitlement to retired pay. Because the Government has not paid any retirement benefits to Mr. Levy in violation of its statutory obligation, the Government's continuing failures have resulted in continuing statutory violations. In this context, the D.C. Circuit has consistently held that continuing violations are not subject to the six-year statute of limitations in 28 U.S.C. § 2501. *See Wilderness Society v. Norton*, 434 F.3d 584, 588 (D.C. Cir. 2006) and *In Re United Mine Workers*, 190 F.3d 545 (D.C. Cir. 1999). Moreover, even if the six-year statute of limitations did apply and even if Mr. Levy's cause of action did not accrue on January 26, 2006, the statute would only have barred recovery of retirement benefits owed Mr. Levy prior to six years before the lawsuit was filed.

transferred to the Retired Reserve.[5] For officers below the pay grade of brigadier general or rear admiral (lower half), the maximum age specified in 10 U.S.C. § 14509 is 62 years of age. As a result, a reserve officer in an inactive status who reaches age 62 is transferred by operation of law (10 U.S.C. § 14515) to the Retired Reserve.

For service members in the Retired Reserve, 10 U.S.C. § 12731(a) states, in pertinent part, "(a) Except as provided in subsection (c), a person is entitled, upon application, to retired pay computed under section 12739 of this title…"

Significantly, 10 U.S.C. § 12731 provides an affirmative entitlement to retired pay to members of the Retired Reserve. Because Mr. Levy, upon reaching age 62, was transferred by operation of law to the Retired Reserve, he has an entitlement to retired pay that has accrued since his 62nd birthday. Accordingly, the money-mandating statutes that serve to confer subject matter jurisdiction in this case are 10 U.S.C. §§ 12731, 14509 and 14515.[6]

---

[5] 10 U.S.C. § 14515 states, in pertinent part: "Each reserve officer of the Army, Navy, Air Force, or Marine Corps who is in an active status or on an inactive-status list and who reaches the maximum age specified in section 14509, 14510, 14511 or 14512 of this title for the officer's grade or position shall (unless the officer is sooner separated or the officer's separation is deferred or the officer is continued in an active status under another provision of law) not later than the last day of the month in which the officer reaches that maximum age —

(1) be transferred to the Retired Reserve if the officer is qualified for such transfer and does not request (in accordance with regulations prescribed by the Secretary concerned) not to be transferred to the Retired Reserve;"

[6] Where an Officer's career is prematurely terminated, a court can consider what the officer's normal career progression would have been but for the wrongful termination. In *Kelly v. Panama Canal Commission*, 26 F.3d 597(5th Cir. 1994), an Army Captain was killed in a recreational accident and his widow sued for wrongful death seeking lost future pay. After the District Court found that Captain Kelly would have remained in the Army, but based its damage award on the officer's rank and pay at the time of his death (i.e., captain), his widow appealed. On appeal, the Fifth Circuit remanded the damage award stating, "If the district court concluded that Kelly would remain in the military until age sixty, the court should have used earnings based on his probable rank during the likely progression of his military career." *Id*., 26 F.3d at 602. On remand, the District noted that the Fifth Circuit "ordered that lost support be recalculated using a likely career progression of Kelly's career." *Kelly v. Panama Canal Commission*, 1994 WL 643132, *1 (E.D. La., November 14, 1994). The District Court then accepted an expert report indicating "Kelly would have had a normal career progression in his military career, and would have been promoted to major on January 1, 1990, to lieutenant colonel on January 1, 1996, and to colonel on January 1, 2001… His lost active duty income is thus comprised of six years' of major's wages, five years' of lieutenant colonel's wages, and three years' of a colonel's wages." *Id*., 1994 WL 643132 at *2.

C. Mr. Levy's claim is not barred by laches

During the period 1957 to 1962, Army Regulation 640-98 imposed an affirmative legal obligation on the Army concerning the inclusion of adverse information in an officer's service record.[7] Significantly, the Army never provided Mr. Levy with copies of either the 1957 officer efficiency reports or the 1959 internal memorandum, which are the key documents that served as the factual basis for his purported separation from the Army. Based on the facts, it is evident that the Army clearly violated Army Regulation 640-98 in three respects. First, by the inclusion in Mr. Levy's service record of handwritten notes authored by an anonymous person. Second, by the failure to ever provide copies of these documents to Mr. Levy. Third, by the failure to ever afford Mr. Levy the opportunity to respond. Without affording Mr. Levy the opportunity to respond to these documents, all of them should have been excluded from his official personnel file.[8]

The Army's conduct in this case violated the law by including the erroneous information in Mr. Levy's service record, in failing to timely provide Mr. Levy with copies of the erroneous information, in using the erroneous information as a basis to prematurely terminate Mr. Levy's

---

Subsequently, the District Court's decision was affirmed. *Kelly v. Panama Canal Commission*, 66 F.3d 323 (5th Cir. 1995).

