# In the United States Court of Federal Claims

**No. 07-829C**
**Filed: August 8, 2008**

* * * * * * * * * * * * * *

**MATHEW LEVY,** *
**Plaintiff,** *

**v.** * **Military Pay; Jurisdiction; Statute of Limitations; Equitable Tolling.**

**UNITED STATES,** *
**Defendant.** *

* * * * * * * * * * * * * *

**Gilbert J. Ginsburg**, Washington, D.C., for the plaintiff.

**Roger A. Hipp**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were **Gregory G. Katsas**, Acting Assistant Attorney General, **Jeanne E. Davidson**, Director, and **Donald E. Kinner**, Assistant Director, Commercial Litigation Branch.

## O P I N I O N

**HORN, J.**

## FINDINGS OF FACT

After four attempts, plaintiff Mathew Levy and his attorney have filed a complaint[1] seeking to recover accrued, military reserve, retirement benefits pursuant to 10 U.S.C. §

---

[1] The complaint has been amended three times since its initial filing. Initially, plaintiff's counsel filed a complaint pursuant to the Administrative Procedure Act (APA), with incorrect citations, even though jurisdiction for APA review is not properly lodged in this court. In the First Amended Complaint, plaintiff's counsel again tried to rely on an improper jurisdictional basis by citing to the Military Pay Act, 37 U.S.C. § 204 (2000), which does not apply to members of the United States Army Reserve, such as plaintiff. In the Second Amended Complaint, counsel finally cited to proper jurisdictional statutes. The Third Amended Complaint was allowed to correct inconsistencies in the text and to make the complaint conform to the filing rules of the court. Even now, the numerous

12731 (2000), 10 U.S.C. § 14509 (2000), and 10 U.S.C. § 14515 (2000), allegedly "arising from the Army's premature and unlawful termination of Plaintiff's military career." Plaintiff seeks retirement pay from November 23, 1988, when plaintiff reached 62 years of age, based on qualifying years of service that he would have completed had he not been discharged from the United States Army Reserve in 1958.

In response, the government has filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). Defendant contends that plaintiff's claims began to accrue on the date he was discharged from the Army Reserve on September 18, 1958, resulting in the expiration, on September 17, 1964, of the applicable six-year statute of limitations, pursuant to 28 U.S.C. § 2501 (2000). Defendant also raises the United States Supreme Court decision in John R. Sand & Gravel Company v. United States, 128 S. Ct. 750 (2008), as barring plaintiff's equitable tolling argument. Defendant argues that even if equitable tolling were available to this plaintiff, his case would be barred by the statute of limitations based on binding precedent, and because plaintiff was aware of all the facts giving rise to his claim no later than June 2001 (not October 30, 2002, as plaintiff asserts). Thus, even if equitable tolling were to apply, at the latest, the six-year statute of limitations expired in June 2007, four months before the complaint was filed in this court on November 27, 2007. Additionally, the defendant asserts that the doctrine of laches would preclude the plaintiff from bringing this case forty-nine years after the plaintiff was discharged from the military, although defendant makes an odd suggestion in this administrative review case, that the United States would be prejudiced due to destroyed records and unavailable witnesses "if this case were to proceed to trial."

---

attachments to plaintiff's complaint are poorly organized, some are not relevant to plaintiff's case, and others are extremely poor copies and difficult to read. Although the court has allowed plaintiff's counsel to revise the complaint in order not to penalize the plaintiff, the multiple failures on part of counsel to pay attention to the requirements for filing have wasted the time of both the court and the defendant. Had the court understood at the time that the plaintiff had previously brought at least four repetitive appeals to the Army Board for Corrections of Military Records (ABCMR), that his requests for Board review had been denied four previous times, and that his current arguments were based on various iterations of equitable tolling, perhaps it would have been less willing to allow the revisions to plaintiff's counsel's filings.

Courts and agency review boards are responsible for many cases and this type of inattention to detail and repetitive, wasted litigation has a serious impact on other litigants by taking up valuable time and energy. This case, brought by the plaintiff and litigated by counsel, should have been evaluated regarding its merits before filing. It is this court's hope that further litigation can be avoided, once the issues are explained again to Mr. Levy. Counsel should have understood, even before filing the complaint, the legal and factual conclusions set forth in this opinion, and certainly no Equal Access to Justice Act award, as requested in plaintiff's complaint, is appropriate.

The complaint states that plaintiff joined the United States Army Reserve on November 18, 1944. From February 4, 1945 through November 4, 1946, Mr. Levy served on active duty as an enlisted member. On October 1, 1949, he was commissioned as a Second Lieutenant in the United States Army Reserve. On June 29, 1953, Mr. Levy was promoted to First Lieutenant. Between July 14 and July 28, 1957, plaintiff was on active duty for training at the New York Procurement District in New York, NY. The complaint states that after plaintiff's active duty for training in July 1957, he was found to be fully qualified for promotion to captain by his rating officer in September 1957, but was not selected for promotion that year. After an additional two-week period of active duty for training from June 29 to July 13, 1958, plaintiff's rating officer again found him to be qualified for promotion, but again the selection board reconsidered and rejected Mr. Levy for promotion to captain. According to the complaint, because "Army regulations in effect in 1957 and 1958, AR 135-155, required that an officer be discharged from the Officer Reserve Corps if he was passed over twice by a selection board," on September 18, 1958, plaintiff received an honorable discharge from the Army Reserve.

The complaint states that, later that year, in 1958, plaintiff applied to the ABCMR for reinstatement into the Army Reserve. A memorandum dated January 13, 1959, which is in the record, indicated that the ABCMR requested the Adjutant General to notify the plaintiff that his application for reinstatement had been denied on January 7, 1959 because "insufficient evidence has been presented to indicate probable material error or injustice." The record does not contain a copy of the January 7, 1959 ABCMR decision.