As a result, based on *Kelly*, this Court has discretion to consider that, but for the Army's wrongful separation, Mr. Levy would have had a normal military career progression in the Army Reserve, i.e., promotions to Captain, Major, Lieutenant Colonel and Colonel. However, it is evident that Mr. Levy was denied these opportunities based on the Army's wrongful conduct that resulted in Mr. Levy's wrongful separation.

[7] Army regulations carry the force and effect of law. *See Westmoreland v. Laird*, 364 F.Supp. 948, 951 (D.N.C. 1973) ("An administrative regulation promulgated within the authority granted by statute has the force of law and will be given full effect by the courts, and a violation of a valid administrative regulation, even by the authority promulgating same, constitutes in legal effect a violation of the statute"). Moreover, the Army is bound to follow its own regulations. *See Lovallo v. Froehlke*, 346 F.Supp. 1037, 1041 (D.N.Y. 1972) ("Generally speaking, the Army must follow its own rules and regulations"). Finally, if the Army violates its own regulations, it violates the service member's right to due process. *See Antonuk v. United States*, 445 F.2d 592, 595 (7th Cir. 1971) ("violation by the military of its own regulations constitutes a violation of an individual's right to due process of law").

[8] The Army continues to be in violation of its own regulation because, to the best of plaintiff's knowledge, these documents have not yet been removed from Mr. Levy's official personnel file.

military career, and then failing to afford any relief to Mr. Levy because "he should have asked for this information in 1959." However, the Army's position begs the question of how could Mr. Levy have known in 1959 to ask for copies of documents that he did not even know existed, which should not have been included in his personnel file in the first place, and whose existence was affirmatively concealed from him by the Army in violation of AR 640-98? In sum, the Government's conduct in this matter can only be described as outrageous.

A court may decline to exercise its equitable powers in favor of a party whose "unconscionable act ... has immediate and necessary relation to the matter that he seeks in respect of the matter in litigation." *Keystone Driller Co. v. General Excavator Co*., 290 U.S. 240, 245, 54 S. Ct. 146, 147, 78 L.Ed. 293 (1933). The doctrine of "unclean hands" bars a party who acted inequitably from obtaining equitable relief. *Wyeth v. Natural Biologics, Inc*., 395 F.3d 897, 902 (8th Cir. 2005). In *PenneCom B.V. v. Merrill Lynch & Co., Inc*., 372 F.3d 488, 493 (2nd Cir. 2004), the Court stated, "The Supreme Court, explaining the rationale behind the doctrine of unclean hands, has stated that '[t]he equitable powers of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abettor of iniquity.' *Bein v. Heath,* 47 U.S. 228, 247, 6 How. 228, 12 L.Ed. 416 (1848)".

Based on the Army's illegal and indefensible conduct, it is unfathomable that the Government would seek an equitable remedy. Based on the Army's failure to comply with its own regulation, AR 640-98, and the affirmative concealment of the erroneous information in Mr. Levy's service record, it is apparent that the Army has unclean hands. As a result, Mr. Levy's claim cannot be barred by the doctrine of laches.

## Conclusion

Based on the foregoing, plaintiff prays the Court deny the Motion to Dismiss, find that the Government's positions set forth in the Motion to Dismiss are not substantially justified, award

Mr. Levy his costs and attorneys' fees in defending the Motion to Dismiss, and for such further relief the Court deems just and appropriate.

Respectfully submitted,

s/Gilbert J. Ginsburg
Attorney and Counselor at Law
1250 24th Street NW, Suite 350
Washington, DC 20037
Tel: (202) 776-7772
Fax: (202) 776-7773
E-mail: gilgins@aol.com

Counsel for Mathew Levy

Dated: June 2, 2008

OF COUNSEL:

Timothy Sullivan
Stephen Jeffery
Thompson Coburn LLP
1909 K Street NW, Suite 600
Washington, DC 20006