According to the complaint, in February 1959, Mr. Levy contacted United States Senator Jacob K. Javits, requesting his assistance to determine the cause for plaintiff's failure to be promoted to captain. Senator Javits asked the Army to provide a report regarding plaintiff's non-selection. The Acting Adjutant General replied in a letter dated February 27, 1959, stating that plaintiff had been discharged pursuant to Army regulations because he had been non-selected for promotion twice. The letter also stated that the specific reasons for plaintiff's non-selection were not known outside the selection board "because the board is not permitted to divulge such information."

The narrative in plaintiff's complaint about actions taken by him relevant to his quest, restarts thirty-eight years later, in October 1997, when, according to the complaint, plaintiff's attorney at the time, Paul Croushore, requested assistance from Congressman John Kasich to obtain retirement benefits for Mr. Levy. On January 4, 1999, Congressman Kasich received a letter from the National Personnel Records Center (NPRC), stating that plaintiff's service record, which he had requested, likely had been destroyed in a fire at the NPRC on July 12, 1973. According to the letter, the fire destroyed a major portion of Army military personnel records for the period 1912 to 1959, and plaintiff's service record would have been filed in the area where most of the fire damage occurred. The letter stated, however, that the NPRC was able to obtain some service record data for plaintiff from alternate record sources, in order to partially reconstruct plaintiff's service record. Attached to the NPRC letter were the following

documents: 1) an undated letter from the Adjutant General, notifying plaintiff that his application for reinstatement to the Army Reserve had been denied by the ABCMR on January 7, 1959;[2] 2) the January 13, 1959 internal memorandum from an ABCMR examiner to the ABCMR Executive Secretary; 3) a January 2, 1959 ABCMR memorandum; and 4) an anonymous, unsigned, undated handwritten note.

According to an exhibit attached to the complaint, plaintiff's first attorney, Mr. Croushore, prepared and signed an affidavit, dated June 1, 2001, attesting to the fact that the documents from the NPRC were in the same condition and order in which the attorney had received them from Congressman Kasich's office. The complaint also states that plaintiff was sent the affidavit and the attached documents "shortly after it was executed, in June 2001," although there is no documentation in the record showing the date of receipt by plaintiff.

In the January 2, 1959 memorandum from the ABCMR examiner to the ABCMR Executive Secretary, the examiner recommended that the ABCMR deny plaintiff's application for reinstatement. Specifically, the January 2, 1959 memorandum stated:

> His efficiency reports indicate that he was considered fully qualified for promotion by his rating officer on 16 Sep 57. However, he was on active duty for training for two consecutive 6-months Periods beginning 1 Jan 57 through 31 Dec 57, and his rating officer on 21 Jan 58 felt that he had not demonstrated potential for promotion despite his opportunity to do so. The rating officer who rendered the favorable report on him in Sep 57, again considered appl [sic] qualified for promotion on 21 Jul 58, after appl [sic] had served on a 2-week tour of active duty for training.

Plaintiff also states in his complaint that he was unaware of the "adverse information" mentioned in the January 2, 1959 ABCMR memorandum, which he characterizes as an "erroneous Officer Efficiency Report ('OER')." Plaintiff's complaint addresses the negative adverse information somewhat differently in two separate paragraphs of his complaint. Paragraph 9 of the complaint states:

> The Army failed to ever provide Plaintiff with copies of the adverse information contained in (a) the erroneous Officer Efficiency Report ("OER"), and (b) the executive memorandum to the Army Board for Correction of Military Records ("ABCMR") that referenced the false and

[2] In his complaint, plaintiff alleges that the date of this document is October 31, 1958. This is not possible, however, as the letter was intended to notify plaintiff of the ABCMR's January 7, 1959 decision, not to reinstate plaintiff into the Army Reserve, which was issued after October 31, 1958, the date that plaintiff claims the letter was written.

> erroneous information and which recommended denial of Plaintiff's ABCMR appeal.

Paragraph 33 of the complaint states:

> At no time was Plaintiff ever provided by the Army with a copy of any OER showing he was on active duty from January 1 to December 31, 1957 or with a copy of the handwritten notes or with a copy of the erroneous internal ABCMR January 2, 1959 memorandum, and Plaintiff was unaware of the existence of such documents.

There is no negative OER included in the record before the court, nor can the court be sure one ever existed. The January 2, 1959 ABCMR memorandum indicated a rating officer felt that plaintiff had not demonstrated promotion potential during his active duty for training assignment, but whether that comment was included in a formal OER or in some other form of memoranda is not established.

Paragraph 33 of the complaint also refers to undated "handwritten notes," which appears to be a reference to another exhibit in the record, also included in the partially reconstructed record turned over to Congressman Kasich in 1999. This exhibit is a single page, undated, anonymous, hand-scrawled note which is in part illegible, and which refers to the same one-year active duty for training assignment as in the January 2, 1959 memorandum, which should have been referred to as only a two-week assignment in 1957.

The complaint states that, after receiving the documents from the NPRC, on December 17, 2001, plaintiff's attorney at the time, Mr. Croushore, wrote a letter to the Army Review Boards Agency, asking it to reconsider the ABCMR's 1959 denial of plaintiff's request to correct his military records, and attaching the documents obtained from the NPRC. Mr. Croushore's letter alleged that the ABCMR had reached their decision in 1959 after reviewing plaintiff's "erroneous file." Plaintiff's attorney alleged that "some other officer's documents were placed in then-Lieutenant Levy's file, with the result that he was passed over for promotion, and ultimately discharged." The alleged errors were claimed to be in the undated, anonymous handwritten note and the January 2, 1959 ABCMR memorandum, included in plaintiff's reconstructed service record. Both documents indicated that plaintiff had been on active duty for training for a full year in 1957, instead of a two-week period in 1957, and the January 2, 1959 ABCMR memorandum additionally referred to the adverse appraisal of plaintiff's active duty for training assignment in 1957. According to the December 17, 2001 letter from Mr. Croushore to the ABCMR, if the plaintiff had been privy to the January 2, 1959 ABCMR memorandum and the anonymous handwritten note at the time they were added to his service record, plaintiff could have informed the ABCMR of the error in his file and responded to the adverse information. It is unknown, however, whether the January 2, 1959 memorandum and the anonymous, handwritten note were in the plaintiff's service file at the time of the promotion boards' or the ABCMR's review, or when these

documents may have been added, especially given the reconstructed nature of Mr. Levy's file.

In response to plaintiff's December 17, 2001 letter, it appears that on May 28, 2002, Carl Chun, Director of the ABCMR, wrote a letter to the plaintiff, denying Mr. Levy's request for reconsideration of the 1959 Board decision not to correct plaintiff's military records, although this letter is not in the record before the court. On October 30, 2002, plaintiff himself responded in a letter to the Director of the ABCMR, which is attached to the complaint. Plaintiff's October 30, 2002 letter again requested that the ABCMR reevaluate the documents found in his reconstructed service record. In the October 30, 2002 letter, plaintiff stated that his promotion board "obviously" saw the anonymous handwritten note, because the note had been part of his reconstructed service records obtained from the Army, in response to Congressman Kasich's request. Plaintiff further stated that evidence such as pay and tax records from 1957 existed to prove that plaintiff had been on active duty for only two weeks in 1957, and not for the full year alleged by the anonymous handwritten note and the January 2, 1959 ABCMR memorandum. According to plaintiff October 30, 2002 is the date that plaintiff alleges, both in his complaint and in motions for reconsideration previously made by plaintiff to the ABCMR, as the date when he made the discovery that his service record contained errors and that the ABCMR's 1959 decision not to correct his service record was based on false information. To the contrary, however, plaintiff's complaint also acknowledges that he received the allegedly incorrect documents in June 2001 from his attorney at the time, Mr. Croushore.

In a letter dated July 7, 2003, the Director of the ABCMR, Carl Chun, indicated that plaintiff's request had been denied. He further indicated that ABCMR decisions, including reconsiderations, generally only can be reviewed more than one year following the original decision, "[i]f substantial relevant evidence has been submitted that shows fraud, mistake in law, mathematical miscalculation, manifest error, or if there exists substantial relevant new evidence discovered contemporaneously with or within a short time after ABCMR's original decision." The letter stated that the fact that the unsigned, undated note was in plaintiff's file was insufficient to determine that the promotion board had considered it at the time of his second non-selection in 1958. Mr. Chun wrote that the ABCMR had determined that there was "no relevant new evidence or argument with your current submission that was not previously considered by the ABCMR," and that because there was no further basis for resubmitting plaintiff's request, the matter would be administratively closed.

The next chronological reference in the complaint, two years later, is to a June 10, 2005 letter with attached documents from plaintiff's current counsel, Gilbert Ginsburg, to Karl Schneider, Director of the Army Review Board Agency, which again requested that plaintiff's service record be corrected. The ABCMR issued a decision on January 26, 2006, denying plaintiff's application for the third time. The January 26, 2006 ABCMR decision stated that the decision to deny plaintiff's application for correction to his military records was dictated by 10 U.S.C. § 1552(b) (2000), pursuant to which plaintiff's application for correction to his military records should have been filed within

three years of the discovery of the supposed error or injustice, but was not. The decision went on to review plaintiff's application to determine whether excusing plaintiff's lack of timeliness would be in the interests of justice. The decision noted that although some of plaintiff's records had been destroyed in a fire, "there were sufficient documents remaining in a reconstructed record for the Board to conduct a fair and impartial review of this case."

The January 26, 2006 ABCMR decision concluded that, although the ABCMR examiner in the January 2, 1959 ABCMR memorandum incorrectly noted that plaintiff had been on active duty for all of 1957, and plaintiff alleged that he did not understand the significance of the errors until October 30, 2002, it was not "in the interests of justice to waive the statute of limitations," pursuant to 10 U.S.C. § 1552(b). Therefore, according to ABCMR, the statute of limitations for relief had expired in 1962. The decision also stated:

> Nevertheless, the error in the 2 January 1959 memorandum, whether obtained from an error in the applicant's records or a clerical error on the part of the ABCMR's staff, does not negate the fact it is not known why the applicant was not selected for promotion to captain. Promotion boards at the time, as currently, do not leave a written record of why an officer is selected or not selected for promotion. It cannot even be determined at this point in time if the criteria for promotion to captain during the two boards he was considered but not selected was "fully qualified" or "best qualified."

The decision further stated that, in 1959, plaintiff's complete service record would have been more readily available. In sum, the January 26, 2006 ABCMR decision finally concluded that there was not enough compelling evidence to warrant excusing the failure to file a timely application, and that, on the merits, the case lacked sufficient basis for correction.

Plaintiff states in his complaint that he filed another motion for reconsideration on August 29, 2006, reiterating many of his previous concerns. The August 29, 2006 motion for reconsideration restated that plaintiff had been unaware of the existence of the January 2, 1959 ABCMR memorandum containing the erroneous information about plaintiff's active duty for training assignment in 1957 and, therefore, "he could not have reasonably discovered the error earlier than he did," allegedly on October 30, 2002. Plaintiff's August 29, 2006 motion for reconsideration was denied on November 28, 2006, on the basis that plaintiff's request for reconsideration should have been received within one year of the ABCMR's original 1959 decision. The November 28, 2006 letter notified plaintiff that the Board "will not consider any further requests for reconsideration," but that plaintiff had an option to file suit in the appropriate court with jurisdiction.

The relief sought in the final revision of the complaint, the third amended complaint, is for this court to "reverse and remand" this matter to the ABCMR with

direction to: 1) grant plaintiff's request for reconsideration and reverse the January 1959 ABCMR decision; 2) reinstate plaintiff as an officer in the Army Reserve and expunge any records reflecting wrongful separation; 3) convene a special selection board to consider plaintiff for promotion to Captain, Major, Lieutenant Colonel and Colonel in the ordinary course, when plaintiff would have been eligible for these promotions had he not been wrongfully discharged from the Army Reserve;[3] and 4) acknowledge plaintiff's entitlement to retire from the Army Reserve with at least twenty qualifying years of service as of November 23, 1988, when the plaintiff reached the age of sixty-two. Plaintiff requests that this court grant him retirement benefits from November 23, 1988 to the present, in at least the amount of $273.00 per month, the retirement pay of a first lieutenant, plus interest from that date. Plaintiff also asks that the court adjust the retirement pay to those amounts received by the higher ranks to which plaintiff would have been promoted had he stayed in the Army Reserve. Finally, plaintiff seeks "reasonable attorneys fees and costs under the Equal Access to Justice Act." As noted above, defendant filed a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1).

## DISCUSSION

Subject matter jurisdiction may be challenged at any time by the parties and by the court sua sponte. Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); Fanning, Phillips, Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998) (quoting Booth v. United States, 990 F.2d 617, 620 (Fed. Cir.), reh'g denied (Fed. Cir. 1993)); United States v. Newport News Shipbuilding & Dry Dock Co., 933 F.2d 996, 998 n.1 (Fed. Cir. 1991); North Star Alaska Hous. Corp. v. United States, 76 Fed. Cl. 158, 185, appeal dismissed, 226 F. App'x 1004 (Fed. Cir. 2007). "In fact, a court has a duty to inquire into its jurisdiction to hear and decide a case." Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001) (citing Johannsen v. Pay Less Drug Stores N.W., Inc., 918 F.2d 160, 161 (Fed. Cir. 1990) and View Eng'g, Inc. v. Robotic Vision Sys., Inc., 115 F.3d 962, 963 (Fed. Cir. 1997) ("[C]ourts must always look to their jurisdiction, whether the parties raise the issue or not.")).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff must state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends . . . ." RCFC 8(a)(1); Fed. R. Civ. P. 8(a)(1). When deciding a case based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327-28 (Fed. Cir. 2006); Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir.

[3] In this prayer for relief, plaintiff, at the age of 81, admirably states that he "still is prepared to attend the Command and General Staff College in order to qualify for promotion to full Colonel."

2002), cert. denied, 538 U.S. 906 (2003); Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002); Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1338 (Fed. Cir. 2001) (quoting New Valley Corp. v. United States, 119 F.3d 1576, 1580 (Fed. Cir.), reh'g denied and reh'g en banc denied (Fed. Cir. 1997)), cert. denied, 535 U.S. 1096 (2002); Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000).

In its motion to dismiss for lack of subject matter jurisdiction, the defendant argues that plaintiff is barred from bringing this suit under the applicable statute of limitations. Suits against the United States are subject to a six-year statute of limitations pursuant to 28 U.S.C. § 2501. This statute sets an express limitation on the jurisdiction granted to this court under the Tucker Act. See Martinez v. United States, 333 F.3d 1295, 1304 (Fed. Cir. 2003); Franconia Assocs. v. United States, 240 F.3d 1358, 1362 (Fed. Cir. 2001), rev'd on other grounds, 536 U.S. 129 (2002); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1376-77 (Fed. Cir. 1998); Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1454 (Fed. Cir. 1997); Hart v. United States, 910 F.2d 815, 817 (Fed. Cir. 1990) (citing Soriano v. United States, 352 U.S. 270, 273-74 (1957)); Holloway v. United States, 60 Fed. Cl. 254, 256 (2004), aff'd, 143 F. App'x 313 (Fed. Cir.), cert. denied, 546 U.S. 876 (2005). The six-year time bar on actions against the United States is "jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491(a)(1)." Caguas Cent. Fed. Sav. Bank v. United States, 215 F.3d 1304, 1310 (Fed. Cir. 2000), cert. denied, 531 U.S. 1070 (2001); see also Block v. North Dakota, 461 U.S. 273, 287 (1983); Martinez v. United States, 333 F.3d at 1316; Frazer v. United States, 288 F.3d 1347, 1351 (Fed. Cir. 2002); Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d at 1454; Holloway v. United States, 60 Fed. Cl. at 256. Because the statute of limitations affects this court's subject matter jurisdiction, the requirement is strictly construed. Alder Terrace, Inc. v. United States, 161 F.3d at 1376-77; Holloway v. United States, 60 Fed. Cl. at 256; Martinez v. United States, 48 Fed. Cl. 851, 857 (2001), aff'd in part, 281 F.3d 1376 (Fed. Cir.), reh'g denied (Fed. Cir. 2002); Entines v. United States, 39 Fed. Cl. 673, 678 (1997), aff'd, 185 F.3d 881 (Fed. Cir.) (table), cert. denied, 526 U.S. 1117 (1999); McDonald v. United States, 37 Fed. Cl. 110, 113 (1997), aff'd, 135 F.3d 778 (Fed. Cir. 1998) (table). The start date to begin a statute of limitations calculation for a claim against the United States is "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment . . . .'" Martinez v. United States, 333 F.3d at 1303 (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240, 368 F.2d 847, 851 (1966), reh'g denied, 184 Ct. Cl. 390, 396 F.2d 977 (1968)); Franconia Assocs. v. United States, 240 F.3d at 1362; Alder Terrace, Inc. v. United States, 161 F.3d at 1377; Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988); Lins v. United States, 231 Ct. Cl. 579, 582, 688 F.2d 784, 786 (1982), cert. denied, 459 U.S. 1147 (1983); Oceanic Steamship Co. v. United States, 165 Ct. Cl. 217, 225 (1964); Holloway v. United States, 60 Fed. Cl. at 256. The statute of limitations for a particular plaintiff begins to "run from the date the plaintiff 'knew or should have known of the claim.'" Oja v. Dep't of Army, 405 F.3d 1349, 1358 (Fed. Cir. 2005) (quoting United States v. Beggerly, 524 U.S. 38, 48-49 (1998)), reh'g and reh'g en banc denied (Fed. Cir. 2005).

The plaintiff has the burden of proving that this court has subject matter jurisdiction, including that his claim is timely. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Sanders v. United States, 252 F.3d 1329, 1333 (Fed. Cir. 2001); Alder Terrace Inc. v. United States, 161 F.3d at 1376-77; Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

An action challenging discharge from military service accrues immediately upon discharge. Young v. United States, 529 F.3d 1380, 1383 (Fed. Cir. June 25, 2008); Martinez v. United States, 333 F.3d at 1303, 1310; Hurick v. Lehman, 782 F.2d 984, 986 (Fed. Cir. 1986); Bonen v. United States, 229 Ct. Cl. 144, 148, 666 F.2d 536, 539 (1981), cert. denied, 456 U.S. 991 (1982); Joseph v. United States, 62 Fed. Cl. 415, 417 (2004); Holloway v. United States, 60 Fed. Cl. at 256. The plaintiff's cause of action for back pay accrues at the time of that discharge. See Martinez v. United States, 333 F.3d at 1303; Bowen v. United States, 292 F.3d 1383, 1386 (Fed. Cir. 2002); Kirby v. United States, 201 Ct. Cl. 527, 531 (1973), cert. denied, 417 U.S. 919 (1974); Joseph v. United States, 62 Fed. Cl. at 417. Furthermore, because resort to a correction board is not mandatory in military pay cases, but rather permissive, application to a correction board is not required before challenging a wrongful discharge in the United States Court of Federal Claims, generating a date-of-discharge rule for the start of accrual of the statute of limitations in wrongful discharge cases. Chambers v. United States, 417 F.3d 1218, 1224 (Fed. Cir. 2005).

Under the date-of-discharge rule established by the United States Court of Appeals for the Federal Circuit, which plaintiff does not dispute as the general rule, improper military discharge claims are subject to the six-year statute of limitations, pursuant to 28 U.S.C. § 2501. See Martinez v. United States, 333 F.3d at 1303, 1310. The complaint states that Mr. Levy was honorably discharged from the Army Reserve on September 18, 1958, for being non-selected twice for promotion, as required by Army Regulations. Because this is a military pay case seeking retirement pay, the applicable start date for accrual of the statute of limitations regarding Mr. Levy's claims is the date of his actual discharge from the Reserves, September 18, 1958. If Mr. Levy had wanted to file a claim for wrongful discharge in this court, he should have filed his claim no later than six years after that date, September 17, 1964.

Despite the rulings in John R. Sand & Gravel Co. v. United States, 128 S. Ct. 750, and Young v. United States, 529 F.3d 1380, discussed below,[4] plaintiff's counsel

---

[4] John R. Sand & Gravel Co. v. United States, 128 S. Ct. 750, and Young v. United States, 529 F.3d 1380, were both decided after plaintiff filed his complaint, one shortly thereafter, one more recently. In response to defendant's motion to dismiss, which raises the John R. Sand & Gravel Co. v. United States case, plaintiff's counsel briefly mentions the case, but fails to adequately address it. Neither plaintiff's nor defendant's counsel filed supplemental briefing addressing the Young v. United States decision, once it was issued by the United States Court of Appeals for the Federal Circuit more recently.

nonetheless offers two arguments as to why the date of accrual should not be the date of plaintiff's discharge from the Army Reserve, but should be equitably tolled. With each argument, plaintiff's counsel provides a different date of accrual for plaintiff's claims. Conceptually, equitable tolling "preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." United States v. Patterson, 211 F.3d 927, 930 (5th Cir. 2000) (quoting Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999)). The party invoking the doctrine of equitable tolling bears the burden of proof and must demonstrate "rare and exceptional circumstances" warranting application of the equitable tolling doctrine. Felder v. Johnson, 204 F.3d 168, 170-71 (5th Cir.) (quoting Davis v. Johnson, 158 F.3d at 811), cert. denied, 531 U.S. 1035 (2000); see also Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Seattle Audubon Soc'y v. Robertson, 931 F.2d 590, 595 (9th Cir. 1991) (equitable estoppel may be appropriate when plaintiffs were prevented from asserting their claims by some wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file the claims on time), rev'd on other grounds, 503 U.S. 429 (1992). Equitable tolling amounts to a further waiver of sovereign immunity, and although available in some cases against or brought by the United States, it must be narrowly applied based on the facts of the specific case and granted only in "rare and extraordinary circumstances." See United States v. Patterson, 211 F.3d at 931-32 (in which the court granted equitable tolling of a statute of limitations to a defendant in a criminal action to file his 28 U.S.C. § 2255 motion).

Under recent precedent, the United States Supreme Court, on January 8, 2008, and the United States Court of Appeals for the Federal Circuit, on June 25, 2008, however, have indicated that equitable tolling is not available at all in Tucker Act cases. See John R. Sand & Gravel Co. v. United States, 128 S. Ct. at 755; Young v. United States, 529 F.3d at 1384. In John R. Sand & Gravel Co. v. United States, the United States Supreme Court wrote about the absolute nature of the limitations statute applied in this court's predecessor court, the United States Court of Claims, and reiterated the same rule for this court. The rule articulated is that the limitations period in 28 U.S.C. § 2501 is jurisdictional in Tucker Act cases, "and not susceptible to equitable tolling." Id. at 755. More recently, the United States Court of Appeals for the Federal Circuit, in Young v. United States, wrote:

> [T]he Supreme Court decided John R. Sand & Gravel Co. v. United States, 128 S. Ct. 750, 169 L. Ed. 2d 591 (2008), holding that the statute of limitations applicable to Tucker Act claims, 28 U.S.C. § 2501, is jurisdictional and not susceptible to equitable tolling. Id. at 753-57. The John R. Sand & Gravel decision resolved a question that had been left open in the en banc Martinez decision. See Martinez, 333 F.3d at 1318. . . . To the extent that Mr. Young is seeking equitable tolling, such relief is foreclosed by John R. Sand & Gravel, wherein the Court held that the Tucker Act's statute of limitations is in the "more absolute" category that cannot be waived or extended by equitable considerations. 128 S. Ct. at 753-54.

Young v. United States, 529 F.3d at 1384.

Plaintiff briefly acknowledges the Sand case, and implies that it does not reach Mr. Levy's claims. In this regard, the United States Supreme Court has held that: "When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." Harper v. Virginia Dep't of Taxation, 509 U.S. 86, 97 (1993); see also Amado v. Microsoft Corp., 517 F.3d 1353, 1364 (Fed. Cir. 2008). The United States Court of Appeals for the Federal Circuit followed this principle in deciding Young v. United States, 529 F.3d at 1384 (applying the Sand standard even though Sand was decided by the United States Supreme Court (on January 8, 2008) after the United States Court of Federal Claims issued a decision (on July 31, 2007), but before the United States Court of Appeals for the Federal Circuit issued a decision on appeal (on June 25, 2008)).

Even if the Sand rule were not to be applied retroactively, the result in this case would be the same. The language of the majority opinion in Sand indicated that the rule against equitable tolling of the statute of limitations for Tucker Act claims in this court is not new, but long-standing. See John R. Sand & Gravel Co. v. United States, 128 S. Ct. at 753-54 ("This Court has long interpreted the court of claims limitations statute as setting forth this second, more absolute, kind of limitations period. . . . Over the years, the Court has reiterated in various contexts this or similar views about the more absolute nature of the court of claims limitations statute." (citing Soriano v. United States, 352 U.S. 270, 273-74 (1957); United States v. Greathouse,166 U.S. 601, 602 (1897); United States v. New York, 160 U.S. 598, 616-19 (1896); De Arnaud v. United States, 151 U.S. 483, 495-96 (1894); Kendall v. United States, 107 U.S. 123, 124-26 (1883)). Thus, the rule requiring adherence to the limitations period and disallowing equitable tolling is not new and would apply to this case even if the decision in Sand were not retroactive, which it is, as noted above.

Plaintiff's counsel also briefly raises the "continuing claim" doctrine, suggesting that the statute of limitations did not extinguish all of Mr. Levy's claims. Plaintiff cites to The Wilderness Society v. Secretary of the United States Department of the Interior, 434 F.3d 584, 587 (D.C. Cir. 2006), which concerned alleged deficiencies in the management of the National Park System. Although the District of Columbia Circuit court found that The Wilderness Society lacked standing, the court also offered its opinion that the National Park Service was in continuing violation of its statutory obligations, and that the claims were not barred by the statute of limitations. Id. at 588-89. Nevertheless, the continuing claim doctrine is not operable under the facts and circumstances of the present case. The United States Court of Appeals for the Federal Circuit stated the continuing claim doctrine as follows:

> In order for the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own

> associated damages. . . . However, a claim based upon a single distinct event, which may have continued ill effects later on, is not a continuing claim.

Wells v. United States, 420 F.3d 1343, 1345 (Fed. Cir. 2005) (quoting Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1456 (Fed. Cir. 1997)) (omission in Wells).

In particular, the Federal Circuit in Wells cited the United States Court of Claims case of Lane v. United States, which involved claims stemming from an allegedly improper discharge from the military. "The court held that it was barred by the statute of limitations, because the claim 'accrue[d] all at once' upon Lane's discharge and he could not file suit more than six years from that date." Wells v. United States, 420 F.3d at 1346 (quoting Lane v. United States, 208 Ct. Cl. 955, 955-56 (1975)). Similarly, the continuing claims doctrine does not assist plaintiff in the present case.

This court agrees that equitable tolling is a doctrine which, as a general rule, should be applied only sparingly and only in extreme cases. Nonetheless, the undersigned finds it unfortunate that the doctrine has become completely unavailable in Tucker Act cases, and that in those extreme cases, relief under the doctrine of equitable estoppel is not in the arsenal of remedies available to the discretion of this court. However, as a matter of course, the court applies the clear precedent dictated by both the United States Supreme Court and the United States Court of Appeals for the Federal Circuit. Thus, this plaintiff's claims are not susceptible to equitable tolling.

Although application of the doctrine of equitable tolling is no longer permitted in this court, in cases such as the one brought by Mr. Levy, what follows in this opinion is an attempt by this court to bring finality to Mr. Levy's seemingly eternal quest for relief. Perhaps if explained to Mr. Levy, despite his attorney's filings to the contrary, he will finally understand that not only has he had multiple opportunities to relitigate his claim, but on the merits, he will not prevail. Generally, it is the role of counsel, as an officer of the court, to insert reality into litigation. Perhaps the balance of this opinion will assist Mr. Levy, as a non-lawyer, to find some peace. For even if equitable tolling applied to this court, Mr. Levy still would not prevail.

Plaintiff's counsel's first equitable tolling argument would have the statute of limitations begin to run on October 30, 2002, the date plaintiff claims in one portion of his complaint was "the first time Plaintiff put together the facts and possible significance of the Government's internal documents," and which suggested to him that his non-selection for promotion may have been based on the erroneous information in his file. Plaintiff's counsel argues that the statute of limitations should be equitably tolled because the Army "failed to provide" (later described in the complaint as "affirmative concealment") the adverse information contained in the anonymous handwritten note and in the adverse appraisal in plaintiff's service record, allegedly in violation of Army

Regulation 640-98 (Nov. 14, 1955).[5] According to the complaint, "the army [sic] violated its own regulation with respect to the establishment of Plaintiff's service record by its failure to notify Plaintiff of the erroneous adverse information in that service record, and by its failing to afford Plaintiff an opportunity to reply to it." Moreover, plaintiff asserts, because plaintiff's two non-selections for promotion were "the proximate result of the inclusion of false and erroneous adverse information in Plaintiff's service record in violation of applicable Army Regulations, the two non-selections were unlawful, [and] did not provide a competent and substantial basis for Plaintiff's compelled separation."[6]

Plaintiff contends that:

> The Army's affirmative concealment of material and relevant facts equitably tolled all applicable statutes of limitations for Plaintiff to bring an action concerning the inclusion of this false and erroneous adverse information until such a time as Plaintiff was made aware of the existence of such material and informed by the Army of its significance.

Plaintiff's allegations of "affirmative concealment" of the erroneous adverse information in his service record are unpersuasive. Moreover, reliance by plaintiff on equitable tolling of the statute of limitations until October 30, 2002 fails, even if equitable tolling were available to this plaintiff, which it is not.[7] The record does not reflect that

---

[5] AR 640-98, sec. II, ¶ 4, states that, "No adverse matter (except . . . ) will be made a part of an individual's record without his knowledge and an opportunity being afforded him either to make a written statement in reply to the adverse information, communication, or report, or to decline, in writing, to make such a statement."

AR 640-98, sec. II, ¶ 6, also states that, "No anonymous communication will be made a part of an individual's record."

[6] The court notes that the adverse information at issue in the January 2, 1959 ABCMR memorandum refers to an appraisal by plaintiff's rating officer on January 21, 1958 that stated that, while on active duty for training, plaintiff "had not demonstrated potential for promotion." This appraisal could not have been reviewed by plaintiff's first promotion board, which, according to the complaint, convened in 1957.

[7] There are a number of inconsistencies in the complaint and in the numerous, disorganized, poorly numbered documents attached to plaintiff's complaint. One example is a statement in plaintiff's August 29, 2006 motion for reconsideration to the ABCMR in which plaintiff states that he "was never furnished a copy of the ABCMR's memorandum of 2 January 1959 . . . until 30 October 2002, when he received his 'reconstructed service record' in response to his Congressman's request.'" This is in direct contradiction to a statement in plaintiff's complaint which claims: "Plaintiff did not see either the National Personnel Records Center letter or the enclosures contained therein prior to June 2001. Plaintiff was sent Mr. Croushore's affidavit with the

the Army was actively involved in concealing any portion of plaintiff's service record from him. Plaintiff contends that, when the Army contacted by Senator Javits on plaintiff's behalf in 1959, the Army was not forthcoming, and did not provide reasons as to why plaintiff was not selected for promotion in 1957 or 1958. The record indicates in the response to Senator Javits' inquiry, as well as elsewhere in the record, that promotion boards at the time when plaintiff was eligible for selection, as well as now, do not retain written records with reasons as to why an officer is or is not selected for promotion. Furthermore, the record does not indicate that plaintiff made any attempt to obtain his service record from the Army in 1958 at the time of his discharge, or even when plaintiff sought Senator Javits' assistance in 1959 to determine why he was not promoted. This court agrees with the ABCMR in its January 26, 2006 decision that plaintiff had opportunities to request his service record close to the date of his discharge, or in the time following the 1959 ABCMR decision. Any information, adverse or otherwise, in his record would have been more readily available from the Army in the years more closely following his non-selection to captain, as opposed to thirty-nine years later, when Congressman Kasich requested the records on plaintiff's behalf in 1997.

Plaintiff's counsel's second equitable tolling argument relies on a different theory and proposes a different commencement date for computation of the statute of limitations. Plaintiff contends that

> the Court in Martinez [v. United States, 333 F.3d 1295,] stated that where a correction board makes a favorable determination and the service member seeks to implement or enforce the correction board's favorable determination, then the service member's cause of action does not accrue on the date of discharge but on the date of the action by the correction board.

Plaintiff argues that in the ABCMR's January 26, 2006 decision, which ultimately denied reconsideration of its 1959 decision not to reinstate plaintiff to the Army Reserve, the Board conceded that the ABCMR examiner had noted incorrectly in its January 2, 1959 memorandum that plaintiff had been on active duty for the year of 1957, and that this ABCMR concession constituted a favorable determination on behalf of the plaintiff.[8]

---

enclosures shortly after it was executed, in June 2001." Even if equitable tolling were applicable in this court, plaintiff should have filed his wrongful discharge claim in this court based on equitable tolling no later than June 2007, approximately four months before plaintiff actually filed his complaint on November 27, 2007.

[8] In its January 26, 2006 decision, the ABMCR stated:

> it appears that the 2 January 1959 memorandum from the ABCMR examiner incorrectly noted the applicant was on active duty for two consecutive six-month periods beginning 1 January 1957 through 31

Plaintiff asserts, therefore, that the start date for accrual of plaintiff's claim should not be September 18, 1958, the time of the allegedly wrongful discharge, but rather, January 26, 2006, the date the ABCMR "admitted the facts underlying the wrongful separation."

The ABCMR, however, did not issue a favorable determination on plaintiff's claim for reinstatement or retirement benefits in its January 26, 2006 decision, but rather affirmed prior denials of plaintiff's applications for relief. The ABCMR found that plaintiff should have discovered the error in 1959 and that he had not demonstrated "the existence of a probable error or injustice." Martinez v. United States states that accrual for a wrongful discharge case does not occur at the time of the discharge "when the correction board has granted relief and the service member seeks to enforce or challenge the implementation or scope of the remedial order, since in those cases the question whether the original discharge was lawful is no longer in issue . . . ." Martinez v. United States, 333 F.3d at 1315 n.4. Contrary to the assertions offered by the plaintiff, the exception in Martinez v. United States applies only when relief in favor of the applicant actually has been granted by a correction board. While this plaintiff may have identified isolated, factual errors, regarding the length of his training period in 1957, and became aware in 2001 of an unfavorable comment regarding his performance during training, neither the factual error nor the adverse appraisal is documented as having been available to or determinative for the promotion boards or the ABCMR during their review. With consistently negative decisions by the ABCMR, plaintiff had nothing to enforce. Consequently, plaintiff cannot rely on the exception articulated in Martinez v. United States, and plaintiff's contention that the statute of limitations began to run on January 26, 2006, the date of this particular ABCMR decision, is not supportable.

Apart from the jurisdictional challenges, which plaintiff cannot overcome, the court notes that plaintiff fails to allege a sufficient basis to demonstrate that the Promotion Boards and the ABCMR erred in denying plaintiff's requests. There is no proof in the record that the adverse appraisal by the rating officer on January 21, 1958, referenced in the January 2, 1959 ABCMR memorandum, was to an official OER. Additionally, there is no documentation or evidence in the record to substantiate plaintiff's assertion that the 1957 and 1958 selection boards, or the 1959 ABCMR,

---

> December 1957 and that his rating officer on 21 January 1958 felt he had not demonstrated potential for promotion.

Plaintiff argues that the government does not dispute the finding by the ABCMR on January 26, 2006 that plaintiff

> presented "sufficient evidence" showing that he [plaintiff] was not on active duty for two six-month periods in 1957 and the 1959 ABCMR internal memo was "incorrect." The legal effect of these ABCMR admissions and the Government's failure to deny them is that the Government admits the underlying factual basis for Mr. Levy's 1958 separation was wrongful.

based their decisions not to promote plaintiff to captain on the anonymous handwritten note and the adverse appraisal in the January 2, 1959 ABCMR memorandum. Having been found "fully qualified" for promotion prior to the convening of plaintiff's two selection boards, in and of itself, does not guarantee selection for promotion, as plaintiff attempts to suggest. Plaintiff is speculating that the 1957 and 1958 selection boards, and the ABCMR in 1959, made their respective decisions not to promote plaintiff to captain and not to correct plaintiff's military records improperly. The ABCMR in its January 26, 2006 decision, when it once again denied plaintiff relief, offered the following comment regarding the statements in the January 2, 1959 ABCMR memorandum,

> whether obtained from an error in the applicant's [plaintiff's] records or a clerical error on the part of the ABCMR's staff, does not negate the fact that it is not known why the applicant was not selected for promotion to captain. Promotion boards at the time, as currently, do not leave a written record of why an officer is selected or not selected for promotion. It cannot even be determined at this point in time if the criteria for promotion to captain during the two boards [plaintiff] was considered but not selected was "fully qualified" or "best qualified."

Ultimately, there is nothing in the record that proves that the selection board in the 1958, and the ABCMR in 1959, so many years ago, acted arbitrarily or capriciously when they chose not to promote plaintiff to captain, or reinstate plaintiff to the Army Reserve.

The United States Court of Appeals for the Federal Circuit has established that, when the United States Court of Federal Claims is "called upon to review a decision of a corrections board, or of a Secretary taken upon recommendation from a corrections board, the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law. See Skinner v. United States, 219 Ct. Cl. 322, 594 F.2d 824 (Ct. Cl. 1979)." Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998), cert. denied, 528 U.S. 809 (1999); see also Clinton v. Goldsmith, 526 U.S. 529, 539 (1999) (holding "that '[BCMR] decisions are subject to judicial review [by federal courts] and can be set aside if they are arbitrary, capricious, or not based on substantial evidence.'" (quoting Chappell v. Wallace, 462 U.S. 296, 303, (1983)) (alterations in original)); Barnes v. United States, 473 F.3d 1356, 1361 (Fed. Cir. 2007) (citing Chambers v. United States, 417 F.3d 1218, 1227 (Fed. Cir. 2005)), cert. denied, 128 S. Ct. 66 (2007); Lewis v. United States, 458 F.3d 1372, 1376 (Fed. Cir. 2006) (citing Martinez v. United States, 333 F.3d at 1314), cert. denied, 128 S. Ct. 42 (2007); Roth v. United States, 378 F.3d 1371, 1381 (Fed. Cir. 2004) (citing Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983)). "This necessarily limits the Court of Federal Claims' review to the administrative record." Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006) (citing Cunkelman v. United States, 229 Ct. Cl. 857 (1982)). As discussed above, the record in this case does not demonstrate that the promotion boards or the ABCMR acted arbitrarily and capriciously in plaintiff's case.

The court notes the fatigue of plaintiff's case. Plaintiff has appealed his case to the ABCMR no less than four times and has been denied by the ABCMR each of those times. Given the number of times that plaintiff has appealed this case to the ABCMR, the fact that plaintiff's requests for reconsideration have been denied in every instance, often on the same grounds, and plaintiff's apparent failure to attempt to obtain his service records in 1959 or in the years immediately following his discharge, plaintiff's suit should not succeed at this late date in this court, even if it were timely.

**CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is granted, and the plaintiff's complaint is dismissed, with prejudice. The clerk's office shall dismiss plaintiff's complaint and enter final judgment consistent with this opinion. Costs are awarded to the defendant.

**IT IS SO ORDERED.**

_s/Marian Blank Horn________
**MARIAN BLANK HORN**
**Judge**